## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS<br>*Plaintiff,*<br>v.<br>THE UNITED STATES NAVAL ACADEMY,<br>*et al.*,<br>*Defendants.* | No. 1:23-cv-2699-RDB<br><br>**MOTION TO AMEND TRIAL SCHEDULE** |

On December 20, 2023, the Court entered an order granting the parties' Joint Motion for Pretrial and Trial Schedule with certain modification consented to by the parties. (ECF No. 61.) Plaintiff Students for Fair Admissions respectfully requests that the Court amend that schedule to account for substantial delays in the production of admissions data that would otherwise prevent SFFA's experts from analyzing that data and completing expert reports under the current schedule. Good cause exists to amend the schedule, *see* Fed. R. Civ. Pro. 16(b)(4), because the delay is attributable to Defendants (not a lack of diligence on the part of SFFA), the current schedule cannot reasonably be met, and no party would be prejudiced by extending the schedule.

### BACKGROUND

During the preliminary injunction hearing, the Court made clear that this case would need to be tried, repeatedly stressing that the parties "have to develop the factual record." P.I.-Trans.123 (Dec. 14, 2023) at 10-13; *accord* P.I.-Trans.116 at 10-11 ("[T]hings … need to be developed in the factual record."). In the Court's view, a full factual record is the only way "[to] determine whether the 'potentially distinct interests that military academies may present' allow the Naval Academy's admissions practices to survive strict scrutiny." (ECF No. 60 at 3). Consistent with that sentiment, the Court urged the parties to commit to a trial schedule with substantial discovery. *See e.g.*, P.I.-Trans.117-23.

The day after the hearing, SFFA proposed that "[d]iscovery ope[n] immediately" on December 15, 2023. And SFFA served Defendants with discovery requests on December 18, 2023, two days before the Court issued its ruling on the preliminary-injunction motion (including the RFP seeking five years of individual-level admissions data). At the time, SFFA emphasized that it was seeking substantially less discovery than it had obtained in the *Harvard* case. And having explained that any trial schedule must be constructed around the needed expert work in this case, SFFA proposed a schedule that included Defendants' production of five years of admissions data by January 31, 2024. After initially opposing any deadline (other than the end of discovery) for the production of admissions data, Defendants ultimately agreed that they would "make every reasonable effort to produce" five years of individual level admissions data by January 31, 2024. (ECF No. 61.) Again, SFFA stressed to Defendants that the overall schedule hinged on the timely production of the admissions data.

On January 19, 2024, Defendants provided SFFA with two spreadsheets that included a listing of all the data fields associated with any given applicant. The two spreadsheets together contained dozens of tabs and identified thousands of data fields by their unique identifiers, many of which lacked any explanation of what they signified (e.g., "eh_ceeb_code," "sfxid," and "TargetXreference"). Defendants told SFFA that they could not produce the entire set of data fields over a five-year period because "data cannot easily be exported from the AIS database for numerous technological and burden reasons," and they asked SFFA to identify which fields were needed for expert analysis. But SFFA and its experts, being unfamiliar with Defendants' data and terminology, were unable to decipher many of the thousands of data fields and thus unable to state at the outset which fields were needed for expert analysis. So the parties agreed that Defendants

would produce the fields they believed SFFA would need for expert analysis and SFFA would have an opportunity to request additional fields as necessary.

Defendants did not produce data on January 31, as anticipated. It was not until February 7 that Defendants began to produce any admissions data at all—and even then, Defendants made only a partial production of the data, promising to produce the rest on a rolling basis. When SFFA raised "serious concerns about the slow pace of production" of the data, "especially given that the expedited schedule the parties agreed to was built around prompt production," Defendants dismissively replied that they had only agreed "to make every reasonable effort to produce some, but certainly not all, of the admissions data by January 31." Compounding the problem, the data Defendants did produce was riddled with omissions and inconsistencies. For instance, many applications were recorded as "incomplete" or abandoned, yet the applicants themselves were recorded in the same document as having accepted an offer of admission. Other files were simply missing large segments of the applicant pool. Since then, the parties have been engaged in a constant back and forth trying to create the proper database necessary for this case. Defendants have repeatedly objected to producing data fields—even those that plainly contained relevant information—and each of their various productions have contained errors that required reproductions.

Defendants did not upload what they declared "the last data files" until March 4, but even then, that was not the case. Defendants had to "supplement" that production on March 15 to provide "inadvertently omitted" data, and again on March 26 to replace a file with data from an incorrect admission cycle. And just today, SFFA sent Defendants another letter highlighting, among other things, applicant data that was produced for some admissions cycles but not others and asking them to correct the data. As a result, SFFA's experts have barely been able to even

begin to do the work that SFFA hired them to do: review, synthesize, and analyze the data and compose expert reports. Instead, because of Defendants' piecemeal production and admitted technological errors, SFFA's experts have spent weeks simply trying to figure out which data fields were properly produced and which ones were erroneous or included incorrect data, while also determining which additional data fields would be needed for expert analysis.

As Defendants produced data files over the last two months, SFFA repeatedly explained that their delayed production would hinder (and ultimately preclude) the parties from maintaining the originally agreed-upon schedule. On March 22, the parties held a meet and confer to discuss amending the schedule in this case. Following the meeting, the parties attempted to negotiate a new schedule via multiple phone calls and letters but ultimately could not reach an agreement. SFFA advised Defendants that it would file a motion to amend the schedule. Defendants opposed the schedule requested by SFFA and instead offered an amended schedule with shorter extensions. The parties' last respective proposals are as follows:

| | Current Schedule | SFFA's Last Proposal | Defendants' Last Proposal |
|---|---|---|---|
| **Opening Expert Reports** | May 10, 2024 | August 9, 2024 | June 24, 2024 |
| **Rebuttal Expert Reports** | May 31, 2024 | August 30, 2024 | July 15, 2024 |
| **Close of Discovery** | July 12, 2024 | September 10, 2024* | July 12, 2024* |
| **Rule 26(a)(3) Disclosures** | July 19, 2024 | September 23, 2024 | July 19, 2024 |
| **MILs, Rule 26(a)(3) Objections, Depo Counter-Designations** | July 26, 2024 | September 30, 2024 (3 days after expert depositions) | August 16, 2024 |
| **Oppositions to MILs** | August 5, 2024 | October 7, 2024 | August 26, 2024 |
| **Pretrial Conference/MIL Hearing** | August 23, 2024 | October 25, 2024 | September 6, 2024 |
| **Bench Trial** | September 9-20, 2024 | November 11-22, 2024 | September 16-27, 2024 |
| | | * Expert Depositions Aug 31-Sep 27 | * Expert Depositions July 16-Aug 14 |

The parties' requested schedules are, of course, subject to the Court's availability.

**ARGUMENT**

The Court should amend the schedule for at least three reasons. **First**, the current schedule cannot reasonably be met. From the beginning, SFFA has made clear that meeting the schedule ordered in this case hinged on Defendants' timely production of admissions data. Indeed, the expert analysis that occurred in *Harvard* and *UNC* was an enormous part of the trials and a substantial undertaking. *See SFFA v. Harvard*, 397 F. Supp. 3d 126, 158 (D. Mass. 2019) ("[T]he parties introduced statistics and econometric models through expert witnesses. This statistical evidence is perhaps the most important evidence in reaching a resolution of this case."); *SFFA v. UNC*, 567 F. Supp. 3d 580, 612 (M.D.N.C. 2021) (stressing that the "experts' models … contribute[d] to the overall understanding of UNC's process"). And SFFA repeatedly reminded Defendants of that once they failed to meet the January 31 production date. Yet, at this point, the parties are more than two months past the January 31 data-production date. SFFA's experts thus cannot "reasonably … me[e]t" the expert report deadlines (or the corresponding dates after that). Fed R. Civ. Pro. 16(b)(4) (advisory committee notes).

In addition, SFFA's testifying experts whose work involves statistical modeling of the admissions data have substantial conflicts throughout June and July. They each have longstanding commitments and obligations requiring domestic and international travel throughout nearly the entirety of June and July (collectively, June 9 through 22 and June 28 through July 23). They thus have apprised SFFA that they cannot reasonably complete their opening expert reports before August 9, which is the date that SFFA now proposes for the submission of those reports.

**Second**, SFFA's inability to meet the current schedule is due to the Defendants' delayed production of data. *See Essential Hous. Mgmt., Inc. v. Walker*, 166 F.3d 332 (4th Cir. 1998) (examining the "diligence of the [moving] party"). Since the outset, SFFA has exercised diligence

in prosecuting this case. SFFA requested the admissions data at issue promptly, before the Court even ruled on its motion for preliminary injunction; it sought to commence discovery immediately; and it accommodated Defendants' request to produce admissions data on a piecemeal basis. It is not SFFA's fault that the parties are now more than two months past the January 31 data-production date and Defendants still have not completed data production. This delay is attributable to Defendants—not SFFA.

**Third,** no party would be prejudiced by extending the schedule. Though SFFA has expressed an interest in moving this case along quickly through trial, both SFFA and its experts would be substantially prejudiced if forced to litigate this case under the current schedule. By contrast, Defendants could not possibly be prejudiced by amending the schedule to afford SFFA the ability to develop a complete record and fairly litigate this case. Because the Court did not grant SFFA's request for a preliminary injunction, Defendants are not currently restrained in any way and thus have no legitimate need to rush this case, especially in a manner that would prejudice SFFA. And because SFFA is not seeking a remedy to be imposed at any particular time during the admissions cycle, the timing concerns Defendants articulated at the preliminary-injunction stage are of no moment here. (ECF No. 46-2 (Latta).)

To be sure, Defendants have noted that there are Jewish holidays in October and that some members of their team have pre-existing personal obligations that will require them to be out of the office at times. But there's no reason why the parties cannot find a schedule that accommodates religious holidays and any other serious conflicts. Indeed, SFFA invited Defendants to propose different trial times that would not prejudice SFFA. Defendants failed to do so.

SFFA thus respectfully requests that the Court adopt its last proposed schedule (as set out above) or a similar schedule that sets this case for trial to begin at earliest date after November 11 that is convenient for the Court and the parties.

## CONCLUSION

For the foregoing reasons, the Court should grant SFFA's motion to amend.

Dated: April 5, 2024

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Adam K. Mortara*
(TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Thomas R. McCarthy*
Patrick Strawbridge*
J. Michael Connolly*
Bryan K. Weir*
Cameron T. Norris
James F. Hasson*
R. Gabriel Anderson**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
patrick@consovoymccarthy.com
mike@consovoymccarthy.com
bryan@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice
**pro hac vice forthcoming

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 5, 2024, a copy of the foregoing was served electronically on:

Joshua Gardner
Civil Division, Federal Programs Branch
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 514-4336
joshua.e.gardner@usdoj.gov

<u>*/s/ Thomas R. McCarthy*</u>