UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS,<br>*Plaintiff*,<br>v.<br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br>*Defendants*. | No. 1:23-cv-2699-RDB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND PRETRIAL AND TRIAL SCHEDULE** |

Plaintiff's assertion that there have been "substantial delays in the production of admissions data" is incorrect and does not justify the relief Plaintiff requests. Defendants do not oppose a reasonable enlargement of the deadlines for expert disclosures and certain other pretrial deadlines, but they oppose any modification of the schedule resulting in a movement of the trial date beyond September 2024. Plaintiff has failed to show good cause for its requested modifications—and no cause whatsoever for its request to extend fact discovery—and ignores its own lack of diligence. Indeed, despite declaring impasse over this motion on March 29, 2024, Plaintiff waited an entire week before filing the motion, a delay emblematic of the way in which it has approached the extensive admissions data produced by Defendants. On the other side of the ledger, movement of the trial date would significantly prejudice Defendants, because of disruptions to the admissions work that becomes increasingly significant over the course of the fall of each year, and defense counsel's personal and professional unavailability. Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff filed a one-count complaint on October 5, 2023, challenging the United States Naval Academy's (USNA) consideration of race in its admissions process on equal protection grounds. ECF No. 1. The following day, Plaintiff moved for a preliminary injunction, seeking to

immediately prohibit USNA from considering applicants' race when making admissions decisions. ECF No. 9-1 at 19. At the preliminary injunction hearing, the Court suggested an expedited discovery schedule. Defendants agreed that expedition would be appropriate with the caveat that "the quicker we go . . . the more we need to think about . . . framing discovery so that we can get this done. So I think if [Plaintiff] is willing to cooperate in terms of reasonable discovery . . . limitations, I don't see why an [expedited discovery and trial schedule] should be a problem." PI Hr'g Tr. 121. When the Court denied the preliminary injunction motion, it noted that "both the Plaintiff and Defendants need the opportunity to develop the *appropriate* record in this case." ECF No. 60 at 27 (emphasis added).

Accordingly, the parties conferred on a pretrial and trial schedule built on the twin understandings of an expedited discovery schedule that is proportionate to the needs of the case. The Court entered the parties' proposed schedule, setting the following pertinent deadlines:

- **January 2, 2024**: Discovery opens.

- **January 17, 2024**: Defendants will make every reasonable effort to make an initial production by this date of key non-ESI documents, such as guides and training materials, and documents needed for expert reports other than admissions data.

- **January 31, 2024**: Defendants will make every reasonable effort to produce individual level admissions data by this date.

- **May 10, 2024:** Rule 26(a)(2)(B) and (C) disclosures and reports are due.

- **May 31, 2024**: Rebuttal expert reports are due.

- **July 12, 2024:** Discovery closes.

- **July 19, 2024:** Rule 26(a)(3) disclosures are due.

- **July 26, 2024:** Motions *in limine*, objections under Rule 26(a)(3), and deposition counter-

- designations are due.

- **August 23, 2024:** Pretrial conference/motions *in limine* hearing.

- **September 9–20, 2024:** Bench trial.

ECF No. 61. As the Court noted during the preliminary injunction hearing, "once we set [a trial date], I tend not to want to postpone it." PI Hr'g Tr. 116.

Defendants have complied with each of these deadlines to date. Defendants made an initial production of key documents, including data dictionaries, admissions guides and training materials, and other materials setting forth the admissions process, on January 17.[1] *See* Ex. A. Defendants also made "every reasonable effort" to produce admissions data by January 31, including through phone and email conversations between DOJ and USNA every week to work through the complicated and burdensome process of exporting significant volumes of data from USNA's complex admissions database.[2]

And within one week of that date, on February 7, Defendants produced a substantial data file containing the data for every applicant across five class years with a nomination, their nomination source, their demographic information, their Whole Person Multiple score, their qualification status, who they were competing against, the decision on their application, and the decisionmaker's comments. Defendants continued to produce additional data at weekly intervals throughout February, substantially completed the production of admissions data on March 4, and made a small supplemental production on March 15. *See* Ex. B at 1. In just over one month, Defendants produced individual-level admissions data across five classes, for more than 70,000

---

[1] Plaintiff's motion incorrectly identifies this date as January 19, *see* Mot. at 2, and ignores altogether the other key materials produced on January 17.
[2] Plaintiff's motion also incorrectly states that Defendants agreed to make best efforts to produce "five years of individual level admissions data by January 31"—a misstatement made obvious by Plaintiff's inability to quote or cite any such agreement. *See* Mot. at 2.

applicants, and across approximately 1,000 data fields.[3]  In addition to these data productions, Defendants have responded to Plaintiff's interrogatories, produced 16,000 pages of documents, and provided extensive information—both proactively and in response to Plaintiff's questions—regarding the data productions.

Defendants' productions have included extensive information about USNA's admissions process and its limited consideration of race.  These productions have included, among many other documents, admissions guidance and training materials for every class year, admissions board recommendations concerning applicants, the Dean's notes on individual applicants, the racial compositions of applicants and admitted students, instructional material for the calculation of the Whole Person Multiple, the forms used to evaluate applicants, guidance reflecting how USNA classifies race and ethnicity, data on graduation and attrition rates, information on individual midshipman on matriculation day, and documents reflecting USNA's consideration of race-neutral alternatives.  *See* Ex. C at 2.  Notably, Plaintiff does not contend that this body of material somehow fails to inform Plaintiff how and why USNA considers race in its admissions process.

Despite all the information Defendants have already provided, Plaintiff claimed on March 21 that its experts needed more time due to Defendants' purported "delay" with the admissions data.  Plaintiff initially proposed a three-month adjustment of all the pretrial deadlines (including close of fact discovery, despite its claim that only its experts needed more time with the data already produced) and the trial date —three times longer than the purported delay asserted.

Defendants informed Plaintiff on March 25 that they could not agree to any modification of the schedule that would result in a change to the September 9–20, 2024 trial dates, but that they

---

[3] Plaintiff has received Defendants' admissions data substantially faster than it did in *Harvard*. *See* Ex. C at 2. And this is even though (1) USNA had to retrieve data from a now-retired data system; (2) Plaintiff's original request for *the entire database* was not feasible (much less proportionate) due to various technological limitations; and (3) USNA had numerous competing mission-critical tasks, including because it is in the middle of the admissions cycle.

would be willing to consent to an adjustment of the schedule to permit a 45-day enlargement for expert disclosures—an enlargement greater than Plaintiff's claimed delay in receiving the admissions data. *See* Ex. D at 1. Plaintiff rejected Defendants' proposal and contended—for the first time—that its experts would be traveling for portions of June, July, and August. Plaintiff has never represented that its experts would be wholly unavailable during that period (and only describes their "collective," not individual, travel, *see* Mot. at 5), yet continued to insist on a three-month extension of the expert deadlines and a two-month extension of all other deadlines, including fact discovery and the trial date. *See* Ex. E at 5.

Defendants responded that they were open to a later trial date in September—assuming the Court's availability—but that a trial in October, let alone in November or December, would be highly problematic for numerous reasons. *See* Ex. E at 1–3. Plaintiff declared an impasse on March 29, waited a full week, and then filed the instant motion.[4]

## LEGAL STANDARD

Plaintiff's motion to amend the scheduling order is governed by Federal Rule of Civil Procedure 16(b)(4). Plaintiff bears the burden of establishing "good cause" for the requested modification. Fed. R. Civ. P. 16(b)(4). Factors courts consider in determining good cause include the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Robertson v. Iuliano*, 2013 WL 169266, at *2 (D. Md. Jan. 14, 2013) (Bennett, J.); *Humane Soc'y of the United States v. Nat'l Union Fire Ins.*, 2016 WL 3668028, at *2 (D. Md. Jul. 11, 2016). A primary consideration is the movant's diligence. *Robertson*, 2013 WL 169266, at *2. Importantly, "[a]

---

[4] Plaintiff has also suggested that it may attempt to address this motion at the parties' April 11, 2024 hearing reserved for two discovery disputes. Defendants object to the attempt to artificially shorten their response time but have endeavored to provide a response here.

court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.* (citations omitted).

## DISCUSSION

Plaintiff has failed to meet its burden to justify good cause to extend the expert deadlines by three months, and all other dates—including close of fact discovery and the trial date—by two months. Rather, Plaintiff's request arises primarily out of its own lack of diligence.

As an initial matter, Plaintiff's sole basis for its request is its experts' claimed need for additional time to review the admissions data that Defendants have already produced. Yet Plaintiff additionally seeks to extend the *fact* discovery schedule, with no explanation, and despite the substantial volume of information already received. That does not establish good cause.

As to the expert deadlines, Defendants completed production of the admissions data within approximately one month of the January 31 "reasonable efforts" date. Even if that constituted "delay"—a proposition with which Defendants strongly disagree[5]—that, at most, would justify adjusting the expert discovery schedule by a corresponding month. Plaintiff fails to explain why an additional three months is necessary.

Plaintiff claims that, for various reasons it attempts to attribute to Defendants, its experts "have barely been able to even begin" their work. Mot. at 2–3. None of these claims has merit on its own terms, much less justifies Plaintiff's excessive extension request. First, USNA produced the data dictionaries for its admissions database on January 17 so that Plaintiff's experts could begin working to understand the data fields. *See* Ex. A. Indeed, the vast majority of the data fields

---

[5] As noted in the background section, the extraction of data from USNA's complex admissions database is not automatic or simple: it requires significant man hours and manual work—all in addition to USNA's other mission-critical work in the middle of the admissions cycle. And Defendants produced arguably the single most important data file on February 7, within one week of the January 31 reasonable efforts date.

6

are self-explanatory (e.g., "Adversity Experience") and have accompanying descriptions ("Comments describing Candidate's Adversity").[6]  On February 7, USNA then produced arguably the most important dataset—containing data on every applicant with a nomination over five class years, their demographics, their qualifications, who they competed against, the decision on their application, and the decision-maker's comments.  *See* Ex. C at 2.  Defendants also proactively provided additional information in February to help Plaintiff's experts understand the data productions.  There is no basis for Plaintiff's claim that its experts could not timely start their work.

Plaintiff's complaint of "data errors," "omissions," and "inconsistencies" also misses the mark.  Mot. at 3.  In the few instances where USNA discovered a data error, it promptly corrected that error (and Plaintiff never argues otherwise).  In reality, however, the vast majority of purported "errors" were not errors at all—only Plaintiff's unhappiness with the way USNA maintains its database in the normal course of business.  *See, e.g.*, Ex. B at 1–2; Ex. C at 2.

Likewise, Plaintiff complains of "piecemeal" data productions, Mot. at 4, but Defendants made rolling productions precisely because Plaintiff insisted on obtaining the data as soon as possible.  *See* Ex. C at 2.  The alternative would have been to delay producing available data files until the entire data export was complete—an alternative surely unacceptable to Plaintiff.

It appears that the real issue motivating Plaintiff's request is that its experts do not understand the data (despite all the information USNA has provided).  This is evident in the multiple letters Plaintiff has sent Defendants asking substantive questions about the admissions data and the admissions process.  But in this key respect, Plaintiff has failed to exercise diligence.

Defendants have continually provided additional information in response to Plaintiff's

---

[6] Plaintiff's cherry-picking of three fields, out of thousands, that it does not understand, *see* Mot. at 2, hardly suggests that its experts could not understand the vast majority of the fields.

questions, but have also repeatedly explained that the most appropriate means of addressing substantive questions is through discovery, including depositions, rather than through defense counsel. *See* Ex. F at 3 ("substantive questions about the decision-making process are more properly answered through discovery requests, as we noted in our February 12 call"); Ex. B at 2 (similar). Yet Plaintiff has not taken a single deposition, or served discovery requests, to probe the areas in which it has questions. Moreover, many of the answers Defendants provided in response to Plaintiff's questions to defense counsel came directly from information that USNA had *already produced* to Plaintiff—suggesting Plaintiff's failure to review the discovery materials already received. Indeed, many of the data fields Plaintiff has subsequently requested from USNA are fields that Defendants have *already produced*—again suggesting Plaintiff's failure to review the data already received. This lack of diligence cannot support Plaintiff's request to amend the pretrial schedule, much less the trial date—let alone by several months. *See Robertson*, 2013 WL 169266, at *2 (holding that the primary consideration for Rule 16 amendment is the movant's diligence). And although Plaintiff claims that its experts have "substantial conflicts" in June and July (but does not claim that its experts are wholly unavailable; and, tellingly, only represents their "collective[]" travel schedule, *see* Mot. at 5), that does not excuse Plaintiff's own lack of diligence in working through the copious information already received. Plaintiff's belated assertion regarding their experts' availability is also troubling because it means their experts would have been largely unavailable for deposition even under the current schedule. That claimed unavailability, then, has nothing to do with any alleged delay in the production of admissions data. *See* Ex. C at 3.

      Nevertheless, Defendants are willing to consent to a reasonable modification of the pretrial schedule that provides the experts additional time to issue their reports, so long as that modification does not result in a movement of the trial schedule beyond September. It is of critical importance

to Defendants that the September trial date be maintained, due both to attorney availability after September, as well as the fact that the further into the fall the trial moves, the more of a burden is placed on USNA's admissions staff.

As reflected in Dean Latta's declaration submitted in support of Defendants' opposition to Plaintiff's preliminary injunction motion, the admissions process begins to ramp up in August, with work progressively increasing throughout the fall. Beginning at the end of August or early September, the Admission Board begins to meet weekly to review records, and it and the Slate Review Committee reviews applications on a rolling basis through April. ECF No. 46-2, ¶¶ 15, 20, 57, 58. USNA makes appointment offers before January to candidates with non-congressional nominating sources and provides Letters of Assurances during the fall. *Id.* at ¶¶ 61, 64 (noting that "[a]s of November 27, 2023, USNA has extended 174 LOAs, 27 offers of appointment, and an additional 15 candidates have accepted offers of appointments" for the Class of 2028 admissions cycle). Plaintiff's proposed adjustment to the trial schedule would substantially prejudice USNA because it would come at a time when significant attention needs to be directed to the admissions process. *See Robertson*, 2013 WL 169266, at *2 (requiring consideration of the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith"). Moreover, because the vast majority of trial witnesses will be Defendants' witnesses, the burden of moving the trial date will disproportionately affect Defendants, not only during key months of the admissions cycle, but also when multiple defense counsel have pre-existing professional and personal obligations that cannot be moved. Plaintiff's motion argues lack of prejudice only by ignoring these disruptions to USNA's admissions process. *See* Mot. at 6; Ex. E at 2.

For these reasons, although Defendants believe the current schedule is appropriate and achievable, Defendants are willing to consent to the following modifications (or other similar modification that does not alter a September trial date):

|  | **Current Schedule** | **Plaintiff's Proposed Schedule** | **Defendants' Proposed Schedule** |
|---|---|---|---|
| Opening expert reports | May 10 | August 9 (+91 days) | June 24 (+45 days) |
| Rebuttal expert reports | May 31 | August 30 (+91 days) | July 15 (+45 days) |
| Close of discovery | July 12 | September 10 (+60 days) | July 12 – fact discovery (same as current schedule)<br><br>June 25–July 26 – expert depositions |
| Rule 26(a)(3) disclosures | July 19 | September 23 (+66 days) | July 19 (same as current schedule) |
| MILs, Rule 26(a)(3) objections, deposition counter-designations | July 26 | September 30 (+66 days) | July 29 (+3 days to accommodate expert depositions) |
| Oppositions to MILs | August 5 | October 7 (+63 days) | August 5 (same as current schedule) |
| Pretrial conference / MIL hearing | August 23 | October 25 (+63 days) | August 23 (same as current schedule) |
| Bench trial | September 9–20 | November 11–22 (+63 days) | September 9–20 (same as current schedule) |

Defendants believe these modifications will provide Plaintiff's experts additional time to analyze the admissions data, while maintaining most of the other deadlines, including the September trial. Defendants are also willing to consent to alternate trial dates in September 2024—assuming the Court's availability—as set forth in their last proposal to Plaintiff. *See* Ex. E at 2–3.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to amend the scheduling order.

Dated: April 8, 2024	Respectfully submitted,

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

 /s/ Catherine M. Yang
JOSHUA E. GARDNER
*By Special Appearance*
Special Counsel
CHRIS EDWARD MENDEZ
*By Special Appearance*
JOHN ROBINSON
*By Special Appearance*
CATHERINE M. YANG
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4336
Email: catherine.m.yang@usdoj.gov

MEDHA GARGEYA
*By Special Appearance*
Counsel
U.S. Department of Justice
Civil Division, Office of the Assistant Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants*