# Exhibit B



**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 1100 L Street, N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

*Catherine M. Yang*
*Trial Attorney*
Tel: (202) 514-4336
Catherine.m.yang@usdoj.gov

March 14, 2024

<u>Via Electronic Mail</u>

Mr. Thomas McCarthy
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209

     RE: *Students for Fair Admissions v. United States Naval Academy*, No. 23-cv-02699

Dear Mr. McCarthy:

     This letter responds to your March 10, 2024 letter regarding individual admissions data, custodians, and search terms. First, however, your claim that the admissions data production "is more than a month behind" is wrong. Consistent with the scheduling order, Defendants made every reasonable effort to produce individual admissions data by January 31, 2024. ECF No. 61. Defendants began that data production on February 7, and completed it on March 4, 2024.[1] Your claim that your experts "cannot begin their analysis" also cannot be true. Defendants have produced many hundreds of data fields, across tens of thousands of applicants, for five class years, across the portions of the database you have requested. And we have repeatedly worked with you to respond to your data questions—as your letter acknowledges, and as we continue to do below.

<u>Individual Admissions Data</u>

     You ask whether there are "technical errors with the data production, including missing data and coding errors." We can confirm that, where you have provided specific information that permits us to investigate your question, the Naval Academy has not identified "technical errors," "missing data," "coding errors," or other "data production errors."

- Candidate 500165: the data files correctly report the data in the database for this candidate. As you know from our discovery responses and productions thus far (*e.g.*, USNA-00000505), SAT test scores were not weighted in the WPM calculation for this class year due to COVID-19 impact on test availability. Thus, while entry of a numerical value and an "official" designation was needed for the WPM to be calculated, the

---

[1] Although not raised in your letter, the Academy discovered this week that it inadvertently omitted some prior military experience data for the classes of 2023 and 2024. The Academy will supplement its data production this week.

numerical value of the test scores themselves was not used to calculate the WPM.

- Candidate 520478: the data files correctly report the data in the database for this candidate. As you know from the Slate report, this candidate was nominated for Tennessee-1's third vacancy, and no one was selected for this vacancy. As a result, this candidate was turned down.

- Candidate 722874: the data files correctly report the data in the database for this candidate, including the "a3I830000006" under extracurricular name. Additionally, as you know from the Applications report, this candidate started but did not submit their application, and their application was turned down by the Academy as incomplete.

- You complain that when applicants do not provide complete information to the Academy, the Academy's approach is "to leave missing fields blank, rather than omitting entire candidates" from the admissions database. The Academy has provided the data as it is maintained in its database. The Academy cannot control the information that applicants choose to provide or not provide, including their family information, their testing information, and the various components that go into the WPM.

    Your question regarding nominations cites USNA-00001164 at slide 12, but that document does not appear to show the information you describe. In any event, as you know from the data files and our document productions, applicants may obtain multiple nominations, and thus it is highly unlikely that the number of applicants will match 1-to-1 with the number of nominations in any given class.

- In the Slate report, the only slate winners with WPM 0 who are not from prep schools are foreign national candidates. Absent your identification of some specific information to investigate, the Academy is not aware of any "data errors."

- You state that the WPM formulas "do not appear to fully correlate with the results in the applicant data for their respective application cycles." Absent your identification of some specific information to investigate, the Academy is not aware of any "data errors."

- You ask how to interpret "Vacancy Number = N" and "Vacancy Number = 0." As a courtesy, we refer you to the data dictionary, which we produced on January 17. "Vacancy number 0 is used to submit nominations for multiple vacancies. Vacancy number N is used for no Congressional Nominations such as Presidential and VP Nominations." *See* USNA-00000499.

We have now responded to numerous questions regarding the data files, in addition to providing explanatory information at the time of producing the files themselves. Your questions, including several in your March 10 letter, increasingly reflect substantive and interpretive questions. Such questions are more properly answered through discovery requests, as we have previously noted several times, and we invite you to serve those as appropriate.

Custodians

Your letter focuses only on purported relevance, but as you know, Rule 26 limits discovery

2

to that which is *both* relevant *and* proportionate to the needs of the case. Regardless of your erroneous focus on only purported relevance, Defendants' agreement to 10 custodians leaves to you how you wish to allocate those custodians. If you wish to include Regional Directors and Admissions Board members despite the fact that they do not make admissions decisions, you are free to do so.

Notably, your letter does not explain why 12 custodians, relative to the 10 we have agreed to, is proportionate to the needs of the case. Your only statement is that 12 custodians is half the number in *Harvard*. But *Harvard* took five years to litigate in district court, whereas the parties here agreed to and the Court ordered only a few months of discovery.

That said, if the parties are able to agree on relevant, proportionate, and realistic search terms as discussed below, Defendants may be willing to agree to your demand for 12 custodians.

Search Terms

Appended to this letter are the hit count reports for your original proposed search terms (Appendix A – approximately 291,000 documents) and the revised search terms in our March 7 letter (Appendix B – approximately 7,800 documents). These are the hit counts only against the six already agreed-upon custodians (Latta, Munnelly, Hwang, Vahsen, Buck, and Kacher). The number will inevitably increase—and potentially double—with twice as many custodians.

We are providing these hit count reports to advance the parties' discussion.[2] We will need to reach agreement quickly given the limited time remaining in discovery, and our March 7 revised search terms yield a number that is still a disproportionate burden, but one we are willing to undertake to move the parties forward. To the extent you "propose a counterproposal of [y]our own," we request that it reflect a *relevant*, *proportionate*, and *realistic* proposal that specifically addresses and accounts for the four months remaining in discovery, the information you have already received, and the information you can obtain through other, less burdensome discovery tools.

We look forward to your response by Friday, March 15.

Sincerely,

*/s/ Catherine Yang*
Catherine M. Yang
Trial Attorney
Federal Programs Branch

---

[2] While your document vendor may be able to "create th[is] type of list in under 15 minutes," our e-discovery contractor provides comprehensive support for numerous large discovery cases across many DOJ and non-DOJ divisions, and we are not privy to the same turnaround.

3