# Exhibit C



**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 1100 L Street, N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

*Joshua E. Gardner*
*Special Counsel*
Tel:  (202) 305-7583
Joshua.e.gardner@usdoj.gov

March 27, 2024

Via Electronic Mail

Mr. Thomas McCarthy
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209

  RE:  *Students for Fair Admissions v. United States Naval Academy, et al.*, No. 23-cv-02699 (D. Md.)

Dear Mr. McCarthy:

  This letter responds to your March 26, 2024 letter concerning your proposal to extend the pretrial and trial schedule by three months. Your letter contains numerous misrepresentations that we find very concerning. We address the most erroneous statements here and hope the parties can return to what we believed was a productive working relationship up to this point.

  At bottom, your March 26 letter reflects two fundamental propositions: (1) that Plaintiff is entitled to all the discovery it might obtain in a non-expedited case unlike this one; and (2) that Defendants have engaged in delay. Both are incorrect.

  First, as we have repeatedly explained to you, Federal Rule of Civil Procedure 26's proportionality requirements demand that discovery reflect the highly expedited nature of these proceedings. And while you are correct that the Court has indicated that "[t]here has to be a record developed," PI Hr'g Tr. 105— a view Defendants fully share—the Court also agreed with Defendants' position that "the quicker we go I think the more we need to think about . . . framing discovery narrowly so that we can get this done. So I think if [Plaintiff] is willing to cooperate in terms of reasonable discovery, . . . limitations, I don't see why [an expedited discovery and trial schedule] should be a problem." *Id*. at 121. Yet since the outset of discovery, Plaintiff's ever-increasing discovery demands fail to account for the expedited nature of these proceedings and fail to grapple with the fact that the discovery Defendants already have produced permits a record sufficient to evaluate whether the United States Naval Academy's consideration of race violates the Fifth Amendment.

  Indeed, Plaintiff has not seriously suggested that the available evidence is insufficient to permit resolution of this case. Nor could it. In addition to the voluminous admissions data Defendants have

produced, which reflects each of the decisions USNA has made about 70,000 applicants over five years, Defendants have produced more than 5,400 pages of documents to date. These productions have included, among many other things, admissions guidance and training materials for each class year, admissions board recommendations concerning applicants, the Dean's notes on individual applicants, the racial compositions of applicants and admitted students, instructional material for the calculation of the Whole Person Multiple, the forms used to evaluate applicants, guidance reflecting how USNA classifies race and ethnicity, Academy Effectiveness Board Institutional Effectiveness Assessment reports, data on graduation rates and attrition, and documents reflecting USNA's consideration of race-neutral alternatives. For these reasons, Plaintiff's repeated suggestion that it lacks a "full" record is misplaced; rather, the pertinent question is whether the information produced by Defendants permits the Court to resolve the sole issue in this case. Even a cursory review of the materials produced to date reflects that the record is more than sufficient to resolve this issue.

Your letter next accuses Defendants of attempting to delay discovery. You start with the incorrect statement that Defendants "refus[ed] to begin their production efforts for two weeks." Defendants produced the key admissions materials on January 17—two weeks after discovery opened and consistent with the scheduling order. And Defendants produced additional material and discovery responses within the time expressly set forth in the Federal Rules.

You then accuse Defendants of having "slow-walked" the production of admissions data. The falsity of this claim is shown by your own acknowledgement, during the parties' March 22 meet and confer discussion, that you did not believe we have ever attempted to slow-walk the data. Likewise, your complaint about the "piecemeal" data production is belied by your own requests to "get the data faster." Your claim of "myriad technological problems" is also wrong: Defendants promptly corrected the few errors identified, and informed you that the remainder of the purported "errors" were not errors at all— only your disagreement with how USNA should maintain its database. And the statement that your experts "haven't been able to do the[ir] work" is particularly egregious: on February 7, Defendants produced five years of data reflecting every applicant with a nomination, that applicant's demographics, that applicant's Whole Person Multiple, the decision rendered on that applicant, and who that applicant was competing against. Your experts could have, and should have, started their work then. Defendants continued to produce other data over the following weeks and substantially completed its data production on March 4, with a small supplemental production on March 15. Yet on March 22, you relayed your experts' request for data *that Defendants had already produced a month ago*. Please do not shift the blame of your experts' delays in starting their work onto Defendants.

Defendants completed their admissions data production within six weeks of the January 31 "reasonable efforts" deadline. That is an extraordinarily fast data production—both in our collective experience, and in yours: as you know, the data production in *Harvard* took many months longer.

Your letter then references the parties' discussions concerning custodial email searches. First, as your letter acknowledges, the first time Plaintiff identified any specific custodial searches was on February 13, 2024—a month-and-a-half after discovery began. Putting aside this lack of diligence or urgency, as we have repeatedly explained, Plaintiff's proposed custodial email searches have lacked any consideration of proportionality considering the information Defendants have produced to date and the expedited discovery schedule. Reviewing 600,000 documents, as Plaintiff's original searches requested, is simply not reasonable, not proportionate, and not realistic on our expedited discovery schedule. For similar reasons, Plaintiff's constant comparison to the custodial email productions in *Harvard* and *UNC*—which took four

and six years, respectively, to litigate—is entirely inapposite. More fundamentally, Plaintiff has never suggested that it needs the results of custodial email searches to fully understand how USNA considers race in its admissions process. Nor could it, given the substantial discovery Defendants have already produced in this case—including the key admissions materials that Defendants produced on *January 17*—more than two months ago. To be sure, Defendants are willing to agree to reasonable custodial email searches, as we have repeatedly indicated, but the suggestion that Defendants have "slow-walked" this process or that the results of these email searches are necessary to create a sufficient record is misplaced.

Your letter also mischaracterizes the parties' March 22, 2024 meet and confer. Less than thirty minutes before the parties' meeting, Plaintiff for the first time provided Defendants with a proposed modification to the pretrial and trial schedule. As we explained during that meeting, we had not had a chance to discuss the proposal internally, let alone with our clients. You acknowledged that and recognized that Defendants were not in a position at that juncture to provide any views about the proposal. Accordingly, your suggestion that Defendants "made no objection to moving the expert discovery deadline or any other deadline" completely ignores the fact that Defendants expressly told you—and you unequivocally agreed—that Defendants were not able to provide any immediate views on the schedule.

Finally, your letter notes—for the first time—that Plaintiff's experts responsible for analyzing USNA's admissions data are unavailable "throughout nearly the entirety of June and July . . . as well as in August." This obviously is problematic. The current schedule, set more than three months ago, reflects that expert rebuttal disclosures are due on May 31, 2024 and discovery closes on July 12, 2024. Your experts' claimed unavailability would effectively deprive Defendants of the opportunity to depose them during the current agreed-upon discovery schedule. And, of course, this unavailability has nothing to do with Plaintiff's claim that Defendants have delayed the production of admissions data—the sole reason you previously presented as the reason for an extension. It also is unclear how your experts would benefit from an enlargement of the expert disclosure deadline to August 9 given your representation that your experts are largely unavailable "throughout nearly the entirety of June and July."

Although we do not believe that any adjustment to the schedule is necessary, we are willing to work cooperatively with you to address your stated concern about your experts' claimed desire for additional time to evaluate USNA's admissions data. To address your stated concern, and as we have previously proposed, we are willing to agree to a 45-day enlargement for expert disclosures. But we cannot agree to any movement of the September trial date, let alone agree to move the trial to December as you have proposed. Counsel and witnesses have scheduled their professional and personal obligations around a September trial date, and moving the trial date at this juncture would be highly disruptive. We presume it would also be highly disruptive to the Court, which no doubt has numerous others trials calendared through the remainder of the year. It also bears noting that the vast majority of witnesses will come from Defendants rather than Plaintiff, making your proposed schedule change disproportionately disruptive to Defendants. For these reasons, we believe that a 45-day enlargement for expert disclosures is a reasonable compromise between Plaintiff's maximalist proposal to shift the entire schedule by three months and Defendants' strong preference to retain the schedule as-is.

We are available any time after 11:00 am tomorrow to discuss this matter.

3

Sincerely,

*/s/ Joshua E. Gardner*
Joshua E. Gardner
Special Counsel
Federal Programs Branch