Exhibit F



**U.S. Department of Justice**

Civil Division
Federal Programs Branch

| | |
|---|---|
| **Mailing Address** | **Overnight Delivery Address** |
| P.O. Box 883 | 1100 L Street, N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

*Joshua E. Gardner*
*Special Counsel*
Tel: (202) 305-7583
Joshua.e.gardner@usdoj.gov

February 22, 2024

<u>Via Electronic Mail</u>

Mr. Thomas McCarthy
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209

     RE: *Students for Fair Admissions v. United States Naval Academy*, No. 23-cv-02699

Dear Mr. McCarthy:

     This letter responds to your February 13, 2024 letter concerning certain discovery issues. At the outset, I want to emphasize that Defendants share your interest in moving this case forward as quickly as possible. As you are aware, Defendants have engaged in substantial efforts to produce significant volumes of information in a short period of time. For example, over the past month, Defendants have produced more than 2,609 pages of responsive material, responded to Plaintiff's first set of interrogatories and document production requests, produced a privilege log, and expended significant time and resources to produce admissions data—all while the Naval Academy is in the middle of the admissions cycle.

     With respect to the admissions data, the Naval Academy is making every reasonable effort to produce the information quickly—and on February 7 and 16, 2024, we provided substantial amounts of data, across more than 220 data fields, and spanning tens of thousands of applicants. Producing that information is not a simple process for the numerous reasons we have detailed on multiple calls. And the Naval Academy staff is undertaking these efforts while performing their own mission-critical work. As such, we strongly disagree with your characterization of "the slow pace of production."[1] On the contrary, in our experience, the production of data in this case has been remarkably expedited.

<u>Individual-Level Admissions Data</u>

     You ask for "a more specific date by which" you can expect to receive the BART data. You received the "General Information" and "Academic" sections of the BART data for the Classes of 2025-

---

[1] Additionally, we note that the parties' agreement was for Defendants to make every reasonable effort to produce some, but certainly not all, of the admissions data by January 31, 2024.

2027 on February 16 (three days after your letter, and well within the "week or two" estimate we provided). The Naval Academy is continuing to work on the data export from the remaining two sections of BART for the Classes of 2025-2027. They are also continuing to work on the export for the Classes of 2023-2024 which, as we have explained to you before, is housed on a legacy database and thus requires different work to export. Because the export process is iterative—as we have explained previously, we have been working with the Naval Academy to review preliminary exports to ensure as complete a data file as possible—we cannot provide a more specific production date. However, we remain committed to providing you the remaining data as soon as we can.

You ask how the data is maintained in the normal course of business and how it was pulled to generate the .csv file titled "Slate report." As we have explained several times before, before the Class of 2025, the Naval Academy used a legacy (Oracle) database that it has since migrated out of. Since the Class of 2025, the Naval Academy has used a Salesforce database. Most of the pre-Class of 2025 data was migrated from Oracle to Salesforce. For the Slate report file, the Naval Academy was able to migrate all the pre-Class of 2025 data from Oracle to Salesforce. To generate the report, the Naval Academy created a Salesforce report-type to combine all the objects and all the fields present on the Slate portion of the database, and then used the Salesforce reporting function. The Naval Academy then worked with us in an iterative process to identify any errors and corrected and re-ran the Salesforce report-type as needed.

You request that the Naval Academy additionally produce the fields in the Application, Recommendations, RAB Adjustments, Nominations, Extracurricular Activities, and Test tabs of the data dictionary. Those tabs collectively comprise nearly 700 data fields, many of which are duplicated across those tabs, and—most importantly—are duplicated across the BART data that you are already receiving. Indeed, we note that the February 16 data includes fields on applications, RAB adjustments, nominations, extracurricular activities, and tests (and the forthcoming data will include fields on recommendations). Moreover, as we have previously explained, the BART and Slate portions of the database are what Admissions uses when making decisions about appointments to the Academy, and BART and Slate pull data from those additional tabs (and others) you reference. Accordingly, your request is not proportionate to the needs of the case, particularly given the demands already placed on the Naval Academy data team. We suggest you review the BART data to determine what, if any, additional fields you need at that point.

You ask about the components of the Whole Person Multiple ("WPM"). As a courtesy, we refer you to USNA-00000506, USNA-00001861, USNA-00000505, and USNA-00000070 as among the documents in Defendants' production that identify the components of the WPM and adjustments to the WPM.

You ask about applicants with a WPM of 0. We answered this question on February 16.

You ask about some instances where an application is recorded as incomplete yet the applicant accepted an offer. After investigating the issue, the Naval Academy identified an error in the data field used to pull that data. The Naval Academy has corrected the field and re-run the report, which resolves the issues as to the Classes of 2025-2027. For the Classes of 2023-2024, that field did not contain stored data in the legacy database and thus was not migrated over when the Naval Academy transitioned to the current database; as a result, those records reflect "Incomplete." We provided the corrected report to you earlier today.

You additionally ask for dates of decisions and which candidates were or were not considered for

2

prep schools. As an initial matter, it is unclear to us why that information is relevant to the challenge you bring in this case, and how it is proportionate considering the numerous other data you are receiving. Please explain the relevance and proportionality of this request. Moreover, some of the information you request does not appear to be information that the Naval Academy maintains in the normal course of business. It would be significantly disproportionate, and inconsistent with Rule 34 in any event, to expect the Academy to create and provide such data.

You also ask for information on the process of extending offers to the prep schools, and on applicants who receive multiple nominations. These substantive questions about the decision-making process are more properly answered through discovery requests, as we noted in our February 12 call.

Finally, your remaining questions ask about data on Letters of Assurance ("LOAs") and race-neutral alternatives. As we previously conveyed on January 31, while we are willing to investigate those questions, asking the Naval Academy for those answers now will take them away from their ongoing work in exporting the requested data. We had suggested, and you appeared amenable, to having the Academy finish the exports before diverting to respond to those questions. We continue to believe that is the most prudent path forward, especially given your statements that you need the data "as soon as possible."

<u>Custodial Email Searches</u>

With respect to custodial email searches, you first observe that the Court stated during the preliminary injunction hearing that he wanted to develop a factual record. But the Court also agreed that discovery had to be sufficiently narrow given the expedition of this case. P.I. Trans. 121:14-25. Your proposal that Defendants conduct custodial email searches of 20 individuals is not sufficiently narrowly tailored to the needs of this case given the expedited discovery schedule. As Plaintiff noted in its preliminary injunction briefing, SFFA's cases against *Harvard* and *UNC* took "at least five years in district court" to litigate, ECF No. 9-1. Even though there are only five *months* left in the discovery schedule in this case, Plaintiff seeks just four fewer custodial searches than those conducted in *Harvard* and *UNC*.

Given the needs of the case and the expedited discovery schedule, Defendants are willing to conduct custodial email searches of the following seven individuals:  Stephen Latta; Christine Munnelly; Melody Hwang; Steve Vahsen; Vice Admiral Sean Buck; Rear Admiral Fred Kacher; and Lisa Truesdale— contingent on the parties being able to agree on appropriately narrowed search terms. We believe that these custodial email searches, in combination with the substantial information we have provided and continue to provide, will be more than sufficient to permit the development of a record to allow the Court to assess whether USNA's admissions policies are consistent with the Fifth Amendment. In particular, Mr. Latta, Ms. Munnelly, and Ms. Hwang are the individuals who made admissions decisions during the relevant period and thus possess the key information relevant and proportional to the claim in this case. Nevertheless, in the interest of compromise, we are willing to include the other four individuals as custodians as well. In addition, pursuant to your request, Defendants are willing to conduct these custodial searches from September 1, 2021 to January 1, 2024—again, contingent on the parties being able to agree on appropriately narrowed search terms.

Without more explanation as to why additional custodians are relevant and proportionate, we cannot agree to the remaining custodial searches you have suggested. For example, as explained in Defendants' response to interrogatory number 1, Ms. Zaccheo began her role as the Director of Candidate Guidance on January 31, 2024. Given Plaintiffs' suggested cut-off of January 1, 2024 for

custodial email searches, we do not see any basis to search her emails. Similarly, the additional custodians you identified are not admissions office decision-makers and it is not apparent why email searches of these custodians would result in relevant information that has not already been produced or soon will be produced in this case.

As noted above, our agreement on the above custodians and time frame is contingent on appropriately narrowed search terms. The 90 terms appended to your letter are not appropriately narrowed, and many are highly unlikely to capture relevant, non-privileged information. We are in the process of running your requested terms across the above custodians to demonstrate their overbreadth. At the same time, we are diligently working with USNA to narrow the search terms to those that are most likely to pull documents that are both relevant to USNA's consideration of race in its admissions policy and proportionate given the expedited discovery schedule. We expect to confer with you shortly regarding search terms.

<u>Document Production Requests</u>

You take issue with six of Defendants' responses to your requests for production. As for Defendants' response to request for production number 1, you claim that the district court rulings in *Harvard* and *UNC* denying motions to compel data regarding the academic performance of matriculated students are "of no moment" due to the USNA's distinct compelling interest. That contention relies on a misreading of those rulings, which did not hinge on the particular compelling interest asserted by the universities. For example, as the *UNC* district court noted, discovery in the challenge to "UNC's admissions process and its unequal treatment of the Applicant . . . must . . . be targeted to determine if the Applicant was treated unequally in the admissions process," which "means reviewing Applicant's application against other admitted students at the time of the decision—not enrolled student performance." *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, No. 1:14-CV-954, 2017 WL 11684866, at *5 (M.D.N.C. Aug. 9, 2017). Just as the court found that the information was "not relevant to . . . *SFFA's claims*," *id.* (emphasis added), the request for data regarding the academic performance of midshipmen while matriculated at USNA is irrelevant to Plaintiff's challenge to the consideration of race in the admissions process.

Nevertheless, in the interest of compromise, the Naval Academy has already produced aggregate data on graduation rates and matriculation. *See, e.g.*, USNA-00000527; USNA-00000548; USNA-00000568; USNA-00000588; USNA-00000610; USNA-00001837. If you seek individualized performance data that goes beyond these documents, such data is not only irrelevant to Plaintiff's claim challenging the consideration of race in USNA's admissions process, but it is also disproportionate to the needs of this case, particularly in light of expedited discovery schedule and the substantial efforts the Naval Academy has already expended (and continues to expend) in providing you with the individualized *admissions* data that is relevant to the case.

Regarding Defendants' response to request for production number 9, and in the interest of compromise, USNA is conducting a reasonable search for reports listing candidates for the purpose of selecting qualified alternates. Defendants will produce such non-privileged reports on a rolling basis. In addition, the Naval Academy has already produced the data reflecting the evaluation of candidates on any particular slate for the Classes of 2023-2027. If you seek documents that go beyond these two categories as well as the documents the Naval Academy agreed to produce in response to request for production number 9, any such requests are disproportionate to the needs of this case, especially considering the

4

expedited discovery schedule.

Defendants stand on their objections to requests for production numbers 11 and 14 at this time. As explained specifically in the objections, both requests call for documents that are irrelevant to the claim in this action, are unduly burdensome, and disproportionate to the needs of this case, particularly given the expedited discovery schedule. Your letter does not provide any explanation for why these requests seek relevant information, much less why they are proportionate. Furthermore, your suggestion that communications referencing "SFFA" or "Students for Fair Admissions" would not be privileged ignores that such communications are almost certainly with either the Department of Justice or Naval Academy counsel (or both)—as our investigation thus far has shown—which plainly would be privileged. It is in neither party's interest to be required to log communications between attorneys and their clients, particularly after the filing of the lawsuit. It is also not proportionate to require Defendants to undertake a collection, review, and logging burden for documents that you are not entitled to receive, particularly given the expedited discovery deadlines in this case. We are happy to consider any authority you provide that supports your requests for these categories of information.

As for your comments regarding Defendants' responses to requests for production numbers 2 and 7, as discussed above and in the interest of compromise, Defendants are willing to conduct custodial searches for the emails of Stephen Latta, Christine Munnelly, Melody Hwang, Steve Vahsen, Vice Admiral Sean Buck, Rear Admiral Fred Kacher, and Lisa Truesdale—contingent on appropriately narrowed search terms. We otherwise stand by our objections and responses to both requests for production.

<u>Interrogatory Responses</u>

Finally, you raise issues concerning two of Defendants' interrogatory responses. First, you suggest that Defendants' response to interrogatory number 2 is incomplete because it does not indicate whether USNA has commissioned any "studies or reports" to "evaluate the effect of USNA's admission process on the racial composition or diversity of the student body." Interrogatory number 2 requests the identification of "any studies, reports, audits or other data sets" that USNA "commissioned or performed to evaluate the effect of USNA's admissions process on the racial composition or diversity of the student body." After lodging objections based on vague and ambiguous language in the interrogatory, Defendants explained that "USNA has, over the years, reviewed the data contained in the Admissions Information System," and, "in particular, the data concerning the racial and ethnic diversity of applicants to access USNA's admissions process." Based on a reasonably diligent investigation, Defendants believe this response is complete. If additional information becomes available, Defendants will supplement their interrogatory responses as appropriate and consistent with Federal Rule of Civil Procedure 26(e).

Second, Plaintiff contends that Defendants have "limit[ed]" its response to interrogatory number 7 to "various points in 2022 and 2023." As an initial matter, Defendants presume you meant to refer to their response to interrogatory number 6 rather than interrogatory number 7. Contrary to your assertion, Defendants did not limit their response to "various points in 2022 and 2023." Rather, Defendants provided a complete response based on a diligent investigation. If additional information becomes available, Defendants will supplement their interrogatory responses as appropriate and consistent with Federal Rule of Civil Procedure 26(e).

Sincerely,

*/s/ Joshua E. Gardner*
Joshua E. Gardner
Special Counsel
Federal Programs Branch