UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS<br>*Plaintiff,*<br>v.<br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br>*Defendants.* | No. 1:23-cv-2699-RDB<br><br>**REPLY IN SUPPORT OF MOTION TO AMEND TRIAL SCHEDULE** |

  SFFA's motion should be no surprise to Defendants. When the parties negotiated the schedule in December, SFFA informed Defendants that the January 31 deadline played an "important role[] in us agreeing to this schedule" because "[o]ur experts need that information by [that] date[] to ensure they can make the May 10 report deadline." Ex. A. SFFA reiterated the importance of that timeline multiple times before the January 31 deadline and in nearly every communication the parties exchanged after that deadline passed. Yet Defendants' piecemeal productions have not only been late—all but two of them have contained inaccuracies, omissions, or both. SFFA's experts could not achieve substantial progress with an incomplete, inaccurate dataset. A similar pattern holds for the factual discovery process. It was not until last Wednesday—April 3—that the parties finally came to an agreement over search terms and the custodians to be searched. As a consequence, Defendants have produced *no documents* from any of these custodial searches. SFFA cannot take depositions without documents.

  SFFA is not asking for a lengthy extension. SFFA's requested schedule would still have this case resolved *far faster* than in *Harvard* and *UNC*. Indeed, SFFA wants to move quickly but not be forced to move so quickly that it precludes SFFA from making its case. Defendants' assertions about the prejudice they will suffer rings hollow. They are under no injunction. And SFFA is willing to work with them to adjust to their schedules. A moderate extension is essential

to ensuring that a full record is produced for this Court (and the appellate courts) in this incredibly important case. The Court should grant SFFA's motion.

***First,*** Defendants' assertions that SFFA has not been diligent in this case are demonstrably wrong. SFFA has been diligent in litigating this case. The record over the past few months proves that these delays were caused by Defendants—not SFFA.[1]

When the Court indicated that it would deny SFFA's motion for a preliminary injunction, SFFA attempted to begin discovery the very same day. On December 16, SFFA's counsel informed Defendants that SFFA wished to move quickly but that it "oppose[d] any effort to curtail our ability to obtain discovery or to further delay trial in this case." Ex. B at 1. SFFA stated that "the parties should agree or litigate now the scope of [document] custodians and admissions data." *Id.* "Given the Court's proposed deadlines," SFFA's counsel explained, "time is simply too precious to put it off another month." *Id.* But Defendants' counsel insisted that "there [was] no point in starting discovery before January 2, and we do not think this modest pushback by two weeks will impact either the discovery or trial schedule." Ex. C at 1.[2]

---

[1] Defendants' accusations about SFFA's diligence are disappointing. In its motion to amend, SFFA did not accuse Defendants of failing to work hard to produce the admissions data. SFFA assumed the accuracy of Defendants' numerous representations about the significant technological challenges they were facing in producing these data. But Defendants' diligence or lack thereof is ultimately beside the point. The reality is that Defendants' delays producing these data have put SFFA in a position where the current schedule is unworkable.

[2] Defendants claim that they never "agreed to make [their] best efforts to produce five years of individual level admissions data by January 31." Opp. Br. at 3 n.2. But SFFA has stressed since December that it needed "5 years of individual level admissions data" and that if this was "going to be an issue, then [SFFA] need[ed] to know as soon as possible." Ex. O. Defendants knew that SFFA was seeking the production of five years of admissions data by January 31 and never objected to it except to say they couldn't guarantee production would be completed by then, which is why they agreed only to make "every reasonable effort" to do so. Dkt. 59 at 1.

to ensuring that a full record is produced for this Court (and the appellate courts) in this incredibly important case. The Court should grant SFFA's motion.

***First,*** Defendants' assertions that SFFA has not been diligent in this case are demonstrably wrong. SFFA has been diligent in litigating this case. The record over the past few months proves that these delays were caused by Defendants—not SFFA.[1]

When the Court indicated that it would deny SFFA's motion for a preliminary injunction, SFFA attempted to begin discovery the very same day. On December 16, SFFA's counsel informed Defendants that SFFA wished to move quickly but that it "oppose[d] any effort to curtail our ability to obtain discovery or to further delay trial in this case." Ex. B at 1. SFFA stated that "the parties should agree or litigate now the scope of [document] custodians and admissions data." *Id.* "Given the Court's proposed deadlines," SFFA's counsel explained, "time is simply too precious to put it off another month." *Id.* But Defendants' counsel insisted that "there [was] no point in starting discovery before January 2, and we do not think this modest pushback by two weeks will impact either the discovery or trial schedule." Ex. C at 1.[2]

---

[1] Defendants' accusations about SFFA's diligence are disappointing. In its motion to amend, SFFA did not accuse Defendants of failing to work hard to produce the admissions data. SFFA assumed the accuracy of Defendants' numerous representations about the significant technological challenges they were facing in producing these data. But Defendants' diligence or lack thereof is ultimately beside the point. The reality is that Defendants' delays producing these data have put SFFA in a position where the current schedule is unworkable.

[2] Defendants claim that they never "agreed to make [their] best efforts to produce five years of individual level admissions data by January 31." Opp. Br. at 3 n.2. But SFFA has stressed since December that it needed "5 years of individual level admissions data" and that if this was "going to be an issue, then [SFFA] need[ed] to know as soon as possible." Ex. O. Defendants knew that SFFA was seeking the production of five years of admissions data by January 31 and never objected to it except to say they couldn't guarantee production would be completed by then, which is why they agreed only to make "every reasonable effort" to do so. Dkt. 59 at 1.

Defendants are correct that they "produced the data dictionaries for [the Academy's] admissions database on January 17." Opp. Br. at 6. First, it's not clear why it took weeks to produce these data dictionaries. But even then, this production barely moved the ball forward. When Defendants produced the dictionaries, they stressed that they were facing "numerous technological limitations and burdens in exporting the data" and so the parties would "need to confer over the data fields you believe you need." Ex. D at 1. On January 22, after reviewing the thousands of entries in the two data dictionaries (many of which were indecipherable), SFFA responded, "[w]e're unable to narrow our data requests because there are lots of fields that we do not understand. Is there a guidebook that you can provide that describes each field? If not, we're likely to request that you produce the entire database." Ex. E. Defendants insisted that "exporting the entire database [was] not feasible" and that there was also "no guidebook beyond the data dictionaries we produced." Ex. F. In lieu of a guidebook, opposing counsel proposed that SFFA should "work with the Academy to see which data fields correspond to [the] particular information" SFFA sought. *Id.*; *cf.* Opp. Br. at 6-7 (claiming for the first time that dictionaries were "self-explanatory").

On January 22, SFFA reminded Defendants that the parties were operating on a "tight schedule," and SFFA expressed "concern[] that the Naval Academy is unlikely to meet the January 31 target date for producing admissions data." Ex. G. Nevertheless, SFFA agreed to Defendants' proposal "given [Defendants'] representations about technical challenges on [their] end," so the parties could begin to "negotiate which data fields the Naval Academy will include in its production." *Id.*

On January 30, Defendants informed SFFA that they were still "investigat[ing] the feasibility of exporting the individual-level data you've requested for five classes." Ex. I.

3

Defendants stated that SFFA needed only a small fraction of the data fields listed in the dictionaries. *See* Ex. I. SFFA's counsel responded the same day: "We appreciate this initial step but remain very concerned about the timing here given that the schedule governing this litigation is built around the timing of the production of the five years of individual-level admissions data and the expert work to be performed using that data." Ex. H at 1. SFFA asked a number of technical questions about the fields on Defendants' list and those that were omitted. *Id.* On January 31, Defendants' counsel replied that they could answer only "questions 1, 2, and 7 based on the information we currently have." Ex. J at 1.

On February 7, Defendants produced a file with the Academy's slate report for 2023-2027, which listed applicants who received nominations for those class years and indicated whether they received an offer to the Academy or one of the prep schools. Opp. Br. at 7. But Defendants needed to produce these data again on February 12 because the initial version was in an unworkable format. Ex. K. (The second version of the slate report contained substantive errors, however, which SFFA brought to Defendants attention and Defendants acknowledged. Thus, Defendants sent the report a third time on February 22, "correct[ing] the … issue you flagged." Ex. L.) On February 13, troubled by the slow pace of the production and the problems with the substantive data file Defendants had produced, SFFA sent Defendants a letter outlining the problems. SFFA stressed:

> At the outset (and as we have discussed previously), we have serious concerns about the slow pace of production of individual-level admissions data, especially given that the expedited schedule the parties agreed to was built around prompt production in order to afford the parties' experts sufficient time to analyze those data and produce expert reports. We must receive those data as *soon as possible* if we are to have any chance of meeting the Court's discovery and trial deadlines. At the same time, we are strongly opposed to substantially delaying trial of this matter, and we suspect the court feels the same way.

Ex. R at 1. SFFA then identified a long list of technological and substantive questions it had about the data production to date. *Id.* at 1-3.

On February 16, Defendants produced the first portion of class-wide admissions data for the Classes of 2025-2027, broken up into twelve spreadsheets of information per year. The data in that production, however, comprised only a fraction of the already small dataset to which Defendants attempted to limit discovery. More importantly, it contained only a subset of the data for each class year, making it impossible for SFFA's experts to begin the modeling process. Worse yet, the production itself contained substantial errors.

On February 24, after its experts reviewed the production, SFFA sent Defendants another letter, again stressing its concerns over the pace of production:

> At the outset, we continue to have serious concerns about the slow pace of production of individual-level admissions data. On December 18, 2023, you committed to us and the Court that you would "make every reasonable effort to produce individual level admissions data by" "January 31, 2024." It is now more than three weeks past that date, and we appear to be far away from the completion of this data production. Indeed, you cannot even provide an estimated completion date for this production…. At this point, your inability to produce those data leaves the parties with no chance of meeting the expert disclosure and report schedule and threatens our ability to maintain the trial schedule. We thus reiterate our request to receive those data as *soon as possible*.

Ex. M at 1. SFFA's letter further raised a host of questions about the production to date and stressed that SFFA "continue[d] to have concerns about the format or incomplete nature of the individual admissions data produced so far." *Id*. at 2. As a result of the errors identified by SFFA, Defendants were forced to reproduce a substantial number of the files on February 28 to correct the "discrepanc[ies]" identified by SFFA. Ex. N.

Defendants produced the second half of what it considered to be the full data production for the Classes of 2025-2027 on February 29 and the corresponding data for the Classes of 2023 and 2024 on March 4. But once again, these files were either incomplete or deficient. On March 14, Defendants told SFFA because "the Academy discovered this week that it inadvertently omitted some prior military experience data for the classes of 2023 and 2024" that it would

5

"supplement its data production this week," which it later did. Dkt 69-2 at 1 n.1. On March 26, however, Defendants sent SFFA yet another "corrected file" of data, after SFFA's experts discovered that the original file contained applicant information from the wrong year. Ex. P at 1.

On March 28, SFFA once again notified Defendants that their experts had "found additional files that are mislabeled and/or duplicated." *Id*. On March 29, Defendants "thank[ed] [SFFA] for bringing this to our attention" and provided SFFA with a "corrected file." Ex. Q.

Five days ago, on April 5, SFFA sent Defendants another letter alerting them that there were "several data fields that were produced for some class years but not others or were omitted from previous productions entirely." Ex. T at 1. SFFA identified more than four pages of problems, identifying all the "missing data" from their production. *Id*. at 1-4. As of today, SFFA has not received a response from Defendants.

Defendants misleadingly describe all of these problems as a "few instances where [Defendants] discovered a data error." Opp. Br. at 7. As this record reflects, SFFA's experts have faced errors and delays from the very beginning. Nor should SFFA be faulted for "not [having] taken a single deposition." Opp. Br. 8. It makes no sense to schedule a deposition to ask questions about the admissions data *before SFFA has complete and accurate data*. Moreover, Defendants are fully aware that SFFA has sought to take a 30(b)(6) deposition in order to do just that, but Defendants have objected to several proposed topics and the parties are continuing to negotiate on this issue.

Nor did SFFA delay in filing its motion to amend. The parties reached an impasse on the schedule on March 29 and SFFA told the Court the same day that it would be filing a motion to amend the schedule so that the Court could address all the issues at the same conference. After Defendants said they were only available on April 11 (the last day provided by the Court), SFFA

6

followed up with its motion on April 5. This motion is now fully briefed and ready to be resolved (and addressed) at Thursday's conference if the Court is inclined to hear it then.

***Second,*** Defendants' assertion that SFFA can reasonably meet its proposed schedule fails on its face. From the outset, SFFA has insisted that it cannot meet the May deadline if Defendants did not produce the admissions data by January 31. It is now April 10 and SFFA still does not have complete and accurate admissions data. *See* Ex. T at 1-3. Nor is SFFA hiding the ball by describing their experts' "collective" unavailability. *See* Opp. Br. 5. SFFA's primary testifying expert—the one who will be creating econometric models of the admissions process—has preexisting obligations that include planned international and domestic travel from June 9-22 and July 1-21. And SFFA's second testifying expert who intends to use the same data and admissions models has preexisting obligations with planned travel from June 28-July 7, July 22-23, August 19-22, and August 26-27. So Defendants' proposed schedule—which moves expert depositions to June 25 through July 26—is simply unworkable. *See* Opp. Br. at 10.[3]

The discovery issues are not limited to expert discovery, as Defendants insist. Opp. Br. 6. Fact discovery has been similarly delayed. Though SFFA served its document requests in December, it was not until *last Wednesday*, April 3, that the parties finally agreed on search terms and custodians. Ex. U. (Defendants originally proposed searching only *one* custodian and limited search terms.) As a consequence, as of this date, Defendants have not produced a *single document* derived from the parties' custodial searches. Defendants likely have tens of thousands of

---

[3] Defendants' proposed timing for expert depositions (Opp. Br. at 10) is untenable for an additional reason: it spans across the time for expert rebuttal reports, leaving only 11 days after rebuttal reports are submitted for experts to be deposed. When SFFA previously raised this issue, Defendants seemed to acknowledge the impracticality of this timing and thus amended their proposed schedule. It's puzzling that Defendants have now reverted to that timing for expert depositions.

documents to review, and they have not committed to a firm date by which SFFA will receive any of these documents. Even when they are produced, SFFA will still have to review the documents and determine whether to contest any privilege assertions. And depositions cannot even begin until SFFA is in possession of the deponent's documents. (Even still, SFFA proposes a shorter extension of the fact discovery schedule (60 days) than the expert report deadlines (91 days). SFFA's proposed close for fact discovery is a few weeks before its proposed close of expert depositions, and so would have no effect on the trial date.)

Importantly, SFFA is not asking for an extended delay. The schedule SFFA is requesting is still *far faster* than occurred in *Harvard* and *UNC*. SFFA filed its complaints in those cases on November 17, 2014, but bench trials did not occur in those cases until October 15, 2018 (for Harvard) and November 9, 2020 (for UNC). Although some of those dates were attributable to a stay pending *Fisher* and a brief delay in UNC due to COVID-19, this case will still proceed on a far faster timetable than those cases. Indeed, in *Harvard*, the parties had more than thirteen months between when the Court ordered admissions data to be produced (September 7, 2016) and the date for opening expert reports (October 16, 2017), *see* Dkts. 181, 415-8, *SFFA v. Harvard*, 14-cv-14176 (D. Mass.), and nearly a year from the date of production until those opening reports.

***Third,*** Defendants will suffer no prejudice if the Court grants SFFA's motion. Defendants have repeatedly pushed for a *slower* timetable throughout this case. They asked for eight weeks to respond to SFFA's motion for preliminary injunction. They refused to begin discovery until after the New Year. They even chose the latest available date for the parties' upcoming discovery conference on April 11. Yet Defendants now insist that the parties sprint through discovery on a timeline they unilaterally compressed. It's difficult not to draw the conclusion at this point that Defendants are trying to overcome strict scrutiny by inhibiting SFFA's ability to develop a record

8

in this case. SFFA is willing to accommodate Defendants' requests and engage with Defendants' concerns on a good-faith, collaborative basis, as amply demonstrated by the record above. But SFFA needs the moderate extension requested to develop the record for this important case.

## CONCLUSION

For the foregoing reasons, the Court should grant SFFA's motion to amend and enter the schedule proposed by SFFA or a similar schedule that sets this case for trial to begin at the earliest date after November 11 that is convenient for the Court and the parties.

Dated: April 10, 2024

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Adam K. Mortara*
(TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Thomas R. McCarthy*
Patrick Strawbridge*
J. Michael Connolly*
Bryan K. Weir*
Cameron T. Norris
James F. Hasson*
R. Gabriel Anderson**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
patrick@consovoymccarthy.com
mike@consovoymccarthy.com
bryan@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice
**pro hac vice forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, a copy of the foregoing was served electronically on:

Joshua Gardner
Civil Division, Federal Programs Branch
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 514-4336
joshua.e.gardner@usdoj.gov

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Thomas R. McCarthy*