# Exhibit M



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

February 24, 2024

**VIA EMAIL**

Joshua E. Gardner
U.S. Department of Justice

    Re:    Discovery Issues

Dear Joshua:

We write in response to your February 22, 2024 letter regarding USNA's discovery responses and productions. We appreciate your responses to some of our questions, but many important issues remain unresolved.

At the outset, we continue to have serious concerns about the slow pace of production of individual-level admissions data. On December 18, 2023, you committed to us and the Court that you would "make every reasonable effort to produce individual level admissions data by" "January 31, 2024." It is now more than three weeks past that date, and we appear to be far away from the completion of this data production. Indeed, you cannot even provide an estimated completion date for this production. We thus strongly disagree that your production to date has been "remarkably expedited." USNA Letter 1.

At this point, your inability to produce those data leaves the parties with no chance of meeting the expert disclosure and report schedule and threatens our ability to maintain the trial schedule. We thus reiterate our request to receive those data as *soon as possible*. We discuss these and other concerns further below.

**Individual-Level Admissions Data**
You appear to imply that the BART data and Slate Report data are sufficient. While you are correct that some of the fields in Application, Recommendations, RAB Adjustments, Nominations, Extracurricular Activities, and Test tabs of the data dictionary are duplicated in the BART data, those tabs also contain many fields that appear highly relevant that are not present in the BART tab. For example, our February 13, 2024, letter asked for "relevant dates for when candidates were admitted, rejected, placed on a wait list, or withdrew their applications." These dates are highly relevant because they reveal the timing of when any applicant was competing for admission. Much of that data is contained in the Application tab but not in the BART tab. To the extent that a field in any of the above tabs is identical to a field already produced from the BART tab, SFFA has no objection to the Academy excluding that field from successive productions.

You ask us to "review the BART data to determine what, if any additional fields [we] need." USNA Letter 2. For the reasons described above, SFFA needs, at minimum, the non-duplicative

data fields from the Application, Application Review Routing, Nominations, and Test tabs.

We disagree that information regarding offers of admission and matriculation to the various Academy prep schools are not relevant or proportional to the needs of this case. The prep schools are a major source of Academy admissions and feature prominently in the documents and data produced by the Academy thus far. We reiterate our request for the prep school data described in our February 13, 2024 letter.

The BART data provides final scores of each of the WPM components but often omits crucial contextual information regarding how those scores were computed. Your February 22, 2024, letter directed us to documents USNA-00000506 and USNA-00001861. It is difficult, if not impossible, to gain a full understanding of the WPM components without the following algorithms and score-conversion charts referenced in those documents: RSO_OPTIONS; NPRDC_ALGORITHMS; RANK_IN_CLASS_CONVERSIONS; and PRE_USNA_ECAS.

We reiterate our request for all data indicating whether one nomination path takes priority over another when applicants are nominated through more than one process. That information appears to be contained in the "Application Review Routing" tab of the data dictionaries. Please produce all non-duplicative data fields from the Application Review Routing tab.

Finally, we continue to have concerns about the format or incomplete nature of the individual admissions data produced so far:

- The number of candidates listed in each document seems to vary wildly. For example, Part 1 of the BART General Information production lists 16,320 applicants, with no duplicates. Part 1 of the BART Academic Information production lists the enrollment history for each candidate in Year 2025. One would expect the number of candidates listed there to be roughly the same as in the biographical information, but the enrollment-history file contains several thousand fewer candidates. Please explain this and any similar discrepancies.

- As shown in the BART General Information production, the Academy averages 15,000 applicants each year. These numbers are consistent with the Academy's previous representations about its application figures. But the Slate Report contains only 34,525 applicants across all five class years. Based on the 15,000-per-year average, one would expect the Slate Report to contain roughly nearly 75,000 applicants. What is the reason for this discrepancy?

- Some of the data in Part 1 of the BART General Information production suffer from the same inconsistencies that were present in the initial version of the Slate Report. Specifically, there continue to be instances where an application is recorded as "incomplete," yet the applicant reportedly accepted an offer from the Naval Academy. Please run the same corrective process for those files that you conducted for the Slate Report data.

**Custodians**
You propose to limit ESI searches to only seven custodians. But none of these individuals are part of the regional admissions teams. Your proposed list of custodians also notably omits several individuals who serve on the admissions board, including the chairman of the board, as well as other individuals who serve in critical capacities. Custodians who serve on the admissions board are plainly relevant and proportional to the issues in this case.

Production of ESI belonging to the Academy's Regional Admissions Directors is also plainly relevant and proportional. The Regional Directors oversee the teams that conduct initial reviews of applications, communicate with applicants, and present candidates to the board. They are entrenched in the day-to-day operations of the admissions office and their ESI cannot be dismissed as irrelevant or unnecessary. Regarding Ms. Zaccheo, we recognize that she began her role as the Director of Candidate Guidance on January 31, 2024, but she previously served as the Region 0 Director—a position she held throughout the identified timeframe for custodial searches. Thus, her records are relevant and proportional to the needs of this case.

In the interests of compromise, we are willing to remove Maj. A.E. Brimhall, CAPT J.L. Birch, and Region 3 Director James Calicott from the list of custodians. We believe this compromise would likely provide SFFA with representative ESI from relevant custodian pools while minimizing any burden on the Academy.

This compromise is contingent on the parties being able to agree on appropriately narrowed search terms. You state that you are checking your files and will "narrow the search terms" that we previously sent. Please send us your proposed search terms as quickly as possible. And to the extent you claim that any of our proposed terms are overly burdensome, please produce information to support that claim (e.g., search term hit-rate analysis).

**RFP #1**
SFFA continues to believe that it is entitled to electronic and printed databases regarding academic performance and matriculation. For the reasons it previously gave, the district court's ruling in *UNC* is inapposite here given the "distinct interests" that USNA is asserting. Dkt. 46 at 1. To put it simply, USNA asserts that it must consider race to establish—and subsequently maintain—a "pipeline of well-prepared and diverse officer candidates." Dkt. 46 at 51 (cleaned up); *see also*, *e.g.*, Dkt. 46-2 at 28 (same); Dkt. 46-3 at 6 (same); Dkt. 46-6 at 14-15 (same). Strict scrutiny requires (among other things), that USNA's use of race "further" that goal. *SFFA v. Harvard*, 600 U.S. 181, 206-07 (2023). In other words, it requires that USNA's use of race *actually* boost racial diversity in the officer corps. Individual academic performance and matriculation data by race thus is highly relevant to the question whether USNA's use of race furthers its goal of creating and maintaining "a pipeline of well-prepared and diverse officer candidates." Dkt. 46 at 51 (cleaned up). We thus reiterate this request.

**RFP #2, 7**
You state that you will "conduct custodial searches" for certain individuals but that you "otherwise stand by [your] objections and responses to both requests for production." For the

removal of doubt, please confirm that you will produce documents responsive to RFP #2 and RFP #7 if they are located through these custodial searches.

### RFP #9

We are grateful for your agreement to "search for reports listing candidates for the purpose of selecting qualified alternates." USNA Letter 4. Because the order-of-merit lists for qualified alternates were one example among a broader category of documents, we request that you produce any other order-of-merit lists that you obtain while conducting those searches, rather than limiting production to solely to qualified-alternates lists.

In addition, please confirm that you will produce documents responsive to RFP #9 if they are located through your custodial searches.

### RFP #11

We are puzzled by your response here. This case is about the lawfulness of USNA's use of race in the admissions process. Accordingly, we seek documents about any "complaint[s]" about the "use of race in Your admissions process," including your "investigation and resolution" of such complaints. If USNA has wrongfully used race in the admissions process, SFFA has every right to know about it. Further, our request cannot possibly be "unduly burdensome," USNA Letter at 5, because we ask only that you produce these documents if they are located through your custodial searches, *see* SFFA Letter at 4. Please withdraw this objection or provide an explanation for why producing such documents would be "unduly burdensome and disproportionate to the needs of this case." USNA Letter 5.

### RFP #14

We continue to insist that you provide documents in response to this request. Terms such as "SFFA" and "Students for Fair Admissions" and "Harvard" are obviously highly likely to result in relevant documents. Indeed, we do not understand you to dispute this. Your only objections are that many of these communications would be with "Department of Justice or Naval Academy counsel" and that it would be burdensome to identify all such documents and communications in a privilege log.

In the interests of compromise, USNA need not produce (nor log) any direct communications with "Department of Justice or Naval Academy counsel" for this request. But all other responsive documents should be produced.

### Interrogatory #2

Your answer continues to be unresponsive. Narrow tailoring demands "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). We are entitled to know the *specific instances* in which USNA claims to have engaged in this "serious, good faith consideration of workable race-neutral alternatives"—not just general assertions that you "reviewed data" "over the years." For example, both Harvard and UNC purported to identify each instance in which they claimed to have performed this analysis. *See, e.g., SFFA v. UNC*, 567 F. Supp. 3d 580, 635-36 (M.D.N.C. 2021). The failure to produce information about any specific instances in which USNA engaged in serious, good faith consideration of race-neutral alternatives would only prove that USNA has not done so.

February 24, 2024
Page 5

Interrogatory #2 asks you to "identify by date, author, and title any studies, reports, audits or other data sets" that USNA performed "to evaluate the effect of USNA's admissions process son the racial composition or diversity of the student body." If you are not aware of any such studies or reports, then the Interrogatory response should make that clear. Moreover, you should identify the dates on which you "reviewed" admissions data "over the years."

**Interrogatory #6**
You state that you "did not limit [your] response to 'various points in 2022 and 2023.'" If that is the case, please confirm that you are not aware of any other "attempts USNA has made to assess the effects that a race-neutral admissions process would have on the racial composition of the Brigade of Midshipmen" other than the instances you have identified "in 2022 and 2023." USNA Interrogatory Response at 7.

\*     \*     \*

Given the expedited schedule, we appreciate your prompt response to the issues addressed in this letter.

Sincerely,

Thomas McCarthy