# Exhibit R



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

February 13, 2024

**VIA EMAIL**

Joshua E. Gardner
U.S. Department of Justice

  Re: Discovery Issues

Dear Joshua:

I am sending this letter to follow up on the issues we raised on the call yesterday regarding USNA's discovery responses and production, as well as to raise a few additional issues we didn't get to before the close of the call. At the outset (and as we have discussed previously), we have serious concerns about the slow pace of production of individual-level admissions data, especially given that the expedited schedule the parties agreed to was built around prompt production in order to afford the parties' experts sufficient time to analyze those data and produce expert reports. We must receive those data as *soon as possible* if we are to have any chance of meeting the Court's discovery and trial deadlines. At the same time, we are strongly opposed to substantially delaying trial of this matter, and we suspect the Court feels the same way. We discuss these and other concerns below.

**Individual-Level Admissions Data**

We appreciate your commitment to produce five years of admissions data. And we appreciate your production of such data in CSV format. We prefer to receive the CSV format. But if the Naval Academy intends to use or provide to its expert(s) the "more readable" version you initially produced, then we would like that version produced to us as well.

In addition, we have multiple concerns about the production of admissions data (some of which we raised two weeks ago):

- Please provide relevant dates for when candidates were admitted, rejected, placed on a wait list, or withdrew their applications.
- Please provide additional data regarding the process of extending offers of admission to USNAPS and all of the civilian prep schools. The current production notes whether an admitted candidate matriculated from one of the prep schools and whether a rejected candidate received an offer to attend one of the prep schools. However, the production does not specify which candidates were considered for admission to the prep schools but did not receive prep school offers. Nor does it specify which candidates were not considered for prep school admission at all.
- Please explain how the data contained in the CSV file produced yesterday is maintained in the normal course of business and how it is pulled from wherever it is housed electronically and organized in the CSV file.

- We understand that you intend to produce the vast majority of the "BART data" for the '25, '26, and '27 admissions cycles within "a week or two." Please provide a more specific date by which we can expect this production,
- We understand that the production of the "BART data" for the '23 and '24 admissions cycles will come after that. Please provide a more specific date by which we can expect this production.
- There are numerous data fields outside of the "BART tab" that contain information that appears relevant to the admissions process. In particular, there are 28 other tabs in that same data dictionary (file ending in -102), many of which appear to contain relevant data fields (e.g., Application, Recommendations (AIS), RAB Adjustments, Nominations, Extracurricular Activities, Test, just to name a few). And there are another 15 tabs in the -101 file, many of which appear to contain relevant fields too. Relatedly, for some tabs (e.g., RAB Adjustments), there appear to be a subset of those fields in the BART tab (Fields 344-48 in the BART tab appear to be the same as fields in the RAB Adjustments tab). At this time, we request that you produce the fields in the Application, Recommendations (AIS), RAB Adjustments, Nominations, Extracurricular Activities, and Test tabs. We reserve the right to request other fields if it becomes clear that they are relevant.
- There is a set of data fields in the BART tab that appear to be components of the WPM (fields 281 to 294). Are they indeed components of the WPM? If so, is this the entire set of all components in the WPM?
- Because many of the data fields are indecipherable to us, it is unclear whether there are any fields in the BART tab (or anywhere in the -101 and -102 files, for that matter) that include information about LOAs (which Defendants' declarations describe as an important part of the admissions process). Could you please identify which fields relate to LOAs?
- Race-neutral alternatives are obviously an important issue in this case. It's not clear to us which fields relate to race-neutral alternatives (or if any are in the BART tab). Could you identify those for us?
- There appear to be some instances where data fields for a particular applicant are inconsistent. For example, there are instances where the application is recorded as "incomplete" in Column S, yet the applicant reportedly accepted an offer from the Naval Academy, as noted in Column T (see Row 36, Aaron Fletcher Matthews). Can you explain why Mr. Fletcher's entries are recorded this way?
- There are numerous applicants who have a WPM of 0. Can you explain why this is?
- There are numerous applicants who were nominated through more than one process. See, for example, Row 417, where the applicant received two nominations, Virginia Senator 2 and Presidential. In such a scenario, does one nomination path take priority over the other in the process?

**Custodians**

In your response to our document requests, you proposed to conduct only one ESI search (for Dean Latta). That is wholly inadequate. The district court has repeatedly emphasized the need for a complete factual record. *See, e.g., SFFA v. Naval Academy*, 2023 WL 8806668, at *1 (D. Md. Dec. 20) ("[I]t is imperative that a factual record be developed in this matter."); P.I.-Trans.123 at 10-13 ("[W]e have to develop the factual record. I don't know what the factual record is so

we have to develop a record."); P.I.-Trans.116 at 10-11 ("things … need to be developed in the factual record"); *see also SFFA v. West Point*, No. 23A696 (S. Ct.) ("The record before this Court is underdeveloped."). By comparison, SFFA received ESI searches for 24 custodians in *Harvard*.

In recognition of the expedited proceedings, we have limited our requests to only 20 custodians—four fewer than in *Harvard*. As you requested, we are providing you today with our list of custodians and search terms. *See* Appendix. These are being provided subject to the caveat that if documents produced in this proceeding yield additional relevant custodians and/or search terms, SFFA reserves the right to request additional searches.

SFFA also opposes USNA's attempt to limit its searches to January 1, 2022, which would be in the middle of an admissions cycle. At a minimum, USNA should search from September 1, 2021 through January 1, 2024. We believe going back further is warranted but would settle on September 1, 2021 as a compromise position (assuming we can come to agreement on custodians and search terms as well).

## RFP #1
SFFA reiterates its request to receive electronic and printed databases regarding academic performance and matriculation. USNA is claiming that it must use race in the admissions process because "the nation's military strength and readiness depend on a pipeline of officers who are both highly qualified and racially and ethnically diverse." Dkt. 46 at 31. At a minimum, SFFA is entitled to the evidence needed to test USNA's assertions.

That the district courts in Harvard and UNC did not provide academic-performance data is of no moment, given USNA's repeated insistence that "the military's interest in officer diversity is entirely distinct from Harvard's and UNC's interest in student diversity." Dkt. 46 at 47.

## RFP #2
SFFA reiterates its request for documents "concerning the racial composition of the pool of applicants, admitted persons, or enrollees to USNA." SFFA is providing USNA with a list of custodians and search terms. If the documents USNA finds match this request, then USNA should produce them. USNA has no grounds to limit its production to the narrow categories of documents it proposes to produce.

## RFP #7
SFFA reiterates its request for communications "regarding the use of race in the admissions process." SFFA is providing USNA with a list of custodians and search terms. If the documents USNA finds match this request, then USNA should produce them. USNA has no grounds to limit its production to the narrow categories of documents it proposes to produce.

## RFP #9
In the interest of compromise, SFFA modifies its request so that it seeks documents "reflecting the comparison of any two or more individual applicants **(along with one or more of their races)** for admission to USNA as part of the admission decision-making process during the Relevant Period." We are seeking documents in which individuals are compared against one

February 13, 2024
Page 4

another and one student's race is also identified. For example, we are seeking the "order of merit" lists the Academy created for each slate (e.g., the rank-ordered list the Academy created for the purpose of choosing qualified alternates).

### RFP #11
SFFA reiterates its request for documents "concerning any complaint You received about the use of race in Your admissions process during the Relevant Period, including (but not limited to) documents concerning to the investigation and resolution of any complaint." SFFA is providing USNA with a list of custodians and search terms. If the documents USNA finds match this request, then USNA should produce them.

### RFP #14
SFFA reiterates its request for "communications during the Relevant Period concerning SFFA, the Plaintiff and its representatives, the Complaint, or this action (before or after it was filed)." SFFA is providing USNA with a list of custodians and search terms. If the documents USNA finds match this request, then USNA should produce them. Contra the USNA's representation, searches for terms like "SFFA" and "Students for Fair Admissions" will almost certainly produce highly relevant documents that cannot be protected under any privilege.

### Interrogatory #2
That USNA has "reviewed data" "over the years" appears to be unresponsive. USNA must "identify by date, author, and title any studies, reports, audits or other data sets" that USNA performed "to evaluate the effect of USNA's admissions process on the racial composition or diversity of the student body." *See, e.g., SFFA v. UNC*, 567 F. Supp. 3d 580, 635-36 (M.D.N.C. 2021) (identifying UNC's specific efforts). If there are no such studies or reports, then the Interrogatory response should make that clear.

### Interrogatory #7
SFFA objects to USNA's limiting its response to "various points in 2022 and 2023." If USNA has ever "assess[ed] the effects [of] a race-neutral admissions process," it should identify those attempts. *See, e.g., SFFA v. UNC*, 567 F. Supp. 3d 580, 635-36 (M.D.N.C. 2021) (identifying UNC's specific efforts).

*     *     *

Given the expedited schedule, we appreciate your prompt response to the issues addressed in this letter.

Sincerely,<br><br>Thomas McCarthy

# APPENDIX

### Custodians

1)      Stephen Latta
2)      Christie Munnelly
3)      Melody Hwang
4)      Steve Vahsen
5)      Lauren Zaccheo
6)      Nadia Ward
7)      Ronnie Neal
8)      James Callicott
9)      Savannah Patrick
10)      CDR J.M. Duff
11)      CAPT H.E. Lacy
12)      CAPT B.W. Baker
13)      Maj. A.E. Brimhall
14)      CAPT J.L. Birch
15)      L.M. Siegler
16)      Chief Micah Siegfried
17)      LT Taylor Alvarez
18)      Vice Admiral Sean Buck
19)      Rear Admiral Fred Kacher
20)      Lisa Truesdale

### Search Terms

WPM
"whole person multiple"
CFA
points
race-neutral
blum
"affirmative action"
"plus factor"
plus-factor
preferen!
over-represen!
overrepresen!
under-represen!
underrepresen!
URM
balanc!
quota
race
racial

target!
composition
colorblind
divers!
SFFA
"Students for Fair Admissions"
westpointnotfair
Grutter
Gratz
Bakke
Harvard
UNC
"University of North Carolina"
"Supreme Court"
Asian!
African!
black!
hispanic
latin!
white
caucasian
BGO
CIVPREP
FDN
Foundation
NAPS
"Prep School"
"Prep Pool"
RAB
RABs
CFA
QB
Q-Prep
NQ-Prep
"Early Notify"
"BCF"
"BCN"
"BC"
"CRC"
"HIC"
"LOA"
"NQ"
"NR"
"NAF"
"LEG"
"RD"
qualif!
"not qualified"

"qualified alternate"
"superintendent nomin!"
appoint!
holistic
"AA"
"HISP"
minority
nomin!
congress!
presidential
fleet
board
ethnic!
adjust!
"affinity groups"
"major demographic groups"
demograph!
attrit!
mismatch
washout
wash-out
fail!
retention