# EXHIBIT 2



**U.S. Department of Justice**  Chris Edward Mendez, Trial Attorney
Civil Division  Tel: (202) 616-8482
Federal Programs Branch  chris.e.mendez@usdoj.gov

---

**April 10, 2024**

The Honorable Richard D. Bennett
United States District Court for the District of Maryland
101 W. Lombard Street
Baltimore, Maryland 21201

   Re: *SFFA v. The United States Naval Academy*, No. 1:23-cv-02699 (D. Md.)

Judge Bennett:

  Plaintiff seeks the Court's intervention concerning (1) Defendants' objection to producing individual-level "performance" data; and (2) Defendants' assertion of the deliberative process privilege (DPP) over nine documents. Given the importance of these issues, Defendants respectfully request the opportunity to brief these issues if the Court is not inclined to deny Plaintiff's requests outright.

### I. Individual-Level "Performance" Data

  Plaintiff requests the production of individualized performance and matriculation data. This data has little to no relevance, is cumulative of information the Naval Academy has already produced to reach compromise, and would impose significant burdens on the Naval Academy.[1]

  Data regarding the performance and matriculation of individual midshipmen—such as their courses, majors, GPAs—is irrelevant because admissions decisions are based on information known at the time of the decision. *SFFA v. Harvard*, 600 U.S. 181 (2023) did not measure admissions policies based on subsequent academic performance or matriculation. In fact, the district courts in both the *Harvard* and *UNC* cases expressly rejected Plaintiff's request for similar information. *SFFA v. UNC*, 2017 WL 11684866, at *5–6 (M.D.N.C. Aug. 9, 2017); *SFFA v. Harvard*, No. 1:14-cv-14176, Dkt. 181, at *2 (D. Mass. Sept. 7, 2016). Relevant discovery "means reviewing Applicant's application against other admitted students at the time of the decision—not enrolled student performance." *UNC*, 2017 WL 11684866, at *5. An individual midshipman's GPA at the end of her first semester of sophomore year, at graduation, or at any other point, for example, has no bearing on Plaintiff's challenge to the consideration of race during admissions or Defendants' compelling interests.

  The only possible relevance of the information Plaintiff seeks is whether, across racial groups, students matriculate and graduate to become Naval officers. Defendants have already produced that information in an attempt to reach compromise. "Proportionality requires courts to consider . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188–89 (4th Cir. 2019). Defendants have already produced expected class lists of individual midshipmen on matriculation day, including their race. Defendants also already have produced performance data showing aggregate graduation rates by race, commissions to the officer corps from the Naval Academy by race, and attrition rates and causes by race. Plaintiff has

---

[1] Plaintiff's effort to compel the production of this data is also untimely. *See* L.R. 104.8(a) (requiring a motion to compel within 30 days of the other party's response to the RFP). Defendants served their response to the discovery request at issue on February 1, 2024. Plaintiff notified Defendants on March 22 that it planned to take the issue to the Court.

never explained why this information is not sufficient or provided authority to support its request.

The significant burden of extracting the information Plaintiff seeks from the Naval Academy's complex databases compounds the disproportionality. The data extraction is neither automatic nor simple. It requires significant time and manual work (as shown by the hundreds of hours expended in producing individualized admissions data), and would further divert the Naval Academy's small data team from performing their mission-critical work.

## II.   Deliberative Process Privilege Challenge

First, Plaintiff claims, contrary to extensive caselaw, that DPP categorically does not apply in discrimination claims.[2] And contrary to Plaintiff's contention, "[r]elevance alone is an insufficient reason for breaching the deliberative process privilege." *United States v.* Farley, 11 F.3d 1385, 1390 (7th Cir. 1993).

Second, Plaintiff claims Defendants have not followed the proper steps for asserting DPP because Defendants served a privilege log rather than a declaration formally invoking the privilege. The submission of a declaration formally invoking DPP is only necessary once the requesting party has filed a motion to compel after failing to resolve disputes based on the privilege log.[3]

Finally, Plaintiff cannot show compelling need for any of the nine challenged documents. With respect to documents 2, 5, and 7–10, regarding analyses of the use of college entrance exams, Plaintiff claims this is relevant to race-neutral alternatives. But as Defendants explained in their interrogatory responses, the 2023 National Defense Authorization Act requires the consideration of standardized test scores. Accordingly, dispensing with the consideration of standardized tests is no longer an option the Naval Academy may consider, making these privileged documents particularly irrelevant.

Documents 12 and 16 are drafts of a letter from the Naval Academy Superintendent to the House Armed Services Committee. Defendants have produced the final letter and thus the drafts are "by definition" predecisional. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 269 (2021). In addition, these drafts reflect the Naval Academy's deliberations regarding its response to the Committee's questions. *Eco. Rights Found. v. U.S. EPA*, 607 F. Supp. 3d 979, 1003 (N.D. Cal. 2022) (draft response to Congress properly withheld under DPP); *New York Times v. U.S. Dep't of Defense*, 2007 WL 2609572, *1 (S.D.N.Y. Aug. 28, 2007) (same).

Finally, with respect to document 17, Defendants have redacted only one page of the twenty-page document that includes redline edits and comment bubbles concerning recommendations, which are definitionally predecisional and deliberative. Defendants have produced the final version of this document. Plaintiff has failed to demonstrate any compelling need for these documents.

---

[2] *See, e.g., Stone v. Trump*, 402 F. Supp. 3d 153, 158-59 (D. Md. 2019) (applying balancing test—not categorical exclusion—to assess DPP in equal protection challenge); *Heyer v. U.S. Bureau of Prisons*, 2014 WL 4545946, *4 (E.D.N.C. Sept. 12, 2014) (rejecting argument that DPP categorically is inapplicable where intent is at issue). *Accord Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019); *In re United States*, 678 F. App'x 981, 990 (Fed. Cir. 2017).

[3] *See, e.g.*, *In re Sealed Cases*, 121 F.3d 729, 741 (D.C. Cir. 1997) (holding that the White House was not obligated to "formally invoke its [executive] privileges in advance of the motion to compel"); *Del Socorro Quintero Perez v. United States*, 2016 WL 499025 (S.D. Cal. Feb. 9, 2016) ("Plaintiffs[] cite to no authority for the proposition that the deliberative process privilege is waived if a declaration is not provided with the privilege log."). *Accord Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726, 727 (2006); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005).

Sincerely,

*/s/ Chris Edward Mendez*
Chris Edward Mendez
Trial Attorney