UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

STUDENTS FOR FAIR ADMISSIONS
*Plaintiff*,

v.

THE UNITED STATES NAVAL ACADEMY, *et al.*,
*Defendants*.

No. 1:23-cv-2699-RDB

**REDACTED**

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON STANDING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................i
INTRODUCTION..............................................................................................................1
STATEMENT OF UNDISPUTED FACTS .......................................................................1
STANDARD OF REVIEW................................................................................................7
ARGUMENT......................................................................................................................8
    I.    SFFA's members would have standing to sue in their own right. ...................8
        A.    Member A would have standing on his own. ........................................9
        B.    Member B would have standing on his own. ...................................... 11
        C.    Member C would have standing on his own. ...................................... 12
        D.    Member D would have standing on his own. ...................................... 13
    II.   SFFA satisfies the remaining factors for associational standing. ................. 14
CONCLUSION................................................................................................................ 14
CERTIFICATE OF SERVICE ........................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
  103 F.4th 765 (11th Cir. 2024) ................................................................................... 9, 10

*Am. Canoe Ass'n v. Murphy Farms, Inc.,*
  326 F.3d 505 (4th Cir. 2003) ........................................................................................ 7, 8

*Bouchat v. Balt. Ravens Football Club, Inc.,*
  346 F.3d 514 (4th Cir. 2003) ............................................................................................ 7

*Gratz v. Bollinger,*
  539 U.S. 244 (2003) ............................................................................................... *passim*

*Murthy v. Missouri,*
  144 S.Ct. 1972 (2024) ....................................................................................................... 9

*Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.,*
  566 F. Supp. 3d 383 (D. Md. 2021) ............................................................................. 7, 8

*Ne. Fla. Chapter of AGCA v. City of Jacksonville, Fla.,*
  508 U.S. 656 (1993) ................................................................................. 8, 9, 11, 12, 13

*SFFA v. Harvard,*
  261 F. Supp. 3d 99 (D. Mass. 2017) ............................................................................ 8, 14

*SFFA v. Harvard,*
  346 F. Supp. 3d 174 (D. Mass. 2018) ............................................................................ 1, 7

*SFFA v. Harvard,*
  600 U.S. 181 (2023) ............................................................................................ 1, 8, 12, 14

*SFFA v. Naval Academy,*
  2023 WL 8806668 (D. Md. Dec. 20) ....................................................................... 7, 8, 14

*SFFA v. UNC,*
  2018 WL 4688388 (M.D.N.C. Sept. 29) .................................................................. 8, 9, 14

*SFFA v. UNC,*
  2019 WL 4773908 (M.D.N.C. Sept. 30) ........................................................................ 1, 7

*SFFA v. Univ. of Tex. at Austin,*
  37 F.4th 1078 (5th Cir. 2022) ....................................................................................... 1, 8, 9

*SFFA v. West Point,*
  2024 WL 36026 (S.D.N.Y. Jan. 3) .................................................................................... 1

*Universal Life Church Monastery Storehouse v. Nabors,*
  35 F.4th 1021 (6th Cir. 2022) ........................................................................................... 9

## INTRODUCTION

Every court to have considered whether SFFA has Article III standing to challenge college admissions policies has held that it easily does. *SFFA v. Harvard*, 600 U.S. 181, 198-99 (2023); *e.g.*, *SFFA v. Univ. of Tex. at Austin (UT)*, 37 F.4th 1078, 1086 & n.8 (5th Cir. 2022); *SFFA v. West Point*, 2024 WL 36026, at *8 (S.D.N.Y. Jan. 3, 2024); *SFFA v. UNC*, 2019 WL 4773908, at *5 (M.D.N.C. Sept. 30, 2019); *SFFA v. Harvard*, 346 F. Supp. 3d 174, 192 (D. Mass. 2018). And in the two cases that reached the Supreme Court—*Harvard* and *UNC*—standing never came up at trial because that question had been resolved ahead of time as a matter of law. This Court should do the same by granting partial summary judgment on standing before the trial begins.

SFFA has standing if one of its members could sue on his own, the case is germane to SFFA's purpose, and the litigation does not require its members' participation. The second and third requirements are undisputed. On the first, SFFA need only show that it has at least one member who is able and ready to apply once a court enjoins the Academy from considering race. SFFA has four: Members A, B, C, and D. After the Academy spent several hours deposing each of these members, there is no question that at least one could sue on his own. Fact discovery is now closed. As in *Harvard* and *UNC*, this Court should resolve standing as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

SFFA is a membership association dedicated to ending the use of race in admissions. *Harvard*, 600 U.S. at 197; Blum Decl. (Doc. 9-5) ¶2; Ex. A at 94:7-19; Ex. D at 13:12-14:1. This case challenges the use of race in admissions at the Naval Academy. SFFA sues on behalf of its members, seeking declaratory and injunctive relief. Compl. (Doc. 1) at 27. In this litigation,

1

SFFA has identified four of its members—Members A through D—and the Academy has deposed all of them. Those depositions spanned roughly eleven hours in total. Now that discovery is closed, the following facts are undisputed.

**Member A.** Member A is ▉▉▉▉▉▉▉. Ex. A at 5:16-21; Ex. K ¶12.[1] He is white. Ex. K ¶2. He has long wanted to attend the Naval Academy. Ex. A at 31:20-32:8 (the Academy was his "first choice" for college); Ex. K ¶3. Member A wanted to attend the Academy because, among other reasons, it is "a tradition in [his] family to join the military." Ex. A at 33:3-8 (discussing how ▉▉▉▉▉▉▉). Member A applied to the Naval Academy for the Class of 2026. Ex. K ¶4. When he applied, he secured a congressional nomination, participated in the medical-qualification process, interviewed, and finished all the other steps that are necessary to apply. Ex. K ¶4. The Academy rejected his application. Ex. K ¶4; *see* Ex. A at 54:14-55:1.

Member A is now a rising junior at ▉▉▉▉▉▉▉, where he studies ▉▉▉▉▉▉▉. Ex. A at 11:10-12:9; Ex. K ¶10. He is an active member of his college's Naval ROTC program. Ex. A at 13:17-15:6; Ex. K ¶9. When he joined the Naval ROTC as a freshman, he was deemed medically qualified (through a waiver). Ex. K ¶9; Ex. A 14:9-11, 23:17-19, 113:5-13. Though ▉▉▉▉▉▉▉, he was still deemed medically qualified to join Naval ROTC. Ex. A at 47:10-15, 113:8-12; Ex. K. ¶9. He is currently healthy and not aware of any medical conditions that would disqualify him from attending the Academy. Ex K. ¶8. As part of the Naval ROTC, he recently ▉▉▉▉▉▉▉

---

[1] All exhibits are to the declaration of J. Michael Connolly, which has been filed under seal.

2

███████████████████████████████████████████████████████████. Ex. K ¶9; *see also* Ex. A at 28:9-19 (discussing prior ROTC trainings in ██████████████)

      Member A still wants to attend the Naval Academy. Ex. K ¶3; Ex. A at 89:19-92:4. The Academy is "a very prestigious institution"; it has numerous "networking abilities" for his future career; he likes the people he has met who attend the Academy; and, unlike his current college, it is free. Ex. A at 89:19-92:4; *see also id.* at 33:3-34:5, 66:2-13, But Member A does not believe that the Academy should be allowed to use race or ethnicity as a factor in admissions. Ex. K ¶6; Ex. A at 36:6-11, 67:14-68:3 (using race is unfair because "I cannot help what race I am. … I was born this way."). Member A is ready and able to apply to the Naval Academy again, for the next open admissions cycle, if a court orders the Academy to stop using race and ethnicity as a factor in admissions. Ex. K ¶5; Ex. A at 80:11-22, 83:20-84:4, 114:11-14.

      **Member B.** Member B is ███████████. Ex. B at 5:15-6:5; Ex. L ¶11. He is Asian. Ex. L ¶2. The Naval Academy has long been his "dream school." Ex. B at 21:12-15; *see id.* at 19:8-11 (the Academy was his "number 1" choice of college); Ex. L ¶3. He applied to the Academy because he wanted to "serve [his] country," receive "a great college education," and pursue a good "career after the military." Ex. B at 30:5-16; *id.* at 21:12-20 (same). Member B applied to the Naval Academy for the Class of 2027. Ex. L ¶4. When he applied, he secured a congressional nomination, participated in the medical-qualification process, interviewed, and finished all the other steps that he believed were necessary to apply. Ex. L ¶4. The Academy rejected his application. *Id.*

      Member B is now a rising sophomore at █████████████████, where he's majoring in █████████. Ex. L ¶9. Member B still wants to attend the Naval Academy. Ex. L ¶3. But

3

he does not believe that the Academy should be allowed to use race or ethnicity as a factor in admissions. Ex. L ¶5; Ex. B at 43:6-44:4 (the Academy says that "the application is based on … academics, extracurricular activities, and physical fitness," and he "do[es] not believe that race plays a factor in these three things"), 45:9-17 ("[Y]ou … can't decide who you are," and so "what race you've been born in … should not affect how the Naval Academy perceives prospective students."), 66:15-67:10 (agreeing that he "believes that [he was] penalized because of [his] race"), 73:22-74:7 (same). Though he mistakenly failed to finish his medical evaluation when he applied the first time, he has learned from that mistake and would properly complete the Academy's medical-evaluation process next time. Ex. L ¶6; Ex. B at 52:6-54:2, 142:3-7. He is healthy and not aware of any medical conditions that would disqualify him from attending the Academy. Ex. L ¶8; Ex. B at 102:2-13 (medically qualified because "I have no underlying conditions and … [can] perform what is asked of me in terms of physicality and my mental capacity"), 141:15-142:2 (same). Member B is ready and able to apply to the Naval Academy again, for the next open admissions cycle, if a court orders the Academy to stop using race and ethnicity as a factor in admissions. Ex. L ¶5; Ex. B at 101:3-102:1, 102:14-103:1, 106:2-19, 112:6-114:6, 142:15-19.

**Member C.** Member C is ▇▇▇▇▇▇▇▇▇▇▇. Ex. C at 190:4-14; Ex. M ¶10. He is white. Ex. M ¶2. He has long wanted to attend the Naval Academy; indeed, the Naval Academy was his "top choice." Ex. C at 54:16-55:6; Ex. M ¶3. ▇▇▇▇▇▇▇▇▇ attended the Naval Academy. Ex. C at 66:3-7. Member C applied to the Naval Academy twice—for the Class of 2026 and the Class of 2027. Ex. M ¶4; Ex. C at 56:10-14. Both times he secured a congressional and presidential nomination, participated in the medical-qualification process, interviewed, and

4

finished all the other steps that are necessary to apply Ex. C at 62:17-63:1, 104:10-14; Ex. M ¶4. The Academy rejected his application both times. Ex. M ¶4; *see* Ex. C at 86:3-12 (Member C was "devastated" when he was rejected).

Member C is now a rising junior at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, where he is majoring in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. C at 56:4-6; Ex. M ¶8. Member C still wants to attend the Naval Academy. Ex. M ¶3; Ex. C at 44:14-45:19, 49:11-50:2. The Academy is a "very prestigious school and it guarantees that [he will] become a naval officer, which is what [he] would like to be." Ex. C at 43:9-15. But he does not believe that the Academy should be allowed to use race or ethnicity as a factor in admissions. Ex. M ¶5; Ex. C at 21:16-21. Member C is ready and able to apply to the Naval Academy again, for the next open admissions cycle, if a court orders the Academy to stop using race and ethnicity as a factor in admissions. Ex. M ¶5; Ex. C at 147:14-149:10 ("I would most definitely apply if my race is not taken into consideration."); *see id.* at 154:15-155:19 (same), 193:2-9 (same).

**Member D.** Member D is ▮▮▮▮▮▮▮▮. Ex. D at 13:21-15:1, 117:1-8; Ex. N ¶11. He is white. Ex. N ¶2. He has long wanted to attend the Naval Academy. Ex. N ¶3. While in high school, he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ cemented [his] decision that the Naval Academy was [his] number one choice." Ex. D at 97:3-16. Member D applied to the Naval Academy for the Class of 2027. Ex. N ¶4. When he applied, he secured a congressional nomination, completed the medical-qualification process, interviewed, and finished all the other steps that are necessary to apply. *Id.* The Academy rejected his application. *Id.*

5

Although Member D ███████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████.

Member D is a rising freshman at ████████████████, where he plans to major in ████████████████████████████████. Ex. D at 28:19-21; Ex. N ¶8. But Member D still wants to attend the Naval Academy. Ex. D at 31:1-11 ("on a scale from 1 to 10," his interest is "a definite 10"); Ex. N ¶3 (the Naval Academy is his "number one choice"). He wants to attend the Academy "[f]or the clarity of a path and purpose of becoming a commissioned officer in the United States Navy" because that is "the mission of the Naval Academy and it is the goal I pursue in life." Ex. D at 31:12-20, 67:13-15 ("[M]y goal is … to serve my country as a commissioned officer in the United States Navy."), 73:18-21 (same).

Member D is applying to the Academy this fall. Ex. D at 52:8-10; Ex. N ¶5. He submitted his preliminary application last Spring (the week the application opened) and will complete his application soon. Ex. D at 86:10-17, 87:2-91:17. But he does not believe that the Academy should be allowed to use race or ethnicity as a factor in admissions. Ex. N ¶6; Ex. D at 77:21-78:6. As the "admissions [process] currently stands," he does not "believe that [he] … will receive a fair shot to attend the Naval Academy for [the] class of 2029." Ex. D at 103:9-14. But he still plans to apply because "there is no way for me to gain admission and

6

pursue my goals if I do not apply." Ex. D at 103:15-19. When he applies, Member D wants to be treated equally regardless of his race or ethnicity. Ex. N ¶6; Ex. D at 119:16-120:2.

*   *   *

SFFA now moves for partial summary judgment on Article III standing. This Court already ruled that SFFA likely had standing at the preliminary-injunction stage. *SFFA v. Naval Academy*, 2023 WL 8806668, at *8-9 (D. Md. Dec. 20, 2023). Now that fact discovery is closed, this Court can convert that preliminary assessment into a final one. SFFA's standing can be resolved as a matter of law, as it was in *Harvard* and *UNC*.

## STANDARD OF REVIEW

Courts can resolve standing before trial by granting partial summary judgment. *See. e.g., Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517-20 (4th Cir. 2003) (affirming "the district court's grant of partial summary judgment" on associational standing). Partial summary judgment on standing serves important purposes. Early decisions on jurisdictional issues "narrow the scope of fact-finding [for] the upcoming bench trial." *Harvard*, 346 F. Supp. 3d at 189. And they "'prevent factually unsupported ... defenses from proceeding to trial'"—something courts "have an 'affirmative obligation'" to avoid. *Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 389 (D. Md. 2021) (Bennett, J.) (quoting *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003)). Indeed, the district courts resolved standing as a matter of law before trial in both *UNC* and *Harvard*. *See UNC*, 2019 WL 4773908, at *5; *Harvard*, 346 F. Supp. 3d at 192.

So too here. Leaving standing unresolved would take time at trial away from the issues that matter. That diversion is not only unnecessary but would contradict a basic premise of associational standing: that the litigation will not require "'the participation of individual

7

members.'" *Harvard*, 600 U.S. at 199. SFFA is "'entitled to judgment as a matter of law'" because "'there is no genuine dispute'" of fact on Article III standing. *Nat'l Fed'n of the Blind*, 566 F. Supp. 3d at 389. This Court can and should resolve this issue based on the members' declarations, their deposition testimony, and other evidence in the record. *See, e.g., Am. Canoe Ass'n*, 326 F.3d at 514, 520; *SFFA v. UNC*, 2018 WL 4688388, at *3-6 (M.D.N.C. Sept. 29); *SFFA v. Harvard*, 261 F. Supp. 3d 99, 109-11 (D. Mass. 2017).

## ARGUMENT

SFFA has standing if three things are true: its "'members would otherwise have standing to sue in their own right'"; "'the interests [SFFA] seeks to protect are germane to [its] purpose'"; and "'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Harvard*, 600 U.S. at 198-99. SFFA has satisfied these factors as a matter of law in "[e]very court" where it has litigated them. *Id.*; *UT*, 37 F.4th at 1084-86 & n.8 (collecting cases). Indeed, these three factors were not even contested in either *Harvard* or *UNC*. *See Harvard*, 600 U.S. at 199 ("Respondents do not contest that SFFA satisfies the three-part test for organizational standing articulated in *Hunt*, and like the courts below, we find no basis in the record to conclude otherwise."). This case is no different.

### I. SFFA's members would have standing to sue in their own right.

SFFA's members have standing if they show injury, causation, and redressability. *Harvard*, 600 U.S. at 199. The "injury" here is being "denied the opportunity to compete for admission at the Naval Academy on an equal basis." *Naval Academy*, 2023 WL 8806668, at *9. The Academy's use of race causes that injury, and the injury would be redressed by a court order requiring the Academy to stop using race. *Ne. Fla. Chapter of AGCA v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 & n.5 (1993). Because their injury is the inability to fairly compete in

the admissions process—and not the failure to be admitted—SFFA does not need to show that, absent race, the Academy would have *admitted* its members. *Gratz v. Bollinger*, 539 U.S. 244, 260-62 (2003). Nor does SFFA need to show that its members will apply to the Academy now—only that they are "able and ready" to apply "should" a court order it to "cease to use race." *Gratz*, 539 U.S. at 262; *see, e.g.*, *UT*, 37 F.4th at 1086.

With these principles in mind, there is no material dispute that SFFA has at least one member with standing. And "one" is all that SFFA needs, even if that member is not the same member that SFFA identified when this suit began. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1037 (6th Cir. 2022).

### A.   Member A would have standing on his own.

Member A is "ready" to apply. *Gratz*, 539 U.S. at 262. He testified under oath and signed a sworn declaration stating that he would reapply if a court makes the Academy stop using race. Ex. K ¶5; Ex. A at 114:11-14 ("If the Naval Academy were to stop using race as a factor in the admissions process, [I] would ... apply to the Naval Academy."); *id.* at 80:15-22 (same), 83:20-84:17 (same). The Academy was his first choice, after all. Ex. A at 32:4-8. This uncontradicted testimony is "more than sufficient" to prove his intent to reapply. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 774 (11th Cir. 2024). And he applied to the Academy once before, Ex. N ¶4, which is strong evidence that he would do so again, *see UNC*, 2018 WL 4688388, at *5; *Murthy v. Missouri*, 144 S.Ct. 1972, 1987 (2024).

Member A is also "able" to apply. *Gratz*, 539 U.S. at 262. He meets the minimum objective criteria for admission: He is a citizen with a valid social-security number, 20 years old, and unmarried with no dependents. Ex. E at USNA-000138-39; Ex. K ¶¶7, 11. He is also

9

healthy and is not aware of any medical conditions that would disqualify him from attending the Academy. Ex. K ¶8. Indeed, he has been serving in the Naval ROTC for two years and ███████████████████████████████████████████████████████████████ ███████. Ex. K ¶9. Ex. A at 79:12-80:6 ("I'm in the Naval ROTC program; therefore they must consider me to be medically qualified. I'm a qualified candidate for the military.").

The Academy might note that, when Member A applied last time, he was deemed medically unqualified because ████████████████████████████ Ex. A at 47:10-15, 50:16-51:4. But this fact has no bearing on standing. Though his prior application helps prove his intent to apply again, it is otherwise irrelevant: What matters is whether Member A is able to apply *today*. *Gratz*, 539 U.S. at 260-62; *Fearless Fund*, 103 F.4th at 773-74 & n.3. ████████ ██████████████████████████████████████████████████ Ex. O at 40. But Member A ██████████████████████████████████████████████ ████. Ex. A at 47:11-15. ████████████████ thus could not disqualify him from being eligible to attend the Academy.

Yet even if the Academy could somehow reject Member A as medically disqualified today, that possibility still would not defeat his standing. ██████████████████████ ████████████████████████████████████████████████████████████████ Ex. P at 51:16-52:8; ██ ██ ██ ████████████████ (Academy ████ ████ ████ ████████████); Ex. I at USNA-00000062 ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████). Indeed, the Academy ██████████████████

10

███████. Ex. Q at USNA-00002643; Ex. P at 145:8-16. That includes ████████ ████████████████████████████████████████. *See, e.g.*, Ex. G at USNA-00002753 (██████ ██████████████████████████████). Moreover, ████████████████████████ ████████████████████████████. Ex. H at USNA-00003372; Ex. I at USNA-00000062; Ex. P at 51:16-52:8. So because Member A is white and does not receive a plus for his race, a court order prohibiting the Academy from using race would also allow him to seek a waiver on an equal basis. *See Jacksonville*, 508 U.S. at 665-66. Member A has standing.

### B. Member B would have standing on his own.

Member B is "ready" to apply. *Gratz*, 539 U.S. at 262. He repeatedly testified that, if a court orders the Academy to stop using race, then he will apply to the Academy again. Ex. B at 102:20-103:1 ("I will apply to the Naval Academy" if "the Naval Academy [is] required to eliminate all uses of race and ethnicity in the application process."); *id.* 101:12-16 (same), 112:6-9 (same), 142:15-19 (same); Ex. L ¶5 (same). Like Member A, Member B has applied to the Academy before. Ex. L ¶4. Though he mistakenly did not obtain a medical exam, he has learned from that experience and would complete all necessary steps next time. Ex. L ¶6; Ex. B at 52:6-54:2; 142:3-7; *see also* Ex. S at 16:1-18:13 (████████████████████████ ████████████████████████████████████████).

Member B is also "able" to apply. *Gratz*, 539 U.S. at 262. Like Member A, he meets the minimum objective criteria for admission. *See* Ex. E at USNA-000138-39; Ex. L ¶¶5-10. He is physically fit, has no disqualifying conditions, and has no reason to think he would not be medically cleared—either then or, more importantly, now. Ex. B at 141:11-142:14; Ex. L ¶¶6-8.

11

The Academy might note that, when Member B applied last time, he was deemed ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B at 73:9-12. But the Academy's use of race injures Member B by forcing him to compete in a racially unequal process, regardless whether he would be admitted under a race-neutral admissions process. *Jacksonville*, 508 U.S. at 665-66; *Gratz*, 539 U.S. at 262. No court has ever asked whether SFFA's members had the necessary credentials to be admitted—including the members who were rejected by Harvard, perhaps the most competitive college in the country. *Harvard*, 600 U.S. at 198-99. Like Harvard, the Academy has no hard academic floors. For example, the Academy has ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. P at 70:3-8; *see, e.g., id.* at 70:9-17 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

In any event, that Member B was found not qualified by the Admissions Board once does not mean that he will be found not qualified when he applies again. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. R at USNA-00000740 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮); *see, e.g.,* Ex. J (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). And even if Member B receives this designation again, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. P at 73:20-74:8; *e.g., id.* at 74:20-78:3 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Member B has standing.

### C. Member C would have standing on his own.

Member C is "ready" to apply too. *Gratz*, 539 U.S. at 262. He has applied to the Academy twice before. Ex. M ¶4. And he testified that he "would most definitely apply" again

12

if a court orders the Academy to stop using race. Ex. C at 147:14-149:10, 193:2-9 (same); Ex. M ¶5 (same).

Member C is also "able" to apply. *Gratz*, 539 U.S. at 262. Like the others, he meets all the minimum objective criteria. Ex. E at USNA-000138-39; Ex. M ¶¶6-9. Both times he applied, he was deemed medically qualified. Ex. C at 82:5-9, 109:13-110:3. He is still healthy and not aware of any medical conditions that would disqualify him from attending the Academy. Ex. M ¶7.

As with Member B, the Academy might note that the admissions board ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ when he applied the second time (but not the first time). But this designation cannot defeat his standing for the same reasons as Member B. The Academy's use of race injures Member B by forcing him to compete in a racially unequal process, regardless of whether he would be admitted under a race-neutral admissions process. *Jacksonville*, 508 U.S. at 665-66; *Gratz*, 539 U.S. at 262. A past determination on his qualifications is also not determinative of any future assessment, *e.g.*, Ex. C at 142:11-16 (Member C's college GPA has improved since his application), and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

### D. Member D would have standing on his own.

Member D is not just "ready" to apply—he *will* apply this coming cycle. Ex. N ¶5. He promptly submitted his preliminary application the week it opened, and he will finish his application well before the deadline. Ex. D at 86:10-17, 87:2-91:17. Member D also is able to apply. Like the others, he meets all the minimum objective criteria. Ex. E at USNA-000138-39; Ex. N ¶¶7-10.

13

None of the Academy's potential arguments against the other members (though irrelevant there as well) apply to Member D. He was not ███████████████████; indeed, his qualifications are outstanding. *See, e.g.*, Ex. D at 47:2-5 (██████████ ██████████), 40:20-41:5 (████████████████████ ████████████████████). He also was deemed medically qualified to attend the Academy. Ex. D at 64:20-65:4. And he continues to be in perfect health. Ex. D at 26:2-16, 41:6-43:22; Ex. N ¶9. He is applying to the Academy for this upcoming admissions cycle, and he wants to be treated equally regardless of his race or ethnicity. Ex. N ¶¶5-6. There thus is no question that Member D has standing on his own.

## II.     SFFA satisfies the remaining factors for associational standing.

The second and third factors for associational standing—germaneness and individual participation—are undisputed. *Naval Academy*, 2023 WL 8806668, at *9. For good reason. This challenge to race-based admissions is obviously germane to SFFA's mission of ending race-based admissions. *Harvard*, 600 U.S. at 197, 199; *Harvard*, 261 F. Supp. 3d at 110; *UNC*, 2018 WL 4688388, at *5. And SFFA's facial challenge to the Academy's use of race, as well as its requests for equitable relief, do not require its members' participation. *UNC*, 2018 WL 4688388, at *6; *Harvard*, 261 F. Supp. 3d at 110. Any other conclusion would contradict the Supreme Court in *Harvard*. *See* 600 U.S. at 199 (noting these requirements were not disputed and independently finding them satisfied).

## CONCLUSION

This Court should grant SFFA partial summary judgment and hold that SFFA has Article III standing.

Dated: August 15, 2024

Adam K. Mortara*
(TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Respectfully submitted,

/s/ Thomas R. McCarthy

Thomas R. McCarthy*
Patrick Strawbridge*
J. Michael Connolly*
Bryan K. Weir*
Cameron T. Norris***
James F. Hasson*
R. Gabriel Anderson**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
patrick@consovoymccarthy.com
mike@consovoymccarthy.com
bryan@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice
**pro hac vice forthcoming
***admitted to practice in the District of Maryland

*Counsel for Students for Fair Admissions*

## CERTIFICATE OF SERVICE

I certify that on August 15, 2024, I e-filed the foregoing via ECF, which will automatically email all counsel of record.

/s/ <u>Thomas R. McCarthy</u>