# Exhibit 4 (P538)

 This article was published more than **21 years ago**

*Democracy Dies in Darkness*

# U-Michigan Gets Broad Support on Using Race

By Charles Lane
February 10, 2003 at 7:00 p.m. EST

As the Supreme Court faces its biggest showdown over a racial issue in 25 years, America's business, education and labor leaders are throwing their weight behind the University of Michigan's bid to preserve race-conscious college and university admissions.

Among the organizations and individuals who are planning to submit friend-of-the-court briefs supporting the university are several dozen Fortune 500 companies, the nation's elite private universities and colleges, the AFL-CIO, the American Bar Association -- and a list of former high-ranking military officers and civilian defense officials, according to attorneys involved in the case.

Though its ultimate impact on the court is difficult to gauge, this impending flood of briefs shows the degree to which the American establishment has embraced the pursuit of diversity through race-conscious means since the court's 1978 decision in the Bakke case. Regents of the University of California v. Bakke, the court's last major ruling on race-based admissions, has been interpreted to mean that race may be a "plus factor" in admissions as long as there are no strict numerical quotas.

These pillars of U.S. society have lined up behind Michigan less to defend the particulars of its admissions programs, which award extra points to minority applicants, than to defend an array of race-conscious policies and practices they have come to believe in and rely on -- and which could be threatened if the case goes against the Ann Arbor school.

Their mix of motives includes the desire to avoid civil rights lawsuits and boycotts, in the case of corporations, and the need to avoid racial tension in the ranks, in the case of the military. But all also seem to share the belief that, given the possible alternatives, some measure of extra consideration for minorities is the best way to ensure integration.

 **Follow** Politics 

"There really is a national consensus among business on this -- that racial balancing or compromise, and that the death of that compromise would have serious consequences," said Marvin Krislov, general counsel of the University of Michigan.

So powerful is this consensus that much of big business, a major component of the Republican Party's political coalition, is parting company with President Bush, who has sided with the white students challenging Michigan's admissions programs as a form of "reverse discrimination." Bush's brief agreed that diversity was a "paramount" goal -- but said Michigan should pursue it by race-neutral means.

The show of support planned on Michigan's side is in stark contrast to the 13 briefs that have been filed on behalf of the white students. Other than the brief filed by the Bush administration and another filed by the state of Florida and Gov. Jeb Bush (R), they were backed mainly by relatively small conservative public-interest groups.

However, opponents of race-conscious admissions point out that their position enjoys considerable support from the public, as measured in recent opinion polls.

"There is this striking disparity," said Curt Levey, director of legal and public affairs of the Center for Individual Rights, a conservative legal group that has spearheaded the court case against Michigan. "But often the elite and the common man are on two different pages."

The emerging array of forces in the Michigan cases, which involve challenges to the university's law school and undergraduate admissions practices, also contrasts with the lineup 25 years ago in Bakke.

That case involved white student Alan Bakke's challenge to a program at the University of California at Davis Medical School that reserved 16 out of 100 places in the entering class for blacks, Latinos, Asians and Native Americans.

In the public arena, it was mostly an ideological contest between liberal civil rights and education groups that favored the program and Jewish organizations that opposed it, partly out of fear of a resurrected "Jewish quota" at campuses around the country. Business and labor, to the extent they were represented in the case, sided with Bakke, in the form of briefs from the U.S. Chamber of Commerce and the American Federation of Teachers.

In the current case, Jewish civil rights groups have played a different, less prominent role. The Anti-Defamation League of B'nai B'rith filed an amicus brief that was critical of Michigan but formally supported neither side; the American Jewish Committee plans to side with Michigan.

Elite input proved critical to the Bakke result, as Justice Lewis F. Powell based his pivotal opinion on a friend-of-the-court brief filed by Harvard, Columbia, Stanford and Pennsylvania universities. In that brief, the universities emphasized the benefits of diversity to the educational process and said Harvard had achieved it by taking race into account as a "plus factor" for minorities, without jeopardizing the overall competitiveness of admissions.

Powell's opinion, though joined by no other justice, provided a fifth vote on the court in favor of permitting affirmative action to continue in some form.

Treated as the courts' holding by companies and universities for the past decade, Powell's opinion became the ideological wellspring of a "diversity" movement that now holds the commanding heights of American business and education.

Notably, the rationales offered by the institutions and leaders supporting Michigan today have evolved significantly. Affirmative action was originally viewed as a form of compensation for the discrimination suffered by African Americans during centuries of slavery and Jim Crow. That concept, however, might require companies and universities to admit and make up for their own past discrimination.

Rather, businesses, unions, schools and military experts emphasize that racial and ethnic diversity, and the development of citizens who are comfortable with diversity, are pragmatically necessary in a country that must make its way in a global economy and whose workers, consumers and soldiers increasingly trace their roots to Asia, Africa and Latin America.

General Motors is siding with Michigan at the Supreme Court, as it did when the case was in a lower court. In its lower court brief, General Motors said that "only a well-educated, diverse workforce . . . can maintain America's competitiveness in the increasingly diverse and interconnected world economy."

Managers drawn from diverse universities "have tremendous value to the workforce," said Jonathan Hiatt, general counsel of the AFL-CIO.

A former superintendent of the U.S. Military Academy at West Point, retired Gen. Daniel W. Christman, said he committed to a pro-Michigan brief in part because military effectiveness depends on an officer corps that is both diverse and has trained amid ethnic and racial diversity.

"We're the army of a democracy," Christman said, "and the leaders of that Army need to reflect the army they're commanding . . . because minority representation in the Army is significantly higher than in the population as a whole."

At the same time, there is little cost in terms of public image for companies that side with Michigan -- and potentially large costs for those perceived as indifferent to the interests of minorities.

Texaco, which has also supported Michigan since the lower court case, was the target of a boycott led by Jesse Jackson in 1996 because of its alleged insensitivity to minorities. The company settled a race discrimination class action suit for $176 million.

For some, the corporate support of Michigan simply shows that business has always been content to buy social peace at the cheapest possible price.

"This says affirmative action is a very conservative and cautious approach to dealing with inequality," said Richard D. Kahlenberg, a senior fellow at the Century Foundation who advocates shifting to a system of admissions preferences based on economic class. "Business wants a steady diet of upper- and middle-class employees who can reach certain markets more effectively than whites. That's fine -- but a far reach from the strong moral force behind the civil rights movement."