# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br><br>*Defendants*. | No. 1:23-cv-02699-RDB<br><br>**REDACTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON STANDING**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

   A.   Plaintiff's Members ................................................................................................ 2

   B.   The Naval Academy's Admissions Process .......................................................... 5

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 7

I.   THERE ARE GENUINE DISPUTES OF MATERIAL FACT THAT PRECLUDE
SUMMARY JUDGMENT ON STANDING ................................................................. 7

   A.  There Are Disputed Factual Issues as to Whether Plaintiffs' Members Are "Able and
Ready" to Apply to the Naval Academy ................................................................ 7

   B.  There Are Disputed Factual Issues as to How the Naval Academy's Admissions
Process Works ...................................................................................................... 10

II.   JUDICIAL ECONOMY SUPPORTS DECIDING THE STANDING ISSUE AFTER
TRIAL ........................................................................................................................ 11

CONCLUSION ................................................................................................................... 12

Case 1:23-cv-02699-RDB   Document 91   Filed 08/23/24   Page 3 of 16

**REDACTED**

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 12

*Angelini v. Baltimore Police Dep't*,
    464 F. Supp. 3d 756 (D. Md. 2020) ............................................................................. 9

*Carney v. Adams*,
    592 U.S. 53 (2020) ............................................................................................. 1, 8, 9

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................................................................... 8

*Food & Drug Admin. v. All. for Hippocratic,
    Med.*, 602 U.S. 367 (2024) .................................................................................. 8, 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ..................................................................................................... 7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ................................................................................................... 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    261 F. Supp. 3d 99 (D. Mass. 2017) ........................................................................ 11

*Students for Fair Admissions, Inc. v. Univ. of N.C.*,
    No. 1:14CV954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) ............................ 11

*Students for Fair Admissions, Inc. v. U.S. Naval Acad.*,
    No. CV RDB-23-2699, 2023 WL 8806668 (D. Md. Dec. 20, 2023) ...................... 11

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
    888 F.3d 651 (4th Cir. 2018) ...................................................................................... 7

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................ 7

ii

**INTRODUCTION**

With the trial in this matter set to begin in less than a month, Plaintiff has moved for partial summary judgment on the question of standing, contending that there are no disputes of material fact and that Plaintiff is entitled to judgment as a matter of law on this issue. The Court should deny the motion. As explained below, there are genuine disputes of material fact as to whether Plaintiff's members are "able and ready" to apply to the Naval Academy—an inquiry that the Supreme Court has described as "highly fact-specific." *Carney v. Adams*, 592 U.S. 53, 63 (2020). And even if it were undisputed that Plaintiff's members are "able and ready" to apply, there are genuine disputes of fact as to how the Naval Academy's admissions process works and thus whether Plaintiff's members would even compete in an "unequal process," as Plaintiff alleges. Mot. 12. These disputed factual issues preclude awarding summary judgment to Plaintiff.

There is also no reason for the Court to decide these issues now, on the eve of trial and in an expedited fashion,[1] without the benefit of the full evidentiary record as to how the Naval Academy's admissions process works. Deferring resolution of these issues until after trial would not "take time at trial away from" other issues. Mot. 7. The parties have agreed that Plaintiff's members' testimony will be introduced through deposition designations rather than live testimony, and other issues relevant to standing—including the Naval Academy's admissions process and its limited consideration of race—will have to be addressed at trial regardless of

---

[1] As the Court has recognized, under the default filing schedule, Plaintiff's motion would not have been fully briefed until after the pretrial conference and "just days before the ten-day bench trial begins." ECF No. 78. Even under the expedited briefing schedule that the Court has ordered, Plaintiff's motion will be fully briefed just one week before the pretrial conference.

whether standing remains a live issue in the case. Accordingly, the Court should deny Plaintiff's motion and defer resolution of this issue until after the trial.

## BACKGROUND

Plaintiff's motion makes a number of factual assertions both about their members' ability and readiness to apply to the Naval Academy, and about the ways in which race can be considered in the admissions process. As explained below, many of those factual assertions are disputed.

**A.     Plaintiff's Members**

**Member A.** Member A is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A (Member A Dep.) at 11:10–11:18. He applied to the Naval Academy for the class of 2026, but was found to be medically disqualified by the independent Department of Defense Medical Examination Review Board ("DoDMERB"). *Id.* at 21:6–10. Member A was rejected because of this medical disqualification, and neither race nor ethnicity plays any role in the medical-qualification process. Specifically, DoDMERB found Member A medically disqualified due to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and he was not granted a medical waiver by the Naval Academy. Ex. A at 21:6–10, 51:10–52:2.

Member A has not applied to the Naval Academy since he was rejected for medical reasons in 2022. *Id.* at 34:11–16. He is now a member of his college's Navy Reserve Officers' Training Corps (ROTC), and is set to receive his officer commission in 2026. *Id.* at 90:21–91:3. He has not considered transferring from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, stating that he "like[s] the program at ▮▮▮▮▮" and "really [has] no reason" to transfer. *Id.* at 32:13-20. If he were to apply to the Naval Academy now, his graduation and officer commission would be delayed by at least three years. *Id.* at 90:8–91:3.

**Member B.** Member B is a rising sophomore at ▮▮▮▮▮▮▮▮▮▮. Pl.'s Ex. L. ¶ 9. He applied to the Naval Academy for the class of 2027, but the Admissions Board determined that he was academically "not qualified." Ex. F at 1. Neither race nor ethnicity plays any role in the Board's academic-qualification decision. Ex. E (Latta Dep.) at 182:6–8. Member B has admitted that he never completed the required medical examination, and further that DoDMERB has never determined him to be medically qualified. Ex. B (Member B Dep.) at 51:4–8, 105:19–106:1.

There is no evidence to suggest that the Admissions Board would reverse itself and find that Member B is qualified if he were to apply again. Member B received poor grades in high school, receiving D's in ▮▮▮▮▮▮▮▮▮▮. Ex. B at 37:17–40:20, 41:18–21. He graduated ▮▮▮▮▮▮▮▮▮▮. Id. at 25:12–26:9. He took the SATs three times and ▮▮▮▮▮▮. Id. at 29:19–11. He has continued to receive poor grades in college, earning only a ▮ grade point average in his first year. Id. at 16:11–15. Member B failed ▮▮▮▮▮▮▮▮▮▮. Id. at 17:9–19.

Member B has not applied to the Naval Academy since he was determined not academically qualified and failed to obtain medical qualification. As Member B recognized, the poor grades he received in college "would be considered in the same ways that [his] high school transcripts were considered in [his] previous application for the Naval Academy." Id. at 114:7–115:2. He also testified that he intends to apply to the Navy's ROTC program ▮▮▮▮▮▮ ▮▮▮▮. Id. at 110:14–18. Because students are required to attend the Naval Academy for four years, if he were to reapply to the Naval Academy today and be accepted during the current admissions cycle, his graduation would be delayed by at least two years. Id. at 112:14–114:2.

**Member C.**  Member C is a ███████████████████████  Ex. C (Member C Dep.) at 30:14.  He applied for admission to the Naval Academy for the class of 2026 and 2027.  *Id.* at 56:10–14.  For the class of 2026, DoDMERB determined that he was not medically qualified due to ████████████████ *Id.* at 74:14–18, 75:8–13.  For the class of 2027, the Admissions Board found that he was academically "not qualified."  Ex. G at 1.  As noted, neither race nor ethnicity plays any role in the decision whether a candidate is medically or academically qualified.  Ex. E at 182:6–8

As with Member B, there is no evidence in the record that would suggest that the Admissions Board would change its academic qualification decision if Member C were to reapply.  He has received, in his words, "subpar" grades in college, earning only ███████ ████████████  Ex. C at 31:18–21, 179:15–18.  He failed his ████████████ ████████ courses.  *Id.* at 35:19–36:3.

Although Member C was initially interested in transferring to the Naval Academy when he first started at ████████████, his interest in transferring has decreased over time because he "████████████" and "the farther [he] get[s] into [his] degree, the less [he] want[s] to stop."  *Id.* at 39:21–41:8.  He did not apply to the Naval Academy for the class of 2028 because he thought "the result would be the same" as in previous years given his poor college grades.  *Id.* at 45:9–11, 142:1–143:12.  He has not started an application for the class of 2029.  *Id.* at 145:15–16.  And at this point in his college career, transferring to the Naval Academy would delay his graduation by at least two years.

**Member D.**  Member D is a ████████████████████████████████████.  Ex. D (Member D Dep.) at 27:13–16.  He applied to the Naval Academy for the class of 2027, but was rejected.  *Id.* at 104:11–21.  He believes that race played a role in his rejection, but his basis for

4

that belief is solely that he was not granted admission to the Academy. *Id.* at 104:17–21. He took the SATs twice and ███████████████. *Id.* at 49:15–18. Member D states that he has started an application for the class of 2029 but has not yet completed it, and further testified that his plan after college is "████████████████████████████████████████████ *Id.* at 87:2–7, 96:1–9. He is unsure about applying for the class of 2030 because "at that point, it might be faster for [him] to ████████████████████████████████████████████ ████████████████████████████████." *Id.* at 91:18–92:4.

**B.      The Naval Academy's Admissions Process**

Plaintiff's motion also rests on an inaccurate understanding of the Naval Academy's admissions process. Defendants will describe that process in detail at the upcoming trial, but two points bear emphasizing here.

    1.      <u>Race plays no role in the academic qualification process</u>

Recognizing that two of its members were previously found to be academically "not qualified" by the Admissions Board, Plaintiff suggests that this had something to do with their members' race, contending that "[r]ace affects whether someone is deemed qualified." Mot. 12. But that is incorrect. As the Dean of Admissions testified during his deposition, "race or ethnicity would not inform a decision on whether a person is qualified or not." Ex. E at 182:6–8; *see also* Latta Decl. ¶¶ 50–55, ECF No. 46-2 (explaining that qualification decision is guided by "Whole Person Multiple," which does not consider race or ethnicity).

To support its contrary assertion that race affects whether someone is deemed qualified, Plaintiff relies on two documents. The first—an Admissions Board Training document from August 2023—states only that race, ethnicity, or gender may be "[c]onsidered as one of many factors" generally in the admissions process, not that it may be considered specifically as part of

5

the qualification decision. *See* Pl.'s Ex. R at 740. The second—a single row of a spreadsheet produced in this litigation—states only that a single reviewer had recommended an applicant as qualified and that the applicant happened to be diverse. *See* Pl.'s Ex. J. The reviewer does not state that race or ethnicity affected his qualification decision. *Id.* Neither of these documents show that race is a factor in academic-qualification decisions. The question whether race is considered as part of the qualification decision is thus (at most) a disputed factual issue that must be resolved at trial.

2. <u>Race plays no role in the selection process for many candidates</u>

Plaintiff's motion also rests on the assumption that race is considered for anyone who applies to the Naval Academy, and so any of their members who reapply will be required to compete in an allegedly "unequal process." Mot. 12. But that assumption is incorrect. As Defendants will show at trial, the Naval Academy considers race only in a limited fashion, for only some candidates, and only at certain stages of the admissions process. *See* Latta Decl. ¶¶ 73–77, ECF No. 46-2. This limited consideration of race means that, for many candidates, race is never considered during the selection process. For example, Members of Congress may choose to nominate candidates using the "principal numbered-alternate" method, in which the Member identifies a principal nominee and a ranked list of alternates. *Id.* ¶¶ 34–36. In that circumstance, if the principal nominee is determined to be qualified, the Naval Academy must extend an offer of appointment to that candidate before considering other candidates on the Member's "slate" of nominees. *Id.* And if the principal nominee is determined not to be qualified, the Naval Academy must then consider the next highest ranked alternate on the Member's slate, regardless of race or ethnicity. Thus, the Naval Academy does not consider race in the selection of candidates nominated through the "principal numbered-alternate method."

6

Similarly, the Naval Academy admits as "qualified alternates" those nominees who are deemed qualified but did not win their vacancy. *Id.* ¶ 62. Qualified alternates are "[t]he 150 highest-ranked candidates by [Whole Person Multiple]," *id.*, and the Whole Person Multiple does not consider race. Accordingly, the question whether race is considered in the selection process—and how it may be considered—is (at most) a disputed factual issue that must be resolved at trial.

## LEGAL STANDARD

Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is "genuine" if a reasonable factfinder could side with the nonmoving party. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The Court "view[s] the evidence in the light most favorable to the nonmoving party" and must "refrain from weighing the evidence or making credibility determinations." *Id.* (alterations and citations omitted). "A court improperly weighs the evidence by failing to credit evidence that contradicts some of its key factual conclusions, or by failing to draw reasonable inferences in the light most favorable to the nonmoving party." *Id.* at 659–60 (alternations and citations omitted).

## ARGUMENT

**I.    THERE ARE GENUINE DISPUTES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT ON STANDING**

   **A.    There Are Disputed Factual Issues as to Whether Plaintiff's Members Are "Able and Ready" to Apply to the Naval Academy**

As an association asserting standing based on the rights of its members, Plaintiff must demonstrate that "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This means that it must

7

demonstrate that at least one member (i) "has suffered or likely will suffer an injury in fact," (ii) that the injury "likely was caused or will be caused by the defendant," and (iii) that the injury "likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). The alleged injury "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id.* at 381. And where, as here, a plaintiff "seeks prospective relief such as an injunction," the plaintiff "must establish a sufficient likelihood of future injury." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

Plaintiff contends that its members' alleged injury is an "inability to fairly compete in the admissions process." Mot. 8–9. In that context, the Supreme Court has held that, at a minimum, the members must demonstrate they are "able and ready" to apply. *Carney v. Adams*, 592 U.S. 53, 60 (2020). This is a "highly fact-specific" inquiry. *Id.* at 63. To meet the "able and ready" test, a member must "sufficiently differentiate himself from a general population of individuals affected in the abstract by the legal provision he attacks." *Id.* at 64.

There are genuine disputes of material fact as to whether each of Plaintiff's members are "able and ready" to apply to the Naval Academy. For example, Member A is ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A at 11:10–11:18, 90:21–91:3. If he were to apply and be admitted to the Naval Academy now, his graduation and officer commission would be delayed by at least three years. *Id.* at 90:8–91:3. He testified that he "like[s] the program at ▮▮▮▮▮" and has "really no reason" to transfer at this time. *Id.* at 32:13–20. When he applied to the Naval Academy two years ago, he was found to be medically disqualified. *Id.* at 21:6–10. And although he was granted a medical waiver to participate in ROTC, he would need to undergo another medical examination if he were to

8

reapply to the Naval Academy.  Ex. C at 109:16–21.  Viewing this evidence in the light most favorable to Defendants and drawing all inferences in their favor, a reasonable factfinder could conclude that Member A is not presently "able and ready" to reapply to the Naval Academy.

There are also genuine disputes of material fact as to Plaintiff's other members.  Member B has never completed the required medical examination, received poor grades in high school and college, and has not applied to the Naval Academy since he was determined to be not academically qualified.  Ex. B at 51:4–8, 37:17–40:20, 41:18–21.  Member C—a rising junior—has also received "subpar" grades in college, and admitted at his deposition that his interest in transferring to the Naval Academy has decreased since he ▮▮▮▮▮▮▮▮ and made progress toward his degree.  Ex. C at 39:21–41:8.  And like Members B and C, Member D has already started college at another ▮▮▮▮▮▮▮▮, would have to upend his current plans to transfer to the Naval Academy, and has no reason to believe that race played any role in his rejection (as opposed to, for instance, his subpar SAT scores).  Ex. D at 49:15–18, 104:17–21.  Again, a reasonable factfinder viewing this evidence in the light most favorable to Defendants could conclude that these members are not "able and ready" to reapply to the Naval Academy.

Plaintiff notes that each of these members stated in declarations that they would apply to the Naval Academy if the Court orders the Academy to stop considering race in the admissions process.  But these statements of "general intent" do not show that the members are "able and ready" to apply to the Naval Academy "in the reasonably imminent future."  *Carney*, 592 U.S. at 64.  At most, they show that there is conflicting evidence on the issue.  But "in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes . . . ." *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

9

### B. There Are Disputed Factual Issues as to How the Naval Academy's Admissions Process Works

There are also genuine disputes of fact as to how the Naval Academy's admissions process works that are relevant to whether Plaintiff's members would have standing to sue. As explained above, Plaintiff's motion assumes two facts that are in dispute: (i) that the Admissions Board considers race in making its qualification decisions and (ii) that the Naval Academy considers race for all candidates.

These factual disputes are material. Plaintiff must establish that it is "likely" that its members will be subjected to an unequal process if they reapply. *All. for Hippocratic Med.*, 602 U.S. at 380. But race and ethnicity are never considered for candidates who are deemed "not qualified" by the Admissions Board, and so Plaintiff cannot maintain that such candidates are ever subjected to an allegedly "unequal" process. The Admissions Board has already found that two of Plaintiff's members are not academically qualified, and there is no evidence in the record suggesting that it is "likely" that the Admissions Board would change its decision next time.

Nor is there evidence suggesting that *any* of Plaintiff's members will be among the candidates for whom race is actually considered in a limited fashion. Plaintiff assumes that the Naval Academy's process is just like the processes at public and private universities before *Harvard* and *UNC*, where race could be considered as part of a school's holistic assessment of each candidate. But that is not how the Naval Academy's admissions process actually works. Rather, race is only even potentially considered for a subset of candidates, such as those who are being considered for "additional appointee" slots or those nominated on "competitive slates" where the highest Whole Person Multiple scores are very close. *See* Latta Decl. ¶¶ 74–77, ECF No. 46-2. And because race is considered for only a subset of candidates, Plaintiff cannot show

10

that it is "likely"—as opposed to merely speculative—that any of its members will be subjected to an unequal process if they reapply.

Because the Naval Academy's admissions process is substantially different from the public and private universities Plaintiff has sued before, Plaintiff's reliance on those cases is misplaced. Indeed, the Supreme Court in *Harvard* did not address whether Plaintiff's members had standing to sue in their own right; it addressed only whether Plaintiff was a "genuine" membership organization. 600 U.S. 181, 198–99 (2023). The district courts in *Harvard* and *UNC* had addressed standing at the motion-to-dismiss stage, without the benefit of discovery. *See Students for Fair Admissions, Inc. v. Univ. of N.C.*, No. 1:14CV954, 2018 WL 4688388, at *5 (M.D.N.C. Sept. 29, 2018); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 261 F. Supp. 3d 99, 109 (D. Mass. 2017). And while this Court ruled that Plaintiff likely had standing at the preliminary injunction stage, it specifically noted that Defendants would be "free to challenge standing if, during discovery, it becomes apparent that SFFA cannot prove that its members would otherwise have standing to sue in their own right." *Students for Fair Admissions v. U.S. Naval Acad.*, No. CV RDB-23-2699, 2023 WL 8806668, at *9 n.10 (D. Md. Dec. 20, 2023). Discovery has revealed that, at a minimum, there are genuine disputes of material fact as to whether Plaintiff's members have standing to sue in their own right.

## II. JUDICIAL ECONOMY SUPPORTS DECIDING THE STANDING ISSUE AFTER TRIAL

Plaintiff contends that the Court should decide the standing issue now because leaving the issue unresolved would require "the participation of individual members" and would "take time at trial away" from other issues. Mot. 7–8  Neither contention is correct.

11

*First*, the parties have agreed that Plaintiff's members need not testify at trial and that their testimony may be presented through deposition designations. Neither party included any of Plaintiff's members on the witness lists that were exchanged on August 14. Thus, deferring the issue of standing until after trial, once evidence has been presented as to the disputed issues discussed above, would not require "the participation of individual members" at trial.

*Second*, denying Plaintiff's motion would not mean that the parties would spend time at trial on the question of standing. The disputed factual issues related to how the Naval Academy's admissions process works will need to be resolved regardless of whether standing remains a live issue at trial. And neither the Court nor the parties will need to spend any trial time addressing the disputed factual issues related to whether Plaintiff's members are "able and ready" to apply; as noted, the parties intend to present evidence on this issue through deposition designations.

It would be far more efficient and economical for the Court to decide the standing issue after the benefit of a full trial. At that stage, the Court will be free to weigh the evidence and make whatever factual findings it deems appropriate. Plaintiff would instead have this Court sift through hundreds of pages of exhibits to conclude that there are no disputed issues of material fact and that Plaintiff is entitled to judgment as a matter of law on this issue. *See* ECF No. 74-2 (attaching 408 pages of exhibits). There is no reason for the Court to undertake such an endeavor on the eve of trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (summary judgment may be denied where "there is reason to believe that the better course would be to proceed to a full trial").

## CONCLUSION

The Court should deny plaintiff's motion for partial summary judgment.

| | |
|---|---|
| Dated:  August 23, 2024 | Respectfully submitted, |

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEX HAAS
Assistant Branch Director, Federal Programs Branch

/s/ John Robinson
JOSHUA E. GARDNER
*By Special Appearance*
Special Counsel

ANDREW CARMICHAEL
*By Special* Appearance
Senior Trial Counsel
CHRIS EDWARD MENDEZ
*By Special Appearance*
JOHN ROBINSON
*By Special Appearance*
CATHERINE M. YANG
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4336
Email: catherine.m.yang@usdoj.gov

MEDHA GARGEYA
*By Special Appearance*
Counsel
U.S. Department of Justice
Civil Division, Office of the Assistant Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants*