UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS,<br>*Plaintiff*,<br>v.<br>THE UNITED STATES NAVAL ACADEMY, *et al.*,<br>*Defendants*. | No. 1:23-cv-2699-RDB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY FROM CAPTAIN JASON BIRCH** |

Plaintiff's motion *in limine* seeking to exclude portions of Captain Jason Birch's plainly relevant testimony should be denied. As the Court is aware, Defendants contend that the Naval Academy's limited consideration of race in its admissions process serves a compelling national security interest. Specifically, Defendants contend that a racially diverse officer corps is critical to ensure unit cohesion and lethality, recruitment and retention, and legitimacy both domestically and abroad. The compelling personal experiences Captain Birch intends to offer at trial are concrete examples of that interest. Plaintiff's contention that Captain Birch's testimony is irrelevant and a waste of time is thus misplaced. And Plaintiff's claim that it is prejudiced by Captain Birch's refusal to disclose the names of certain individuals—while he disclosed all other details about the pertinent incidents—lacks any factual or legal support. Because the probative value of Captain Birch's testimony far outweighs any unfair prejudice to Plaintiff (there is none), the Court should deny Plaintiff's motion *in limine*.

## BACKGROUND

Captain Birch is a Black Naval Academy graduate and a decorated Navy officer who has experienced combat in Iraq and Somalia. Birch Dep. Tr. (Ex. A) at 10:6–17, 20:10–23:18. During his decades-long career, he has served as a naval special warfare officer with Navy SEAL Team

2, an officer with Naval Special Warfare Unit 3, a trooper commander with SEAL Team 4, an operations officer and the executive officer of SEAL Team 8, the aide to the Vice Chief of Naval Operations, the operations officer and chief staff officer with Naval Special Warfare Group 4, the commander of SEAL Team 10, and the Naval Academy's Third Battalion Officer. *Id.* at 11:12–20:6. Captain Birch has also been assigned to Special Operations Command Pacific, the United States Special Operations Command, and the Naval Academy's Board of Admissions. *Id.* at 13:19–14:11, 18:15–19:12, 33:16–34:7. Given his extensive experience as well as his personal background as a Black officer, Defendants disclosed Captain Birch as a fact witness "concerning his personal experiences regarding the importance of diversity, including racial and ethnic diversity, in the Navy's officer corps." ECF 87-2 (excerpt of Defendants' second supplemental initial disclosures).

On August 8, 2024, Plaintiff's counsel deposed Captain Birch. He provided specific examples in which the presence of diversity facilitated unit cohesion and international legitimacy. For instance, Captain Birch explained the ways in which his background as the first Black officer to command a SEAL team helped him connect with "Somali[] leaders and other African partners." Ex. A at 50:7–13. As Captain Birch put it, "I received input from my Somali partners [about how] it was powerful and meaningful for them to see me in command of that team . . . , that America would put a black officer in charge of Seal Team 10 and deploy them to Somali[a] in support of our mutual objectives." *Id.* at 99:4–16. This connection helped "reduce some of the natural apprehensions" with partners, encouraged cooperation and contributed to "their willingness to work together," and made for a "more cohesive team" that "translated to operational success on the battlefield as [they] hunted the enemy." *Id.* at 50:13–51:5.

2

Captain Birch also testified about the operational risks that come with the lack of racial and ethnic diversity in the officer corps and again provided specific examples from his career. One incident he described came from his time with SEAL Team 8. A Black enlisted member's biography, which was put up in a team room area, was edited so that it was "filled with racial slurs and other demeaning verbiage," such as "calling his hair nappy" and "highlighting the size of his lips." *Id.* at 56:1–57:19. The enlisted member told Captain Birch that he "likely would have never even brought [the incident] up if [Captain Birch] wasn't in the position [he] was in" as a "black man, a black leader, a black officer." *Id.* at 58:13–59:4. That enlisted member specifically expressed that "because [Captain Birch] was a black officer, a black Seal serving in that position, he felt [t]rust and confidence and most comfortable coming forward . . . [and] he had confidence that the complaint would be taken seriously." *Id.* at 64:7–13. This incident over the biography undermined SEAL Team 8's mission readiness because they "had to maneuver some of the different leadership personnel from . . . their job at the time" and "had to make some reassignments, take some folks offline," while investigating.[1] Ex. A at 54:18–55:21.[2]

During the second half of Captain Birch's deposition, Plaintiff's counsel marked an article written by him—which Captain Birch had not previously raised—titled "Remain Optimistic about Racial and Gender Progress." Ex. A at 130:5–18. The article describes two individuals who expressed racist views to Captain Birch (one was a senior SEAL captain who asked him and another Black SEAL candidate "How are my two little cookies doing?" and the other was a senior

---

[1] Pursuant to the Court's letter order dated August 15, 2024, ECF No. 73, Defendants produced available records memorializing the investigation into the incident. *See* Ex. B (USNA-00034668); Ex. C (USNA-00034676).

[2] Notably, Plaintiff does not seek to exclude this testimony, instead limiting its motion to Captain Birch's testimony about an article Plaintiff's counsel introduced. *See* ECF 87-1 ("Pl. Br.") at 2 ("SFFA now moves to exclude testimony from Capt. Birch about the incidents he described in his article."); ECF No. 87 ("[T]he Court should grant SFFA's motion *in limine* and exclude Capt. Birch's testimony about the incidents he described in his article."). Nor does Plaintiff seek to exclude similar testimony from other witnesses who will testify as to their personal experiences with diversity in the officer corps.

enlisted SEAL leader who announced "I am a racist bastard—but I will always support you"), two individuals that were his supporters, and his experiences as commander of SEAL Team 10. *See* ECF 87-4. During this portion of the deposition, Captain Birch also testified more generally about Naval Academy midshipmen and servicemembers mentored by Captain Birch; servicemembers who felt racial diversity improved command climate; servicemembers who have exhibited racist behavior towards Captain Birch and other servicemembers; a servicemember who retired, in part, due to the lack of racial diversity; individuals who questioned whether Captain Birch's rank and position was achieved because of his race; and individuals drawn to the Navy because of the existence of racial diversity. *See generally* Ex. A at 135:8–139:18, 147:12–154:17.

While he disclosed the names of high-level, public figures when relevant, *see id.* at 150:12–19, and did not refuse to provide any other information, Captain Birch did not disclose the names he recalled for specific servicemembers and midshipmen due to concerns with (1) violating his position of trust as a senior member of the chain-of-command, member of the Special Operations community, and mentor to midshipmen; (2) publicly outing individuals with racially-discriminatory views and those that have engaged in racist behavior; and (3) bringing non-parties into this matter without their consent, *see id.* at 114:18–115:9, 123:9–19, 132:9–19, 137:21–138:14, 150:5–9, 172:5–13. Captain Birch was willing to provide—and did in fact provide—testimony about specific conversations while using pseudonyms. *Id.* at 115:11–118:21.

After unsuccessfully moving to compel an additional two hours of testimony regarding the names he declined to provide, ECF No. 73, Plaintiff now seeks to exclude testimony from Captain Birch about the incidents he discusses in his article pursuant to Federal Rule of Evidence 403. Because the probative value of Captain Birch's testimony greatly outweighs any unfair prejudice

or waste of time (there is none), Defendants respectfully request that the Court deny Plaintiff's motion *in limine*.

## LEGAL STANDARD

Federal Rule of Evidence 403 is the sole basis for Plaintiff's motion seeking to exclude Captain Birch's testimony about his article. Under Rule 403, the Court may exclude relevant evidence where the probative value of the evidence "is substantially outweighed by a danger of . . . unfair prejudice" or "wasting time." In cases where courts exercise their discretion to consider exclusion, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). That is because "Rule 403 is a rule of inclusion, generally favoring admissibility." *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008) (cleaned up). Courts are particularly reluctant to exclude probative evidence on unfair-prejudice grounds in bench trials. *See United States v. Bilugan*, 937 F.2d 603, at *2 (4th Cir. 1991) (per curiam) (unpublished table decision); *Gulf States Util. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519–20 (5th Cir. 1981)

## ARGUMENT

Captain Birch's compelling testimony regarding the concrete experiences he describes in his article is plainly relevant to Defendants' compelling national security interest. Plaintiff does not seriously suggest otherwise. Plaintiff also fails to establish any prejudice—much less unfair prejudice that substantially outweighs the highly probative value of Captain Birch's testimony—if the evidence were to be admitted at trial. As a result, Plaintiff has not made the requisite showing to warrant exclusion of portions of Captain Birch's testimony. The Court should thus deny Plaintiff's motion *in limine*.

I. **Captain Birch's Testimony Is Plainly Relevant to Defendants' Compelling National Security Interest**

Plaintiff alleges that the Naval Academy's consideration of race in admissions violates the equal-protection component of the Fifth Amendment. The Court must thus review whether the limited use of race as a factor "further[s] compelling governmental interests." *SFFA v. USNA*, 2023 WL 8806668, at *10 (D. Md. Dec. 20, 2023) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003)). As the Court noted, Defendants argue that the admissions policies further "the military's distinct operational interest in developing a diverse officer corps that enables the military to meet its critical national security mission, by enhancing cohesion and readiness, assisting recruitment and retention, and ensuring domestic and international legitimacy." *Id.* at *6.

The testimony Plaintiff urges the Court to exclude provides powerful, concrete, and real-world examples of how racial diversity in the officer corps furthers the military's compelling national security interest. For example, Plaintiff's counsel asked Captain Birch about the portion of his article discussing his experiences with SEAL Team 10. Ex. A at 145:9–147:5. Earlier during the deposition, Captain Birch described how his experiences as a Black commanding officer of SEAL Team 10 contributed to unit cohesion, lethality, and military legitimacy. *Id.* at 99:4–16 (partners in Somalia told him that "it was powerful and meaningful for them to see [him] in command of that team" and to see "that America would put a black officer in charge"); *id.* at 125:7–17 (explaining that his racial background helped contribute "to the success, effectiveness, or lethality of [his] work" during his time in Somalia).

Plaintiff's counsel also raised the portion of the article recounting two instances in which servicemembers expressed racist views to Captain Birch. *Id.* at 131:12–19 (reading the sentences discussing a senior SEAL captain asking Captain Birch and another Black SEAL candidate, "How are my two little cookies doing[?]"); *id.* at 133:11–14 (reading the sentence recounting a senior

6

enlisted SEAL leader telling Captain Birch that "I am a racist bastard, but I will always support you"). These experiences are directly relevant to Captain Birch's testimony throughout his deposition on the connection between racial diversity, unit cohesion, recruitment, and retention. *See, e.g.*, *id.* at 119:5–120:5 (emphasizing that "diversity has helped unit cohesion" throughout his career because it laid a "foundation" that "improved our command climate"); *id.* at 148:16–21 (explaining how midshipmen and junior sailors told him how his background as a Black officer "resonated with them . . . sometimes in their recruitment and oftentimes with their retention in the service as well").

Rather than address the substance of Captain Birch's testimony in its motion, Plaintiff tries to cast it aside. Since Captain Birch acknowledged that he only spoke about his personal experiences and not on behalf of the Navy at large, Plaintiff argues that his testimony carries "minimal probative value mak[ing] it a waste of time." *See* Pl. Br. at 3. Contrary to Plaintiff's position, courts have routinely admitted lay testimony on personal experience. *See, e.g.*, *United States v. Rich*, 2024 WL 2396917, at *2 (D. Md. May 23, 2024) ("It is common for courts to allow lay testimony from professionals describing their firsthand observations in the context of their job."); *Kearney v. Fischer*, 609 F. App'x 673, 675 (2d Cir. 2015); *Perez-Garcia v. Puerto Rico Ports Auth.*, 871 F. Supp. 2d 66, 70–71 (D.P.R. 2012); *cf. Brown v. Nucor Corp.*, 785 F.3d 895, 912–16 (4th Cir. 2015) (recognizing the relevance of anecdotal evidence to a discrimination claim); *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 241 (4th Cir. 2010) (same). The Court should do the same here given the relevance of Captain Birch's testimony to Defendants' compelling national security interest.

In the attempt to downplay the relevancy of Captain Birch's testimony, Plaintiff manufactures a new admissibility standard out of whole cloth. Citing no caselaw, Plaintiff asserts

7

that if Captain Birch's "anecdotes were not relevant enough to report to his senior officers, they are not relevant enough for trial." Pl. Br. at 3 n.2. Of course, there are obvious reasons why Captain Birch may not have wanted to report this misconduct to superiors, including the risk of retaliation. Indeed, if Plaintiff's theory were correct that a failure to report misconduct somehow dictates the admissibility of testimony concerning that misconduct, it would hamstring the ability of many plaintiffs to sue for discrimination. It is therefore understandable why Plaintiff cites to no legal authority for its novel theory of admissibility—it simply is not the law.

Plaintiff's own experts appear to suggest that current issues of racial discrimination in the military are relevant. For example, one of Plaintiff's experts implies that modern-day examples of racial discrimination are relevant to arguments in support of the military's compelling national security interest. *See* Ex. D, Expert Rebuttal Report of Dakota L. Wood at 10 (criticizing "historical examples of racial discrimination in the military" as irrelevant to the military in the twenty-first century). Notably, although Captain Birch will testify about more than just the incidents described in his article, and although Defendants intend to present evidence from other witnesses on their personal experiences related to the benefits of diversity, Plaintiff seeks to exclude only Captain Birch's testimony about the incidents contained in his article. Plaintiff has not explained how Captain Birch's testimony about his personal experiences discussed in his article is minimally probative and warrants exclusion, when it concedes at the same time that his experiences outside his article and the experiences of other witnesses are admissible.

## II. The Testimony Plaintiff Seeks to Exclude Is Not Unfairly Prejudicial

Plaintiff next contends that the Court should exclude Captain Birch's testimony regarding the experiences he describes in his article as unfairly prejudicial. But, as this Circuit has made clear, "in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("For a bench

trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."). That alone warrants denial of Plaintiff's motion *in limine*.

In any event, the thrust of Plaintiff's argument is that it "cannot properly cross-examine" Captain Birch since he supposedly "refused to provide details of those experiences during his deposition." Pl. Br. 1, 4–5. Plaintiff's characterization is deeply flawed. Captain Birch testified in depth about his personal experiences and specific incidents during his career as a Navy officer. *See, e.g.*, Ex. A at 52:20–70:19, 78:16–82:14 (testifying at length regarding the incident while he was assigned to SEAL Team 8 in which a Black enlisted member was the victim of racial caricatures and epithets written on a biography put up in a team room area); *id.* at 49:20–51:13, 89:10–111:6, 145:9–147:5 (testifying at length about his interactions with Somali leaders during his time commanding SEAL Team 10). Throughout the deposition, Plaintiff inquired into the specifics of Captain Birch's experiences, and he responded with substantial details.

Plaintiff specifically takes issue with Captain Birch declining to provide the names of certain individuals he referenced in his article. Plaintiff's concern that it was unable "to test the accuracy and completeness of those anecdotes," Pl. Br. at 4, is misplaced. Captain Birch testified under oath, provided testimony about specific conversations using aliases, and made clear that he would "answer every question to the best of [his] ability from [his] experience throughout [his] life and career." Ex. A at 6:3–6, 49:11–14, 115:11–118:21. In fact, events since the deposition have only reinforced Captain Birch's credibility. In response to the Court's order that Defendants' counsel "should inquire as to whether the incident described on page 53 of the August 8, 2024 deposition transcript . . . was memorialized in any informal or formal record" and inform Plaintiff's counsel of the findings by August 22, 2024, ECF No. 73, Defendants produced two

9

documents on that date prepared from the investigation into the incident, which corroborate Captain Birch's testimony. *See* Ex. B (USNA-00034668); Ex. C (USNA-00034676).

Any inability to obtain details on the incidents Captain Birch describes in his article is due to Plaintiff's lack of follow-up questioning. For instance, after establishing that Captain Birch would not identify the individuals that remarked "How are my two little cookies doing?" and "I am a racist bastard—but I will always support you," Plaintiff's counsel could have asked for more information about when and where those remarks were made. *See* Ex. A at 131:12–134:9, 142:3–143:2. Plaintiff's decision not to is not grounds to exclude Captain Birch's testimony.

Plaintiff provides no other reason it needed certain names "to conduct a 'full and fair' cross-examination." *See* Pl. Br. at 5. Nor does Plaintiff address the reasons why Captain Birch did not provide the requested names. As Captain Birch explained, he was concerned with violating his position of trust as a senior officer and mentor, publicly outing individuals who have engaged in racially discriminatory behavior, and bringing non-parties into the litigation without their consent. Ex. A at 123:9–19, 132:9–19, 137:21–138:14, 150:5–9, and 172:5–13. And Plaintiff fails to address the concerns that may arise from disclosing the names of special operators in the military, whose identities and assignments are confidential for the sake of national security. *See* 10 U.S.C. § 130b.

Instead, Plaintiff relies on cases that are inapposite. None address the military's need for confidentiality to shield the identities of nonparty servicemembers, including those of special operators, from the potential harms of disclosure, which include harassment, retaliation, and, in certain circumstances, operational security. *See* Pl. Br. at 4–5. Furthermore, as Plaintiff acknowledges, *see id.* at 4, *Elm Grove Coal Company v. Director, OWCP* deals with discovery relevant to the basis for an expert opinion, rather than testimony from a lay witness regarding his

10

or her personal experiences. 480 F.3d 278, 302–03 (4th Cir. 2007). And, in *Cisco Systems, Inc. v. Sheikh,* defendants sought to submit a declaration in support of its opposition to a summary judgment motion from a declarant who had asserted his Fifth Amendment privilege to oppose discovery. 2020 WL 5877573, at *4 (N.D. Cal. Oct. 2, 2020). Captain Birch's concern with publicly disclosing the names of certain servicemembers and midshipmen, and only that information, is a far cry from a party "conceal[ing] materials unfavorable to its position under the Fifth Amendment while selectively releasing droplets of materials that support its position." *Id.*

The other cases Plaintiff cites are no better. Captain Birch not disclosing the names of certain servicemembers and midshipmen is not akin to "frustrat[ing] the purpose of the [cross-examination] process" because he did not "refuse[] to provide discovery as to crucial elements" of his testimony. *See United States v. One Parcel of Real Prop. Commonly Known as 901 N.E. Lakewood Dr., Newport, Or.*, 780 F. Supp. 715, 722 (D. Or. 1991). He was willing to provide detailed testimony about specific individuals while using pseudonyms and answered all other questions posed by Plaintiff's counsel. *See* Ex. A at 115:11–118:21. Also, in stark contrast to *CFPB v. Access Funding, LLC*, 2021 WL 2915118, at *22 (D. Md. July 12, 2021), where defendants' counsel was left "with no time for cross-examination" during a deposition, Plaintiff's counsel deposed Captain Birch for more than four hours on the record and could have deposed him up to the seven-hour limit set forth in Federal Rule of Civil Procedure 30(d)(1).

The "mere fact" that Captain Birch's testimony "will damage [Plaintiff's case] is not enough" for exclusion under Rule 403. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 124 (4th Cir. 2011) (citation omitted). Rather, "the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence." *Id.* (emphasis in original) (citation omitted). Plaintiff comes nowhere close to meeting this high bar.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion *in limine* seeking to exclude Captain Birch's testimony about the incidents he describes in his article.

Dated:  August 28, 2024                                        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/ Chris Edward Mendez*
JOSHUA E. GARDNER
*By Special Appearance*
Special Counsel
CHRIS EDWARD MENDEZ
*By Special Appearance*
CATHERINE M. YANG
*By Special Appearance*
JOHN ROBINSON
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8482
Email: chris.e.mendez@usdoj.gov

MEDHA GARGEYA
*By Special Appearance*
Counsel
U.S. Department of Justice
Civil Division, Office of the Assistant
Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants*