UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS<br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES NAVAL<br>ACADEMY, *et al.,*<br>*Defendants.* | No. 1:23-cv-2699-RDB<br><br>**REDACTED** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON STANDING**

**REDACTED**

## TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF ARGUMENT.................................................................1

ARGUMENT.................................................................................................................................2

      I.      This Court should resolve SFFA's standing before trial. ..............................2

      II.     Any disputes over the Academy's admissions process are irrelevant to standing. ...4

      III.    Any disputes over Member A-D's ability and readiness to apply are not material or genuine. ...................................................................................................8

CONCLUSION.......................................................................................................... 13

CERTIFICATE OF SERVICE ................................................................................ 14

**REDACTED**

### INTRODUCTION & SUMMARY OF ARGUMENT

The Naval Academy disputes only the first prong of associational standing. Opp. (Doc.91) 7. It doesn't deny that this case is germane to SFFA's mission or that SFFA's members' do not need to participate. Mot. (Doc.75-1) 14. Those requirements are plainly met. Partial summary judgment can start there.

As for whether one of SFFA's members would have standing on his own, the Academy makes three arguments. It asks this Court to deny summary judgment as a matter of "judicial economy." Opp.11-12. It claims disputes over "how the Naval Academy's admissions process works." Opp.10-11. And it claims disputes over whether Members A-D are able and ready to apply. Opp.8-9.

All three arguments fail:

1.  District courts in this circuit have an affirmative obligation to resolve unsupported defenses before trial. The Academy's doubts about SFFA's standing are unsupported—just as they were unsupported in *Harvard* and *UNC*, where standing was definitively resolved before trial.

2.  The Academy's arguments about the mechanics of its admissions process are immaterial. Even if they were true, standing is not defeated in these cases by the possibility that race won't affect a particular applicant.

3.  The Academy concedes that SFFA's members are able to apply. And its unsupported speculation about their readiness to apply comes nowhere close to a triable dispute. One *is* reapplying right now.

This Court should not deviate from *Harvard* and *UNC*. It should streamline the trial by resolving standing ahead of time. In this case—just like every other case that SFFA has litigated—SFFA has Article III standing as a matter of law.

1

**REDACTED**

## ARGUMENT

### I.   This Court should resolve SFFA's standing before trial.

This Court should not deny partial summary judgment because trial would be, according to the Academy, "more efficient and economical." Opp.12. Rule 56 says courts "'shall grant summary judgment'" when the standard is met. *Nat'l Fed'n of the Blind v. Wal-Mart Assocs.*, 566 F. Supp. 3d 383, 389 (D. Md. 2021) (Bennett, J.); *accord Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874 (4th Cir. 1992) ("must"). Per the Fourth Circuit, "'the trial judge'" has an "'affirmative obligation'" to stop "'unsupported … defenses'" from going to trial. *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003). Any discretion to the contrary must be "sparin[g]," lest it "vitiate the utility of" Rule 56 and deny "the moving party's right to demonstrate prior to trial that the opponent's … defenses" should not go forward. Wright & Miller, 10A Fed. Prac. & Proc. Civ. §2728 (4th ed.). The Academy's lone citation agrees that "trial" is unnecessary when there is not "sufficient evidence favoring the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

The district courts in both *Harvard* and *UNC* thus resolved standing as a matter of law before trial. The Academy wrongly thinks those courts "addressed standing at the motion-to-dismiss stage, without the benefit of discovery." Opp.11. Both Harvard and UNC filed answers, not motions to dismiss. *Harvard*-Doc.17, No. 14-cv-14176 (D. Mass.); *UNC*-Doc.30, No. 14-cv-954 (M.D.N.C.). Discovery then opened. *Harvard*-Doc.146 (opening standing-related discovery); *UNC*-Doc.72 (opening fact discovery). And the defendants filed motions to dismiss only *after* taking substantial discovery on SFFA's standing, including multiple depositions. *E.g.*, *Harvard*-Doc.190 at 6 n.2 (moving to dismiss based on "the discovery elicited to date"); *UNC*-Doc.107 at 8 (moving to dismiss after "[d]iscovery"). Those post-discovery

motions were both denied. *Harvard*, 261 F. Supp. 3d 99 (D. Mass. 2017); *UNC*, 2018 WL 4688388 (M.D.N.C. Sept. 29). If doubts remained, both courts addressed standing again at summary judgment. The *Harvard* court reaffirmed SFFA's standing, including by rejecting Harvard's argument that SFFA's members "have no serious intention of transferring." 346 F. Supp. 3d 174, 190-91 (D. Mass. 2018). The *UNC* court likewise reaffirmed SFFA's standing and noted that its resolution would "'govern'" the rest of "th[e] case." 2019 WL 4773908, at *5 n.9 (M.D.N.C. Sept. 30).

Contra the Academy, the Supreme Court affirmed these decisions. It not only rejected the assertion that SFFA was not a "'genuine'" membership association. Opp.11. It also held, "like the courts below," that SFFA satisfied "the three-part test for organizational standing articulated in *Hunt*." 600 U.S. 181, 199-200 (2023) (citing the lower courts' discussions of standing). The first of those requirements, of course, is that SFFA's members have standing to sue on their own, *id.* at 199—the same requirement that the Academy tries to dispute here.

As in *Harvard* and *UNC*, there is no reason to let standing go past summary judgment. On the mechanics of the Academy's admissions process, no efficiencies will be gained because the resolution of any factual disputes will be immaterial to standing. *Infra* II. And on Member A-D's ability and readiness to apply, the Academy doesn't deny that summary judgment will save time and resources at trial. Efficiencies will be lost if the parties must prepare and present, and the Court must review, unnecessary deposition designations from the members. And removing standing from the trial will head off other unforeseen inefficiencies. Especially because the question of SFFA's standing is not a close call, *see infra* II-III, it falls under this

Court's "'affirmative obligation'" to prevent "unsupported ... defenses from proceeding to trial.'" *Nat'l Fed'n of the Blind*, 566 F. Supp. 3d at 389.

## II.   Any disputes over the Academy's admissions process are irrelevant to standing.

The Academy's assertion that it doesn't "conside[r] race for all candidates" is not a reason to deny summary judgment. Opp.10. Citing Dean Latta's declaration from the preliminary-injunction stage, the Academy says it considers race only for a "subset" of candidates. Opp.10 (citing Latta Decl. (Doc.46-2) ¶¶74-77). The applicants for whom race is not considered, according to Dean Latta, are those who are picked under the "principal competitive-alternate" or "principal numbered-alternate" methods (about 35% of congressional nominations), and those who are picked as "qualified alternates." Latta Decl. ¶¶35-36, ¶60, ¶62(a). The Academy made the same argument at the preliminary-injunction stage. *See* Doc.46 at 16. This Court rejected it then. *SFFA v. Naval Academy*, 2023 WL 8806668, at *9 (D. Md. Dec. 20). And the Court should do so again because the Academy's argument is purely legal—and incorrect.

The Academy is really arguing that *no one* has standing, as a matter of law, to challenge its race-based admissions. Past rejects cannot sue the federal government for damages. Though they can sue for an injunction if they're able and ready to apply, no one can be certain in advance how their future application will be handled. So according to the Academy, no one can prove that it is "likely" they will experience a part of the process where the Academy uses race. Opp.10-11. Applicants apparently can't even use their past rejection as evidence. But if the Academy were right, then no applicant could prove standing to challenge its use of race.

As this Court explained before, this kind of argument "sets the bar way, way too high" and is not "an accurate summary of standing law." P.I. Hrg. Tr. 28-29 (Dec. 14, 2023).

The Academy continues to misread standing law. The injury here is being denied "the opportunity to compete for admission at the Naval Academy on an equal basis." *Naval Academy*, 2023 WL 8806668, at *9; *accord Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). That injury results from "the imposition" of the racial preference itself. *Ne. Fla. Ch. of AGCA v. Jacksonville*, 508 U.S. 656, 666 (1993). Because the injury is "not the ultimate inability to obtain the benefit," courts have never required proof that the use of race would affect this particular plaintiff. *Id.* at 665-66. Article III requires "only" that plaintiffs are "able and ready" to apply and that a "discriminatory policy prevents [them] from doing so on an equal basis." *Id.* at 666. The "fact that it is possible [plaintiffs] will not be denied admission to a school based on their race"— because race plays no role under certain circumstances—"does not eliminate the injury"; plaintiffs are injured when they must "compete in a race-based *system* that *may* prejudice" them. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718-19 (2007) (emphases added).

After all, every race-based admissions policy has applicants for whom race plays no role. The city in *Parents Involved* didn't use race for certain high schools. *Id.* at 718. The city in *Jacksonville* didn't use race for 90% of funds. 508 U.S. at 658-59. And the many colleges that used "'holistic'" review did not "'*automatically*'" use race for every applicant. *SFFA v. UT-Austin*, 37 F.4th 1078, 1085 (5th Cir. 2022); *see also, e.g.*, Harvard-Br., 2022 WL 2987146, at *15-16 (U.S. July 2022) ("Harvard's 'tip' for race benefits only applicants who are highly competitive-enough to be 'selected for admission,'" a "'small percentage of those qualified'").

Yet these courts easily found standing. Standing existed, despite an unknowable "chain of future events," because the injury in these cases is simply "being forced to participate in an unconstitutional system." *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 633-34 (4th Cir. 2023).

It is guaranteed that SFFA's members must "compete in a race-based system that may prejudice" them. *Parents Involved*, 551 U.S. at 718-19. Even the Academy concedes that its use of race gives certain applicants a competitive advantage throughout the admissions process. White applicants cannot get race-based tips when letters of assurance are issued at the beginning, Latta Decl. ¶74; when competing against the congressional slate in the middle, ¶77; in the selection of additional appointees at the end, ¶75; or in winning a Superintendent nomination at any time, ¶76. Because white applicants are ineligible for race-based boosts that other applicants can get, they cannot "apply ... on the same basis." *Jacksonville*, 508 U.S. at 667. And because the Academy has a limited number of seats, 10 U.S.C. §8454(a), each race-based boost for one group is "necessarily" a race-based penalty for outsiders. *Harvard*, 600 U.S. at 218-19.

The same logic defeats the Academy's suggestion that race might not affect Members A-D because they might be medically or academically disqualified. Opp.10. Even if the Academy's qualification decisions were not influenced by race, any dispute that the Academy has over Member A-D's qualifications is immaterial given the nature of the inability-to-compete theory of standing. A disqualification in the past doesn't guarantee a disqualification in the future. *See* Opp.8-9. And disqualifications can be waived or overruled. Mot.10-12. Because Members A-D *could* be deemed qualified or have any disqualification waived, they can

still *compete* for admission to the Academy. And they still have standing because their ability to compete is hindered by the Academy's "race-based system," regardless of the possibility that they "will not be denied admission … based on their race." *Parents Involved*, 551 U.S. at 718-19.

But assume the Academy is somehow right about the law. Even if SFFA had to prove that race will "likely" affect its members' future applications, Opp.10, SFFA still would be entitled to partial summary judgment. That's true for two independent reasons.

First, SFFA contends that race affects every part of the Academy's process, including the congressional slates, qualified alternates, and qualification decisions. *See* Mot.11-12. This Court "'must assume'" that SFFA will win any factual dispute when evaluating standing. *Equity in Athletics v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011); *accord Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 300 (7th Cir. 2000) (whether plaintiffs proved "discrimination is a question that implicates the merits of their claim rather than their standing"). The opposite approach would force this Court to make final findings of facts about the Academy's admissions process after trial just to know whether it had jurisdiction over this case in the first place.

Second, even crediting the Academy's assertions about its admissions process, race would likely affect these members' future applications. Consider Members A and D. The Academy says race doesn't affect rejected applicants who are medically or academically disqualified. Opp.5-6. But Member D was deemed qualified before, and both Members A and D are indisputably qualified now. Mot.9-11, 13-14. The Academy also says race doesn't affect applicants whose members of Congress do not use "competitive" nominations. Opp.10. But ████████████████████████████████████████████████████████████████████. *See* Pltf.

Ex. T USNA-00003528 at line 2,630 (Member A), line 11,392 (Member D). The Academy lastly insists that race doesn't affect applicants who get in as qualified alternates. Latta Decl. ¶62(a). But Member D did not get in as a qualified alternate (because he did not get in at all). Mot.5. *Every* white applicant who is fully qualified but denied admission goes through a race-based process: They are necessarily refused an LOA (where the Academy uses race), not chosen as an additional appointee (where the Academy uses race), and refused a Superintendent nomination (where the Academy uses race). Latta Decl. ¶¶74-77. It is thus undisputed that Member D has been subjected to the Academy's use of race before, and it is indisputable that Member A would be subjected to it next time. Though the law doesn't require that kind of detailed showing, *see UT*, 37 F.4th at 1085-86, SFFA made it here as a matter of law.

## III. Any disputes over Member A-D's ability and readiness to apply are not material or genuine.

The Academy does not dispute that Members A-D are "able" to apply. It never disputes that they satisfy the objective minimum criteria for admission, such as age and marital status. Mot.2-5. Though it discusses their prior medical determinations (Member A) and prior academic determinations (Members B and C), Opp.8-9, it never argues that these past determinations make any of them *unable* to reapply. Qualifications are considered anew every cycle. *See* Opp.3-4, 10. Member C, for example, got two different answers on academics in two different cycles, Mot.13, and the Academy doesn't dispute that Member A's prior medical disqualification for ▮▮▮▮ no longer applies, Mot.10-11. These members could be deemed qualified or get a waiver if they applied again. *See* Pltf. Ex. P at 74-5:12 ("superintendent has th[e] authority" to "overrule" the board); Pltf. Ex. F at USNA-00000143 ▮▮▮▮▮▮▮

8

██████████████████████████████████████); Pltf. Ex. P 145:11-13 ("323 applicants in this admission cycle ha[ve] been granted waivers"). As explained above, *supra* II, the Academy's argument that it's *unlikely* the members would be deemed qualified or get a waiver incorrectly treats their injury as an inability to get in, instead of an inability to fairly compete.

Even under the Academy's theory, only "one" member needs standing, *Naval Academy*, 2023 WL 8806668, at *9; and the Academy can't genuinely dispute the qualifications of Members D or A. The Academy found Member D medically qualified last time, Mot.14, and the Academy doesn't dispute his physical health today. Though it chides Member D for "never scor[ing] above ████" on the SAT, Opp.5, the Academy deemed him academically qualified with that score last time, Mot.14, and Member D recently retook the ACT, *see* Pltf. Ex. D. 90:12-14. As for Member A, he was academically qualified last time, and the Academy doesn't dispute his academic qualifications today. *See* Opp.2. The Academy also doesn't genuinely dispute his medical qualifications. Though he was denied admission based on ████████████ ████████████, the Academy doesn't dispute that his condition has not returned, that its regulations make this ████████████████████ no longer disqualifying, or that the Navy already gave him a waiver for it. Mot.2-3; Pltf. Ex. A 113:8-21. The Academy gives no reason to think that the same Navy would deem Member A medically qualified to become an officer through ROTC but not medically qualified to become an officer through the Academy.

As for whether SFFA's members are "ready" to apply, the Academy's weak speculation cannot defeat summary judgment. The Academy makes one argument: It doubts that these students, who are now attending other colleges, would "dela[y]" their graduation by starting over at the Academy. Opp.8-9. To start, that argument is immaterial: The question is whether

they would "apply" if the Academy stopped using race, not what they would do if they received an offer. *Gratz*, 539 U.S. at 262. And their intent to reapply is not genuinely disputed. Members A-C each testified, unambiguously and without contradiction, that they would reapply if the Academy had to stop using race. *See* Mot.3-6. And several rebutted the precise concern that the Academy stresses now:

- Member A "would apply to the Naval Academy again even though that would mean delaying [his] graduation by three years or more" because the Academy would be "one less year of college … to pay for," is "very prestigious," and would give him unique "networking" opportunities. Pltf. Ex. A at 90:16-92:4.

- Though Member C noted his interest in transferring to other schools had decreased because ███████████████ and got further into his "degree," those concerns were "overcome" when it came to the Academy, given its "prestige" and its guarantee of becoming a "naval officer." Pltf. Ex. C at 44:10-45:7.

The members' detailed, on-point testimony is not disputed. The Academy cannot defeat summary judgment "'merely upon speculation and conjecture'" that they were lying. *CTB v. Hog Slat*, 954 F.3d 647, 658 (4th Cir. 2020); *accord Harvard*, 346 F. Supp. 3d at 191 (rejecting a similar attempt to use ambiguous deposition testimony to rebut the members' clearly stated intent to apply to transfer if Harvard stopped using race).

This line of attack also makes little sense. The Academy knows that many students reapply each year from college (meaning they'd have to "start over" if they were admitted). The Academy ████████████████████████████████████████. The Academy will ████████████████████████████████ because their ████████████████ ████████████████████████████████ Pltf. Ex. U USNA-00025306; *accord* Pltf. Ex. V USNA-00026984 (████████████████████████████████████████).

Per the Academy:



Pltf. Ex. U USNA-00025306; *accord* Pltf. Ex. W USNA-00001448 ███████████

████████████████████████████████████████████████████████

████████████████████████████ ). The Academy cannot question

the sincerity of reapplicants now, knowing that it gets many every year, accepts many every

year, and ████████████████████████████ .

Plus, the Academy's line of attack doesn't work at all for Member D. The Academy

can't question whether he would reapply because, as SFFA explained and the Academy never

disputes, Member D is reapplying *right now*. Mot.6, 14. On "a scale from 1 to 10," his interest

in attending the Academy over his current college (where he's a freshman who just started

classes) is "a definite 10." Pltf. Ex. D 31:1-11. His application for the "Class of 2029" is "in

process." Ex.D.52:3-10. He "submitted the preliminary application" the same "week it

opened." Ex.D.86:10-14. He has put in requests for letters and transcripts. Ex.D.87:13-21. He

is polishing his personal statement and getting in shape for his physical-fitness assessment.

Ex.D.87:22–88:13. And he will do his medical examination, alumni interview, and

congressional nomination as soon as he can. Ex.D.88:14-90:8. He "will be completing … all"

the steps to apply by "Thanksgiving" 2024, well before the "January 31st" deadline.

Ex.D.90:19–91:7. Member D is also the one member whose qualifications the Academy

concedes. Since SFFA needs only "'one'" member with standing, Member D alone entitles it

to partial summary judgment. *Naval Academy*, 2023 WL 8806668, at *9; *accord UNC*, 2018 WL 4688388, at *3 ("'just one'" member with standing needed).

The Supreme Court's decision in *Carney v. Adams* doesn't help the Academy. Opp.8-9. For one, that case doesn't suggest that ability and readiness are "'highly fact-specific'" questions that should be saved for trial, Opp.1, 8; it *resolved* them at summary judgment. 592 U.S. 53, 66 (2020). For another, *Carney* rejected that plaintiff's readiness to apply as insincere on a record that looks nothing like this one. *See Crawford v. Uber Techs.*, 2021 WL 3810259, at *3 (N.D. Cal. Aug. 26) (distinguishing *Carney*). In that "highly fact-specific case," the Court said the "only evidence" supporting the plaintiff's interest in applying for a judgeship was "two statements": one where he said he'd "apply for any judicial position that [he] thought [he] was qualified for"; and another where he said he'd "seriously consider" a judgeship. 592 U.S. at 60-61, 63. Against those "few words of general intent" was substantial "contrary evidence." *Id.* at 64. The plaintiff could have applied for 14 prior judgeships but didn't. *Id.* at 61. He wasn't aware of any upcoming vacancies. *Id.* at 62. He decided to sue because he read a "law review article" giving him the idea. *Id.* at 63-64. And he changed his lifelong party affiliation, plus renewed his bar license, just one week before suing. *Id.* at 62-63.

None of those facts are present here; and the facts that are present here are what *Carney* said would create standing. Unlike the plaintiff in *Carney*, SFFA's members filed "prior … applications." *Id.* at 63. They "applied for admission" in "the recent past" and were "rejected." *Id.* at 65 (discussing *Gratz*); *see* Mot.2-6. They also "inten[d] to apply" again "in the near future, should the university cease using [race]"; and one of them is making "preparations" to reapply now. *Carney*, 592 U.S. at 63, 65; *see* Mot.9-14. Most importantly,

**REDACTED**

unlike in *Carney*, the Academy doesn't suggest that these college students are some kind of serial litigants trying to drum up a "generalized grievance." *Carney*, 592 U.S. at 63. As the Supreme Court explained in *Harvard* (three years after *Carney*), SFFA has members who "were denied admission" and "represents them in good faith." 600 U.S. at 201.

## CONCLUSION

This Court should grant SFFA partial summary judgment in favor of SFFA on Article III standing.

Dated: August 28, 2024                        Respectfully submitted,

<div style="margin-left:50%">

*/s/ Thomas R. McCarthy*

</div>

Adam K. Mortara*                              Thomas R. McCarthy*
(TN Bar No. 40089)                            Patrick Strawbridge*
LAWFAIR LLC                                   J. Michael Connolly*
40 Burton Hills Blvd., Ste. 200               Bryan K. Weir*
Nashville, TN 37215                           Cameron T. Norris**
(773) 750-7154                                James F. Hasson*
mortara@lawfairllc.com                        R. Gabriel Anderson*
                                              CONSOVOY MCCARTHY PLLC
                                              1600 Wilson Boulevard, Suite 700
                                              Arlington, VA 22209
                                              (703) 243-9423
                                              tom@consovoymccarthy.com
                                              patrick@consovoymccarthy.com
                                              mike@consovoymccarthy.com
                                              bryan@consovoymccarthy.com
                                              cam@consovoymccarthy.com
                                              james@consovoymccarthy.com
                                              gabe@consovoymccarthy.com

                                              *pro hac vice
                                              **admitted to practice in the District of
                                              Maryland

*Counsel for Students for Fair Admissions*

REDACTED

### CERTIFICATE OF SERVICE

On August 28, 2024, I e-filed the foregoing with the Court, which will automatically email all counsel of record.

/s/ *Thomas R. McCarthy*

14