IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-2699 |
| THE UNITED STATES NAVAL ACADEMY, *et al.*, | * | |
| | * | |
| *Defendants*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Students for Fair Admissions, Inc. ("SFFA") bring this action against Defendants United States Naval Academy (the "Naval Academy"); the United States Department of Defense (the "DoD"); Lloyd Austin, in his official capacity as Secretary of Defense; Carlos Del Toro, in his official capacity as Secretary of the Navy; Bruce Latta, in his official capacity as Dean of Admissions for the United States Naval Academy; and Rear Admiral Fred Kacher, in his official capacity as Acting Superintendent of the United States Naval Academy, (collectively, "Defendants"), alleging the Naval Academy's race-conscious admissions practice violates the equal protection component of the Fifth Amendment of the United States Constitution. (ECF No. 1.)[1]  This matter is set for a two week bench trial beginning September 16, 2024. (ECF No. 71.)

---

[1] For clarity, this Memorandum Opinion cites to the CM/ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the CM/ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

On August 15, 2024, SFFA moved for partial summary judgment on the issue of Article III standing. (ECF No. 74 *SEALED*; ECF No. 75 redacted version.) Defendants responded in opposition (ECF No. 90 *SEALED*; ECF No. 91 redacted version), and Plaintiff replied (ECF No. 99 *SEALED*; ECF No. 98 redacted version). On September 5, 2024, the Court heard oral argument from the parties. At the conclusion of oral argument, the Court ruled from the bench and GRANTED Plaintiff's Motion for Partial Summary Judgment (ECF No. 74 *SEALED*) on the issue of Article III standing, promising an opinion to follow. This Memorandum Opinion expounds upon the Court's reasoning.

## BACKGROUND

Discovery in this matter has concluded, and a ten-day bench trial is scheduled to begin on Monday, September 16, 2024. (ECF No. 71.) The instant Memorandum Opinion addresses Plaintiff's Motion for Partial Summary Judgment (ECF No. 74 *SEALED*) on the issue of Article III standing. The issue has been fully briefed, (*see* ECF No. 90 *SEALED*; ECF No. 99 *SEALED*), and the Court heard oral argument from the parties on September 5, 2024. A brief overview of background relevant to the issue of standing in this case follows below.

Students for Fair Admissions is a membership association founded in 2014 to challenge the use of race in admissions.[2] Through the instant litigation, SFFA challenges the Naval Academy's race-conscious admissions practice as violative of Fifth Amendment's equal

---

[2] *See Help Us Eliminate Race and Ethnicity from College Admissions*, STUDENTS FOR FAIR ADMISSIONS, available at https://studentsforfairadmissions.org/.

protection principles.[3]  (ECF No. 1.)  As an organizational plaintiff rather than an individual, SFFA must proceed on a theory either of organizational or associational standing.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 341–44 (1977).  Under the latter theory, "an association has standing to bring suit on behalf of its members."  *Id.* at 343.

To invoke this theory, Students for Fair Admissions has identified four members that Plaintiff asserts are "able and ready" to reapply to the Naval Academy: Members A, B, C, and D.  (*See* Decl. of Member A, ECF No. 74-2 *SEALED* at 167–70; Decl. of Member B, ECF No 74-2 *SEALED* at 171–74; Decl. of Member C, ECF No. 74-2 *SEALED* at 175–78; Decl. of Member D, ECF No. 74-2 *SEALED* at 179–82.)  Each of the members previously applied to the Naval Academy and were rejected, though only Member D is actively reapplying.  (ECF No. 74-2 *SEALED* at 168, 172, 176, 180.)

Member A is white and a junior at a public university, where he studies electrical engineering and naval science and is an active member of the Naval Reserve Officers' Training Corps ("ROTC") program.  (*See* Decl. of Member A, ECF No. 74-2 *SEALED* at 167–70; Pl.'s Excerpts from Tr. of Member A's Dep., ECF No. 74-2 *SEALED* at 7–41.)  Member A previously applied to the Naval Academy for the Class of 2026.  (*Id.*)  While Member A secured a congressional nomination, participated in the medical-qualification process, interviewed, and finished all other steps that are necessary to apply, the Naval Academy deemed him medically unqualified due to past eczema and rejected his application.  (*Id.*)

---

[3] Although the Fifth Amendment does not contain an explicit equal protection clause as is provided in the Fourteenth Amendment, the Supreme Court has interpreted the Fifth Amendment's due process clause as incorporating an equal protection aspect.  *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 217 (1995) (discussing equal protection aspect of the Fifth Amendment's due process clause).

3

In their Opposition, Defendants note that Member A was found to be medically disqualified by the independent Department of Defense Medical Examination Review Board ("DoDMERB"). (ECF No. 90 *SEALED* at 5 (citing Defs.' Excerpts from Tr. of Member A's Dep., ECF No. 90-1 *SEALED*).) According to Defendants, neither race nor ethnicity plays any role in the medical disqualification process. (*Id.*) Defendants further highlight portions of Member A's testimony where he stated that he likes the program at his current school and "really [has] no reason" to transfer. (*Id.*) Defendants add that, if Member A were to transfer, his graduation and officer commission would be delayed by at least three years. (*Id.*)

Member B is Asian and a sophomore at a public university, where he is majoring in biochemistry. (*See* Decl. of Member B, ECF No 74-2 *SEALED* at 171–74; Pl.'s Excerpts from Tr. of Member B's Dep., ECF No. 74-2 *SEALED* at 42–67.) Member B previously applied to the Naval Academy for the Class of 2027. (*Id.*) While Member B secured a congressional nomination, Member B "mistakenly failed" to finish the medical evaluation and his application was rejected. (*Id.*)

In their Opposition, Defendants note that Member B was found academically "not qualified." (ECF No. 90 *SEALED* at 6 (citing ECF No. 90-5 *SEALED*; ECF No. 90-6 *SEALED*).) According to Defendants, neither race nor ethnicity plays any role in the process to determine whether an applicant is academically qualified. (*Id.*) Defendants contend "[t]here is no evidence to suggest that the Admissions Board would reverse itself and find that Member B is qualified if he were to apply again," noting Member B's poor grades in high school and college, as well as his low SAT scores. (*Id.* (citing Defs.' Excerpts from Tr. of

4

Member B's Dep., ECF No. 90-2 *SEALED*).)  Similar to Member A, Defendants add that Member B's graduation would be delayed by at least two years if he were to transfer.  (*Id.*)

Member C is white and a rising junior at a public university, where he is majoring in mechanical engineering.  (*See* Decl. of Member C, ECF No. 74-2 *SEALED* at 175–78; Pl.'s Excerpts from Tr. of Member C's Dep., ECF No. 74-2 *SEALED* at 68–94.)  Member C has applied to the Naval Academy twice—for the Class of 2026 and the Class of 2027.  (*Id.*)  While Member C's application was supported by both congressional and presidential nomination and Member C participated in the medical-qualification process, interviewed, and finished all other steps that are necessary to apply, he was rejected both times.  (*Id.*)

In their Opposition, Defendants note that for the Class of 2026, Member C was found to be not medically qualified by the independent DoDMERB due to a recent abdominal surgery, and contend that neither race nor ethnicity plays any role in the medical disqualification process.  (ECF No. 90 *SEALED* at 7 (citing Defs.' Excerpts from Tr. of Member C's Dep., ECF No. 90-3 *SEALED*; ECF No. 90-5 *SEALED*).)  Defendants note that for the Class of 2027, Member C was found to be "not qualified" academically, and neither race nor ethnicity plays any role in the process to determine academic qualification.  (*Id.* (citing ECF No. 90-7 *SEALED*).)  Defendants assert "there is no evidence in the record that would suggest that the Admissions Board would change its academic qualification if Member C were to reapply," citing his grades in college.  (*Id.*)  Defendants note that, like Members A and B, Member C's graduation date would be delayed if he transferred, and like Member A, Member C expressed some reluctance to re-apply during his deposition.  (*Id.*)

Member D is white.  (*See* Decl. of Member D, ECF No. 74-2 *SEALED* at 179–82;

5

Pl.'s Excerpts from Tr. of Member D's Dep., ECF No. 74-2 *SEALED* at 95–130.)  Member D applied to the Naval Academy for the Class of 2027, but was rejected.  (*Id.*)  While Member D received a ROTC scholarship to attend a public university, he ended up delaying his freshman year after he contracted a viral infection while training at a military base in Illinois.  (*Id.*)  He has now fully recovered and is a Cadet Lieutenant Colonel in the Civil Air Patrol, as well as a freshman at a private university, where he plans to major in engineering and participate in the honors program.  (*Id.*)  Member D is applying to the Naval Academy for the Class of 2029 and indicates that he intends to complete his application soon.  (*Id.*)

In their Opposition, Defendants note that Member D "believes that race played a role in his rejection [to the Class of 2027], but his basis for that belief is solely that he was not granted admission to the Academy."  (ECF No. 90 *SEALED* at 7–8 (citing Defs.' Excerpts from Tr. of Member D's Dep., ECF No. 90-4 *SEALED*).)  Defendants emphasize Member D's SAT scores and apparent reluctance to reapply to the Naval Academy.  (*Id.*)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317,

1323 (4th Cir. 1995) (explaining that, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict") (citing *Anderson*, 477 U.S. at 252).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

Through its Motion for Partial Summary Judgment (ECF No. 74 *SEALED*; ECF No. 75 redacted version), Plaintiff Students for Fair Admissions insists the issue of Article III standing can be resolved as a matter of law.  In brief, SFFA contends that there is "no question that at least one" of its four proffered members "could sue on his own." (ECF No. 74-1 *SEALED* at 10.)  Defendants disagree, contending there are disputed factual issues as to whether the members are "able and ready" to apply to the Naval Academy (ECF No. 90 *SEALED* at 10–12) and as to how the Naval Academy's admissions process works (*id.* at 13–14).  In turn, Plaintiff argues that any disputes over the Naval Academy's admissions process are "irrelevant" to standing (ECF No. 99 *SEALED* at 6–10) and disputes over its members' ability and readiness to apply are "not material or genuine" (*id.* at 10–15).

"As the Supreme Court has consistently emphasized, Article III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies."  *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018) (internal quotation marks

7

omitted). "The requirement that a [p]laintiff possess standing to sue emanates from that constitutional provision." *Id.* (internal quotation marks omitted).

To possess standing to sue under Article III, a plaintiff must have "(1) . . . suffered an injury-in-fact that was concrete and particularized and either actual or imminent; (2) there [must have been] a causal connection between the injury and the defendant's conduct (i.e. traceability); and (3) the injury [must have been] likely to be redressable by a favorable judicial decision." *Hutton*, 892 F.3d at 618–19 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The burden of sufficiently establishing these three elements falls on the party invoking federal jurisdiction—here, Students for Fair Admissions. *Lujan*, 504 U.S. at 561; *Hutton*, 892 F.3d at 619.

An organization like SFFA can assert standing based on two distinct theories. It can assert standing in its own right to seek judicial relief for injury to itself and as a representative of its members who have been harmed. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 182 (4th Cir. 2013). It is the latter option—known as representational or associational standing—that is at issue here. To invoke associational standing, an organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Only the first requirement of associational standing is in dispute, as SFFA is a membership association formed for the express purpose of challenging the use of race in admissions and this litigation challenges the Naval Academy's race-conscious

8

admissions; and the parties have agreed that Plaintiff's members need not testify at trial and that their testimony may be presented through deposition designations.[4]

With respect to the first requirement, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Com. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 555 (1996). "[T]he 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (quoting *Jacksonville*, 508 U.S. at 666). To establish standing, SFFA need only demonstrate that at least one of its members is "able and ready" to apply to the Naval Academy and that the Naval Academy's race-based admissions practice prevents its members from doing so on an equal basis. *Jacksonville*, 508 U.S. at 666; *Gratz*, 539 U.S. at 262; *Carney v. Adams*, 592 U.S. 53, 60 (2020).

Here, Plaintiff has identified four members that previously applied to the Naval Academy and were rejected. While only one of the four members is actively reapplying, (ECF No. 74-2 *SEALED* at 180), the other members indicate that they are "ready and able" to reapply to the Naval Academy if the Naval Academy were to end its race-conscious admissions program. (*Id.* at 168, 172, 176.)

---

[4] Moreover, Plaintiff's Complaint seeks declaratory and injunctive relief, (ECF No. 1), and the Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members. *Pennell v. City of San Jose*, 485 U.S. 1, 7 n.3 (1988); *Int'l Union v. Brock*, 477 U.S. 274, 287–88 (1986).

Defendants question whether SFFA's members are "able and ready" to apply, questioning whether SFFA's members would actually reapply and specifically challenge Member A's medical qualifications and Members B and C's academic qualifications. (ECF No. 90 *SEALED* at 11–12). First, this Court is wholly unpersuaded by Defendants' attempt to cast doubt on the seriousness of the members' interest in transferring. A similar argument was advanced by Harvard and rejected by the district court at the summary judgment stage in *Students for Fair Admissions v. President & Fellows of Harvard College*, 346 F. Supp. 3d 174, 191 (D. Mass. 2018), though Harvard's argument concerned whether the case had become moot based on SFFA's members' ineligibility to transfer to Harvard or alleged disinterest in transferring. Moreover, considering Member D, he previously applied to the Class of 2027 and indicates that he plans to complete his application for the Class of 2029 soon. It is not clear what more Member D could do to show he is "ready" to apply.

Next, this Court considers Defendants specific challenge to Member A's medical qualifications and Members B and C's academic qualifications. This particular challenge attempts to hinge this Court's determination of Article III standing to a determination of these members' medical and academic qualifications. While candidates must satisfy certain minimum criteria to be eligible to apply to the Naval Academy, *see* 10 U.S.C. § 8458 and *Steps for Admission*, U.S. NAVAL ACAD., available at https://www.usna.edu/Admissions/Apply/index.php#fndtn-panel1-Steps-for, Defendants' challenge to Member A's medical qualifications and Member B and C's academic qualifications do not involve these basic eligibility requirements (i.e., the Naval Academy's age and citizenship requirement, as well as the Naval Academy's requirement that applicants be

10

unmarried, not pregnant and without dependents). Thus, Defendants appear to concede that Members A, B, and C are eligible to apply for admission to the Naval Academy. And because Plaintiff's complained-of injury is the inability to fairly compete, Defendants' questioning of Members A, B, and C's credentials is neither here nor there.

Furthermore, Defendants do not advance the same challenge to Member D's credentials, who is Plaintiff's strongest vehicle for Article III standing. At a minimum, SFFA has shown that Member D is "able and ready" to apply to the Naval Academy.

Defendants further argue that even if it were undisputed that Plaintiff's members are "able and ready" to apply, there are genuine disputes of fact as to how the Naval Academy's admissions process works and thus whether Plaintiff's members would even compete in an "unequal process." (ECF No. 90 *SEALED* at 8–10, 13–14.) Defendants contend that Students for Fair Admission's Motion for Partial Summary Judgment "rests on an inaccurate understanding of the Naval Academy's admissions process." (*Id.* at 8.) While Defendants indicate that they "will describe that process in detail at the upcoming trial," they emphasize two points in their briefing: (1) race plays no role in the academic qualification process (*id.* at 8–9); and (2) race plays no role in the selection process for many candidates (*id.* at 9–10). According to Defendants, "Plaintiff must establish that is 'likely' that its members will be subjected to an unequal process if they reapply," citing *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024). (ECF No. 90 *SEALED* at 13.)

While it is true that a plaintiff must also establish that his or her injury likely was caused or likely will be caused by the defendant's conduct, *Lujan*, 504 U.S. at 576, the simple fact is: the Naval Academy considers race in its admissions process, and the injury alleged by

11

Plaintiff's members is the denial of the opportunity to compete for admission on an equal basis. At bottom, the extent of the Naval Academy's consideration of race and ethnicity and that consideration's specific impact on SFFA's proffered members is not material to the issue of standing.

Consider the Supreme Court's approach to standing in its jurisprudence on affirmative action in higher education, beginning with *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978), the landmark decision that established the constitutionality of affirmative action programs, and concluding with *Students for Fair Admissions v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), which held that race-based affirmative action programs at Harvard and the University of North Carolina violated the Equal Protection Clause of the Fourteenth Amendment.[5] In these equal protection cases, the classic standing doctrine appears significantly more relaxed than Defendants suggest.

In *Bakke*, the Supreme Court found that Bakke did not have to show that in the absence of the program he would have been admitted to medical school, as the Court found injury "in the University's decision not to permit Bakke to compete for all 100 places in the class, simply because of his race." *Id.* at 280–81, 281 n.14. Similarly, the Court required only that the plaintiff be able and ready to apply—not that Bakke actually reapply. *Id.* at 281 n.14.

In *Gratz v. Bollinger*, 539 U.S. 244 (2003), two rejected applicants sued the University of Michigan over a points-based freshman admissions system wherein members of

---

[5] The Supreme Court included a footnote expressly declining to opine on the use of race in admissions within the nation's military academies, noting that the "opinion . . . does not address the issue, in light of the potentially distinct interests that military academies may present." 600 U.S. at 213 n.4. As this Court has observed, the instant litigation appears to respond to that limitation. (ECF No. 60 at 5.)

12

underrepresented minorities were automatically awarded twenty percent of the minimum points required for automatic admission as a freshman to the university. *Id.* at 251–57. The Supreme Court upheld the standing of a white transfer student to challenge the university's affirmative action policies as applied to its freshman admissions program under the Equal Protection Clause. *Id.* at 268. The Court found that the white transfer student did not need to show that he had applied as a transfer student; he needed only to show that he was "able and ready" to transfer if the alleged discriminatory admissions practices did not exist. *Id.* at 260–62. Moreover, the Court did not require the plaintiff prove that but for the admissions policy at issue, he would have been admitted to the school. *Id.* at 262. With respect to redressability, which was perhaps the most hotly contested standing requirement in *Gratz*, the majority found that the transfer admissions policy and the freshman admissions policy were in fact identical, stating that "the only difference" is that minority freshman applicants are given twenty percent of the minimum points required for automatic admission as a freshman to the university, while minority transfer applicants are not given points. *Id.* at 266.

In *Grutter v. Bollinger*, 539 U.S. 306 (2003)—a decision released the same day as *Gratz* also involving the University of Michigan—a rejected applicant challenged the University of Michigan Law School's use of race as a factor in student admissions. The Supreme Court stated the rejected applicant "clearly has standing to bring this lawsuit." *Id.* at 317 (citing *Jacksonville*, 508 U.S. at 666).

In *Fisher v. University of Texas (Fisher I)*, 570 U.S. 297 (2013) and *Fisher v. University of Texas (Fisher II)*, 579 U.S. 365 (2016), the University of Texas raised several challenges to Fisher's standing, including suggesting that the plaintiff's application was sufficiently weak

13

such that she would not have been admitted even if no holistic admissions slots had been taken by minorities advantaged by race, and between *Fisher I* and *Fisher II*, she had attended and graduated from Louisiana State University, so she could no longer secure the relief she originally wanted. *See* Brief of Respondents at 7–20, *Fisher I*, 570 U.S. 297 (2013) (No. 11-345); Brief for Respondents at 16 – 17 n.6, *Fisher I*, 570 U.S. 297 (2013) (No. 11-345); Brief for Respondents at 17–24, *Fisher II*, 579 U.S. 365 (2016) (No. 14-981); Brief in Opposition at 26–29, *Fisher II*, 579 U.S. 365 (2016) (No. 14-981). While presented to the Supreme Court in both *Fisher I* and *Fisher II*, the Court did not address the issue on either occasion.[6]

During oral argument in *Students for Fair Admissions v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), Justice Jackson raised a similar point to the one the Defendants raise here: that Plaintiff could not show injury in fact absent a finding that these members were harmed by the admissions policy. Transcript of Oral Argument at 18, *Students for Fair Admissions, Inc. v. Univ. of N.C.*, 600 U.S. 181 (2023) (No. 21-707). On multiple occasions, Justice Jackson emphasized that a person's race did not automatically lead to their admission and that race was not determinative. *Id.* at 20, 113–14, 142, 176. However, none of the Justices in the written decision hinted that SFFA did not have an injury in fact. *See generally* 600 U.S. 181 (2023). The majority opinion stated: "Respondents do not contest that SFFA satisfies the three-part test for organizational standing articulated in *Hunt*, and like the courts below, we find no basis in the record to conclude otherwise."[7] *Id.* at 199–200 (citing *Students for Fair*

---

[6] When the issue was before the United States Court of Appeals for the Fifth Circuit between *Fisher I* and *Fisher II*, the majority noted: "UT Austin's standing arguments carry force, but in our view the actions of the Supreme Court do not allow our reconsideration. The Supreme Court did not address the issue of standing [in *Fisher I*], although it was squarely presented to it." *Fisher v. Univ. of Tex.*, 758 F.3d 633, 640 (5th Cir. 2014).
[7] To be clear, the University of North Carolina asserted that SFFA was not a traditional member group, or at least it did not have any actual members when the litigation began, thus it did not have associational standing,

14

*Admissions, Inc. v. Pres. & Fellows of Harvard Coll.*, 980 F.3d 157, 182–84 (1st Cir. 2020); *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard Coll.*, 397 F. Supp. 3d 126, (D. Mass. 2019); *Students for Fair Admissions, Inc. v. Univ. of N.C.*, No. 1:14CV954, 2018 U.S. Dist. LEXIS 168636, at *8–16 (M.D.N.C. Sept. 29, 2018)).

At bottom, in equal protection cases such as this one, the Supreme Court has utilized a standing test that is significantly more relaxed than the standard Defendants encourage the Court to employ here. *See Gratz*, 539 U.S. at 262–63 (holding that rejected applicant "able and ready" to transfer "has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions"). Because SFFA has sufficiently identified at least one member who was previously rejected and is "able and ready" to reapply to the Naval Academy, Plaintiff Students for Fair Admissions has Article III standing to challenge the Naval Academy's race-conscious admissions practices. *Hunt*, 432 U.S. at 343.

## CONCLUSION

For the reasons stated on the record at the September 5, 2024 hearing and above, Plaintiff's Motion for Partial Summary Judgment (ECF No. 74 *SEALED*) on the issue of Article III standing is GRANTED.

A separate Order follows.

Date: September 5, 2024

/s/
Richard D. Bennett
United States Senior District Judge

---

Brief by Respondents at 23–24, *Students for Fair Admissions, Inc. v. Univ. of N.C.*, 600 U.S. 181 (2023) (No. 21-707), but the Supreme Court rejected this argument. 600 U.S. at 198–201.